A

ORIGINAL UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

WINN

V.                        CASE NU: 1:06-CV-38 K.A.J

CARROLL et al

PETITION UNDER 28 U.S.L 2254 FOR A WRIT

OF HABEAS CORPUS

SUPPORT MEMORANDUM



FILED

FEB 1 4 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Stephen R. Winn

STEPHEN R. WINN

DATED: 2/7/06                    SBI # 177957

DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD

SMYRNA, DE 19977

ASK BOB

## STATEMENT OF FACTS

THE DEFENDANT ASSERTS TO THIS COURT THE HISTORY CENTERING AROUND THE TRUTHFULNESS TO HIS DEFENSE THAT HE WANTED DEFENSE COUNSEL TO CONVEY TO THE JURY AT TRIAL, SO THIS COURT CAN HAVE A CLEAR PICTURE IN REVIEWING DEFENSE COUNSEL'S ACTS AND OMISSIONS, WHICH AMOUNTED TO INEFFECTIVE ASSISTANCE OF COUNSEL.

THE DEFENDANT'S DEFENSE WAS AND IS, THAT HE IS INNOCENT OF THE CRIME OF UNLAWFUL SEXUAL INTERCOURSE, ALONG WITH ALL RELATING OFFENSE, AND THAT THE ALLEGED VICTIM HAS FABRICATED THE TESTIMONY AND EVIDENCE CONCERNING THESE EVENTS.

THE DEFENDANT EXPLAINED TO COUNSEL THE REASON WHY THE ALLEGE VICTIM WOULD FABRICATE SUCH SERIOUS ALLEGATION; WHICH IS, SHE FOUND OUT THAT THE DEFENDANT WAS MADE AWARE THAT SHE HAD POSSIBLE GAVE HIM AIDS.

THESE CRIMES THAT THE DEFENDANT IS NOW BOUND TO, ALLEGEDLY OCCURRED FROM JANUARY 15-18, 2001. DEFENDANT ADMITTED TO COUNSEL THAT THERE WAS ANGER WHICH LED TO A DEMESTIC ABUSE RESTRAINING ORDER, BUT THERE WAS NO CHARGES EVER FILED AGAINST THE DEFENDANT.

FROM JANUARY 19th UNTIL MARCH 2nd, THE DEFENDANT AND ALLEGE VICTIM HAD BEEN IN CONSTANT COMMUICATION WITH EACH OTHER STILL HAD BEEN NO CHARGES EVER FILED AGAINST THE DEFENDANT.

## STATEMENT OF FACTS

IT WASN'T UNTIL THE COURT DATE OF MARCH 2nd, WERE THE DEFENDANT HAD TO APPEAR FOR THE RESTRAINING ORDER THAT HIS RELATIONSHIP WITH ALLEGE VICTIM DESSENTIGATED.

DURING THIS HEARING DEFENDANT WAS TOLD THAT HE HAD TO LEAVE HIS HOME AND THE LIFE HE BUILT. DEFENDANT TOLD ALLEGE VICTIM, AFTER WHAT SHE HAS DONE TO HIM, NOW SHE WANTS HIM TO LEAVE HIS HOME; THE DEFENDANT SAID TO HER, "YOU BETTER GET A GUN". MEANING, THE ONLY WAY HE WAS LEAVING, SHE WOULD HAVE TO SHOOT HIM.

I WAS THEN AND ONLY THEN THAT THESE ALLEGE CRIMES SPRUNG UP ON THE DEFENDANT. REMEMBER THESE CHARGES WASN'T FILED AGAINST THE DEFENDANT UNTIL MARCH 12, 2001.

THE DEFENDANT ASSERTS THAT COUNSEL'S ACTS AND OMISSIONS PREVENTED THE DEFENDANT FROM PROVING THE TRUTHFULNESS OF HIS DEFENSE WITH THE KNOWN FACTS, WHICH DENIED THE DEFENDANT OF EFFECTIVE ASSISTANCE OF COUNSEL. THIS IS DEFENDANT'S OPENING BRIEF.

GROUNDONE.

COUNSEL'S REPRESENTATION WAS PERFUNCTORY
AT BEST, WHICH DENIED THE PETITIONER OF
HIS 5TH AND 14TH AMENDMENT RIGHT OF DUE
PROCESS OF LAW, AND HIS 6TH AMENDMENT
RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

Defense attorney stated in his response that it is impossible
to calculate all the hours that the Public Defender Office spent
interviewing witnesses, gathering records, reviewing medical reports,
counseling the defendant and otherwise preparing his case for trial,
the number is significant, however.

The defendant asserts that defense counsel has over looked that
counsel's function as assistant to defendant derive the overarching
duty to advocate defendant's cause and more particular duties to con-
sult with defendant on important decisions and to keep defendant in-
formed of important developments in course of the prosecution. (U.S.
C.A. Const. Amend 6).

Defense attorney never discussed any strategies and refused to
fully investigate all issues or witnesses that were favorable to the
defendant's defense. These error are clearly out lined in the record.
Defendant asked defense counsel to recieve documents concerning a
second pager that he bought which was to prove that the defendant was
at another location during the date of the allege crimes.

Defense counsel refuse togather this information, stating that,
his investigator said, the defendant was at the store dealing with
issue concerning his pager, but it was on the 18th, the day the allege
victim was released. Defendant asserts that if a adquate and propor
investigation was conducted, counsel would have learnt that the defend-
ant was at the store buying a pager on 1/16/2001. see(exh.A).

The allege victim stated in her affidavit that she wasn't allowed
to leave the house for any reason until 1/18/2001. see(exh.B), further-
more,state witnesses, testifying at trial, implied that the defendant

/.A

was with the allege victim the full three days of these allege crimes. (1/15-18/2001). Clearly this evidence was necessary and needed in order to impeach and discredit all points of the state's case, showing that the defendant was at a different location on one of the days in question.

The defendant further asked counsel to obtain the phone records, (phone bill), from the allege victim's residence and the defendant's phone records from Gander Hill Prison. The state has stated that the allege victim was afraid of the defendant and this is why she did not bring forth these charges against the defendant sooner. (charges filed against the defendant on 3/12/2001 almost two months later.)

The phone records from the allege victim's residence would show that she constantly called the defendant, especially on the 19th, the day after these allege crimes. Her constant calling the defendant would show to the jury that her action were inconsistent with the actions of a woman who was beaten and raped for three days, now turning to call her rapist to talk.

The phone records of the defendant's calls from Gander Hill Prison would further show that the defendant and allege victim was in constant communication. Even though the defendant testified that he called allege victim and allege victim testified that sometime she did accept defendant's phone calls, (transcr-Feb 20 pg.61,64,81). With out this evidence it was impossible for the defendant to prove and to corrobrate his testimony and defense with the known facts.

The records from Gander Hill Prison would show a pattern that the defendant would call the allege victim at the same time every time he called, and the juror would see that there was an agreed time for the defendant to call and that the defendant and the allege victim had a on going relationship.

The phone records from the allege victim's residence and the phone records of the defendant from Gander Hill Prison was relevant to impeach state witnesses and prove the defendant's defense. Defense counsel's actions clearly denied the defendant of effective assistance of counsel.

2.A

A-4

GROUND TWO:  COUNSEL FAILED TO CONDUCT A MEANINGFUL
INVESTIGATION, WHICH DENIED THE PETIT-
IONER OF HIS 5TH AND 14TH AMENDMENT
RIGHT OF DUE PROCESS OF LAW, AND HIS
6TH AMENDMENT RIGHT TO EFFECTIVE ASSI-
STANCE OF COUNSEL.


Defense counsel has stated in his affidavit that all efforts had
been made to produce the defendant's witnesses. The petitioner asserts
that defense counsel called Mr.Walker to the stand as a witness, asking
him if the defendant was working on his car at the time of the allege
crime.

Mr.Walker stated, yes, but he doesn't know on what days. (transr-
Feb 21. pg.98). This is a further example of defense counsel's lack of
communication with the defendant. The defendant asserts to this court
that he never did ask for Mr.Walker to be called as a witness.

On one of the days of the allege crimes the defendant was working
on another woman's car who Mr.Walker had referred to him. When Mr.Walker
testified, he did state that the defendant was working on someone else's
car. (transc-Feb 21. pg.100). The defendant also testified that he fixed
the back brakes of this woman's car and took it through inspection for
her on January 17,2001. (transc-Feb 21.pg.75-76)-77

Defendant asked counsel toget intouch with Mr.Walker in order toget
this woman's name from him so that she would be subpoenaed in order test-
ify that the defendant did work on her car on January 17,2001. Defense
counsel failed to obtain relevant facts from his client, he failed to
pursue obviouse leads provided by his client and he failed to completely
gather corroborating evidence from the sources his client gave to him.

The defendant gave defense counsel a source of information coming
through Mr.Walker that would produce relevant testimony and evidence
needed for the defendant's defense.

Instead of counsel retrieving this information, the name of this
woman from Mr.Walker,(who testify that the defendant was working on her
car on 1/17/2001, counsel called Mr.Walker to the stand.

3.A

Counsel's actions at this point in the proceedings crippled the defendant's defense, which denied him the ability to establish his defense through the known facts, that these crimes never occurred, that the allege victim fabricated them after the March 2nd court hearing for the restraining order.

Defendant also asked defense counsel to call as a witness nurse Thomas and the doctor who conducted the examination of the allege victim.

The defendant asserts that the prosecution never proved the crime of unlawful sexual intercours. When the defendant pled not guilty, it put to issue every essential element of the crime charge. Roe v. United States, 287 F.2d 435., With that, the burden rested on the prosecution to prove each material element of the offense charged beyond a reasonable doudt. Mullancy v. Wilbur, 421 U.S. 684. State v. Criffin, 397 A.2d 89. (1979).

The prosecution did not satisfy the burden of proof in each element of the charge of unlawful sexual intercourse. The prosecution never proved or offered into evidence any evidence that a rape had ever occurred.

This is why the evidence found in the medical reports of the allege victim was so important. The taking of physical evidence from a complaining witness at the hospital is common procedure in a case of this nature., there may have been hair, dirt, debris, fibers and flouids, any kind of physical evidence found on the allege victim that could be compared to the defendant to support the fact if a rape has occurred or not.

The Supreme Court of Delaware has stated that it is significant that the results of a comparative hair analysis have been held to be so important to the defense of a criminal case as to require the reversal of a conviction if access to such information is denied by the state. Ayers v. State, Del.Supr. 436 A.2d 800 (1981). Deberry v. State, Del. Supr. 457 A.2d 744,751 (1983). Fenesterer v. State, Del.Supr. 509 A.2d 1106 (1986).

In a rape case, it is possible to test a sample of seminal fluid taken from the victim and compare it with samples of a defendant's saliva and blood. The results of such a test can not positively identify a defendant as the perpetrator but the test can conclusively excupate an

individual if the blood types do not match. This procedure is widely employed by law enforcement authorities, and has been accepted by a number of courts. United States v. Kennedy,714 F.2d 968 (1933). Davis v. Pitchess, 388 F.Supp 105,107-08 (1974). Bowen v. Eyman,324 F.Supp 339-40 (1970). The materiality of a sperm sample in a rape case thus goes well beyond the Agurys "Reasonable Doubt" requirement. United States v. Agurs,427 U.S.97 (1976). This is why a rape kit is taking from an allege victim at the hospital. The prosecution stated that the hospital doesn't conduct rape kits. (Transc-Feb.22,pg.13).

The medical report could also determine if there was some form of vaginal tearing or not, which is consistent with rape; but this information laid dormant, unretrievable because there was no expert present to give testimony to the information found in this report.

The prosecution entered the medical report into evidence and called Ms.Barbra Kubec as expert witness to give testimony to the findings of this report, in doing so he open the door to this line of inquiry. see State v. Delosantos,536 A.2d 609(1988). State v. Messier,549 A.2d 270 (1988).

Ms.Kubec was employed as the Medical Records Coder and Correspondence Cleark. (transc-Feb.21,pg.16). Ms.Kubec was not an expert, nor did she conduct the examination of the allege victim. All Ms.Kubec could do was read the report. When question, Ms.Kubec could not give a detail analysis of the findings in these medical reports or to the allege victim's demeanor or character on the day in question.

In Fensterer v. State, Del.Supr. 509 A.2d 1106, 1109-11 (1986)., the victim had been strangled with a cat leash and two strands of hair was found on the cat leash that was said to be that of the victim. The expert witness testified in trial, after doing his analysis he determined that the hair found on the cat leash was that of the victim, but he could not explain how he reached his conclusion because he didn't have his notes in court.

The Court held, that all the testimony of the expert witness centering around the creditability of the strands of hair being that of the victim was hearsay evidence, and the defendant was denied his right to cross examination because the notes were not present in court, we have

S.A

A-7

a siminar situation here. Ms.Aubec testimony was clearly hearsay, she was not an expert, niether did she fill out the medical report, and she was not present at the initial examination of the allege victim.

Nurse Thomas was the nurse on duty at the time the allege victim entered the hospital. It was nurse Thomas who talked with the allege victim and preformed certain parts of her examination along with the attending physician.

No time during trial did the allege victim ever state that she was raped. It was the prosecution who also stated, putting into evidence, quote: "that the first time she heard that she was a victim of a rape was when someone at the hospital told her." (transc-Feb 22,pg.13).

Therefore, prosecution assumed that defense counsel was going to call a witness from the hospital. (transc-Feb 20,pg.48-49). Clearly the defendant was denied effective assistance of counsel when counsel failed to call nurse Thomas and the attending physician as expert witnesses to testify to the findings in the medical reports and to the allege victim's demeanor and character,and to the fact that the allege victim never said she was raped nor was she treated for rape, but she was treated for an eye injury only.

The defendant was denied his right to conduct a meaningful cross examination of the context of the allege victim's medical reports, to prove the truthfulness to his defense when counsel failed to have nurse Thomas and the attending physician prepared and ready to testify at trial.

GROUND THREE:

COUNSEL FAILED TO SECURE, OBTAIN, OR
SHARE DISCOVERY WITH DEFENDANT, WHICH
DENIED THE PETITIONER OF HIS 5TH AND
14TH AMENDMENT RIGHT OF DUE PROCESS
OF LAW AND HIS 6TH AMENDMENT RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL.

Counsel has stated in his affidvit that he is unware of any dis-
covery violation. The defendant informed defense counsel that he
wanted to view Ms.Emily Cunningham's notes before they were allowed
to be entered in as evidence in trial. Defense counsel said there is
no need because her testimony is already on the record.

Ms.Cunningham worked for the Batter Woman's Shelter, (transc-Feb
20.pg.103), and she testified that the allege victim told her every-
thing that happen to her on those three days when she was held by the
defendant back in January. She also testified that the allege victim
told her that she was beaten and rape by the defendant. (transc-Feb.
20.pg.102-118).

When Ms.Cunningham was asked if she has her notes, which would
confirm the allege victim's statements to her, she said no. (transc-
Feb 20.pg.120). After Ms.Cunningham stepped down, leaving the court
room, minutes later her notes were recieved by the prosecuting attor-
ney. (transc-Feb 20.pg.169).

The defendant asserts that counsel refuse to allow the defendant
to view these notes., Nevertheless, defense counsel's failure to object
to the admission into evidence Ms.Cunningham's testimony further demon-
strated counsel's ineffectiveness.

As the defendant has previousely discussed, Delaware Court has
held that it is unconstitutional to elicit testimony from an expert
witness without turning over there notes or findings for inspection.
Lilly v. Virginia, 1195 ct 1887 (1999). Fensterer v. State, Del.Supr.
509 A.2d 1106 (1986). Relevancy and inspection with a view to use on
cross examination are established when they are shown to relate to test-
imony of witnesses. Deberry v. State of Delaware, 957 A.2d 744. (Del.
Supr. 1983).

7. A

A-9

The sixth amendment guarantees the right of the accured to be confronted with the witnesses against him. Confrontation means more than being allowed to confront the witnesses physically. The primary interest secured by the clause is the right of cross examination. Douglas v. Alabama. 380 U.S. 415 (1965). Ward v. State, Del.Supr. 395 (1978). Cross examination is the prinicipal means by which the believ- ability of a witness and the truth of his testimony are tested. Davis v. Alaska,

The nature of this error was furthered revealed when the jury, during deliberation question the court, if there was evidence that was be provided by Ms.Cunningham. (transc-Feb 22.pg.91-92). The Court res- ponded stating:

> "Ms.Cunningham-or Ms.Cunningham testified, so there is evidence that she provided during the trial you may consider in reaching your verdict. If you are referring to the notes that the court asked her to provide, Ms.Cunningham did provide those notes and it did not cause either side to recall her as a witness. (transc-Feb 22.pg.94).

Clearly there appeared to be some concern on the part of the jur- or's centering around Ms.Cunningham's testimony, to the point it quest- ion the court, thus the court knewn the notes were relevant to Ms.Cunn- ingham's testimony; (transc-Feb 20.pg.124), and the court's handling of these notes may have stripped the juror's of its inquiry to get at the truth of her testimony, while allowing them to base there consider- ation on hearsay evidence.

> Rule 801(c) definition: Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to the truth of the matter asserted.

Ms.Cunningham's testimony with out the presentation of her notes is clearly hearsay evidence. Her notes were never introduce as evidence in trial to corroborate her testimony. This error standing alone carries the weight to have the defendant's verdict set aside and remanded for a new trial. The defendant asserts that he had the right to view and to inspect Ms.Cunningham's notes even though he had counsel, because the

8.A

defendant has more knowledge of the situation centering around these
allege crimes, he may have noticed something in Ms.Cunningham's notes
that defense counsel was unware of.

The defendant was denied effective assistance of counsel, and
counsel's actions prejudice the defendant by allowing hearsay evidence
to enter trial and to be considered by the jurors.

The defendant further contends that counsel's only in-trest in
the defendant's case was to plead it out. Counsel in his affidavit give
this long list of things he has done to demonstrate his zealiousness in
representing the defendant.

The defendant asserts that counsel was asked by the court if there
will be some evidence presented in the defense side, counsel stated:

> "I'll say this "Mr.Winn up to this point has expressed a
> desire to vigorously defend himself, That could include
> us presenting possibly the testimony by one, up to-I
> forgottrn the number. I think I've subpoenaed like ten
> witness. At this point I can't say were going to have
> all those witnesses testify. Mr.Winn and I need to con-
> sult further. Some of those witnesses may be testifying
> to the same thing. Might require sorting out. But at
> this point I can't give the court any better indication
> than that. (trancs-Feb 20.pg.169).

At this point counsel should have known what line of defense was
going to be employed at trial if he was adquately prepared. Counsel has
been assigned to the defendant's case for about a year.

COUNSEL RESPONSE TO THE COURT HAS DEMONSTRATED HIS UNPRE-
PAREDNESS.

THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION QUARANTEES
AN ACCURED THE RIGHT TO TRIAL AND THE "ASSISTANCE" OF
COUNSEL . U.S. C. AMEND. 6

THUS, IN McMANN, THE COURT INDICATED THAT THE ACCUSED
IS ENTITLED TO "A REASONABLY COMPETENT ATTORNEY", 397 U.S.
AT 770 , 90 S. Ct AT 1448 ,

9.A

WHOSE ADVICE IS "WITHIN THE RANGE OF COMPETENCE DEMANDED OF ATTORNEY IN CRIMINAL CASE".

THUS, THE ADVERSARIAL PROCESS PROTECTED BY THE SIXTH AMENDMENT REQUIRES THAT THE ACCUSED HAVE "COUNSEL ACTING IN THE ROLE OF AN ADVOCATE", ANDER V. CALIFORNIA, 386 U.S 738 (1967). THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IS THUS THE RIGHT OF THE ACCUSED TO REQUIRE THE PROSECUTION'S CASE TO SURVIVE THE CRUCIBLE OF MEANINGFUL ADVERSARIAL TESTING. WHEN A TRUE ADVERSARIAL CRIMINAL TRIAL HAS BEEN CONDUCTED - EVEN IF DEFENSE COUNSEL MAY HAVE MADE DEMONSTRATE ERRORS - THE KIND OF TESTING ENVISIONED BY THE SIXTH AMENDMENT HAS OCCURRED. BUT IF THE PROCESS LOSES ITS CHARACTER AS A CONFRONTATION BETWEEN ADVER- SARIES THE CONSTITUTIONAL QUARANTEE IS VIOLATED, THIS IS WHAT HAS HAPPEN IN THE CASE NOW BEFORE YOU. UNITED STATES V. CRONIC. 104 S. ct. 2039 AT 2015 - 46. (1984).

THE DEFENDANT ASSERTS THAT DEFENSE COUNSEL'S STRONG BELIEF IN THE STATES CASE BLINDED HIM FROM THE TRUTH TO THE DEFENDANT'S DEFENSE, WHICH MADE HIM TO FOCUS ONLY ON GETTING THE DEFENDANT TO PLEAD OUT.

THE DEFENDANT EXPLAIN THE TRUTH OF HIS DEFENSE TO COUNSEL AS HE HAS DONE FOR THIS COURT. THE DEFENDANT DIRECTED COUNSEL TO WITNESSES AND DOCUMENTS THAT WOULD SUPPORT AND PROVER HIS DEFENSE.

COUNSEL REFUSE TO CALL THESE WITNESSES TO THE STRAND AND TO OBTAIN THESE DOCUMENTS TO THE POINT THAT THE PROSECUTION IN

10.A

ITS CLOSING AGRUMENTS OUT LINE DEFENSE COUNSEL'S UNPREPAREDNESS
TO THE JURY, STATING:

"WHEN DONNA WAS ON THE STAND? MR. EDINGER DIDN'T
ASK HER A SINGLE QUESTION ABOUT CRACK COCAINE.
(TRANSC-FEB 22. PG. 20-21). "WELL, DONNA IS A CRACK
HEAD, MARCUS JOHNSON IS HER DEALER, ACCORDING
TO HIM. HELLO? MARCUS JOHNSON WAS UNDER SUBPOENA,
DID WE HEAR FROM MARCUS JOHNSON THE DRUG DEALER?"
(TRANSC-FEB 22. PG. 19). "WELL, THE DEFENSE NEVER ASKED
ANYTHING TO BE TESTED". (TRANSC-FEB 22. PG. 10).

THE DEFENDANT ASSERTS TO THIS COURT THAT IT WASN'T THE DEFENDANTS
OBLIGATION TO OFFER EVIDENCE TO PROVE HIS INNONCENCE, BUT IT WAS
THE STATE'S DUTY TO PROVE IT'S CASE AGAINST THE DEFENDANT BEYOND
A REASONABLE DOUBT.

THE PROSECUTION IN ITS CLOSING, SWITCHED THE BURDEN OF PROVE
ON TO THE DEFENDANT IN DOING SO, IN THE PRESENCE OF THE JURY,
DEMONSTRATED THAT DEFENSE COUNSEL DID NOT ASK QUESTIONS OF
WITNESSES WHO TESTIFIED ON THE STAND., THAT COUNSEL DIDN'T CALL
WITNESSES TO THE STAND THAT WOULD CORROBORATE THE DEFENDANT'S
DEFENSE., AND THAT COUNSEL NEVER SOUGHT OUT EVIDENCE OR DOCUMENTS
TO SUPPORT THE DEFENDANT'S DEFENSE.

COUNSEL LACK OF ZEALIOUSNESS AS EXPOSED TO THE JUROR'S, BY
PROSECUTION, WAS ENOUGH TO DEMONSTRATE COUNSEL'S LACK OF
COMMITTMENT, READINESS AND COMMUNICATION WITH THE DEFENDANT.

DEFENSE COUNSEL STATED IN HIS AFFIDAVIT THAT THE DEFENDANT WALKED OUT ON HIM DURING ONE INTERVIEW.

THE DEFENDANT ASSERTS THAT GANDER HILL PRISON ONLY GIVE AN INMATE 30 MINUTES TO MEET WITH HIS ATTORNEY. DEFENSE COUNSEL WOULD MAKE SERUAL APPOINTMENTS TO SEE THE DEFENDANT BUT HE WOULD ARRIVE 20 MINUTES LATE, AND ON SERUAL OCCASSION COUNSEL CLAIMED TO FORGET THE DEFENDANTS FILE . SEE EXHIBIT PG 38, 39

THE DEFENDANT WROTE JUDGE JOSPEH R. SLIGHTS III , MR ANGELO FALASCA OF THE PUBLIC DEFENDER OFFICE., THE OFFICE OF DISCIPLINARY COUNSEL., JUDGE GEBLEIN AND JUDGE SUSAN DEL. PESCO.; AND ALSO APPEARED IN OPEN COURT BEFORE JUDGE GEBELEIN AND JUDGE DEL, PESCO., IN EACH CASE THE DEFENDANT EXPRESSED HIS FRUSTRATIONS IN COUNSEL'S UNWILLINGNESS TO PREARE DEFENDANT'S DEFENSE FOR TRIAL . SEE EXHIBIT PAGE 36 TH 52

COUNSEL DIDN'T KNOW WHAT THE DEFENSE WAS GOUNG TO BE. HE DIDN'T KNOW HOW MANY OR WHAT WITNESSES TO CALL. HE DIDN'T KNOW IF THE DEFENDANT WAS GOING TO TAKE THE STAND OR NOT. (TRANSC- FEB 20. PG. 169), THE QUESTION TO THE COURT IS WHY ?

DEFENSE COUNSEL WROTE THE DEFENDANT IN A LETTER DATED JULY 5, 2001 STATING : THE STATE'S CASE IS ROCK SOLED ON THE ASSAULT 2Nd AND POSSESSION OF A DEADLY WEAPON . MY EXPERIECE TELL ME THAT IF THE JURY IS CONVICED SHE'S TELLING THE TRUTH ABOUT THESE CHARGES THEY WILL MOR THAN LIKELY BELIEVE HER FOR ALL THE CHARGES. (SEE EXHIBIT C.). PG 10

DEFENSE COUNSEL HAS A DUTY TO BRING TO BEAR SUCH SKILL AND KNOWLEGE AS WILL RENDER THE TRIAL A RELIABLE ADVERSARIAL TESTING PROCESS. U.S.C.A. CONST. AMEND 6. STRICKLAND V. WASHINGTON, 104 S. Ct. 2052 AT 2065 (1984), AND ABA STANDARD OF COUNSEL AND DEFENSE FUCTIONS.

THIS NEVER HAPPEN BECAUSE COUNSEL HAD MORE FAITH IN THE PROSECUTION'S CASE AGAINST THE DEFENDANT, THAT ALL HE WANTED THE DEFENDANT TO DO WAS PLEAD OUT. (THE DEFENDANT WAS FOUND NOT GUILTY ON THE ASSAULT 2dn AND POSSESSION OF A DEADLY WEAPON).

THE DEFENDANT HAS BEEN DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

DEFENDANT DID NOT REVIEW AN AUDIO
TAPE OF THE TELEPHONE CONVERSATION
BETWEEN THE DEFENDANT AND THE VICTIM
GROUND FOUR: BEFORE TRIAL, WHICH DENIED THE
PETITIONER OF HIS 5TH AND 14TH
AMENDMENT RIGHT OF DUE PROCESS OF LAW
AND HIS 6TH AMENDMENT RIGHT TO EFFECT-
IVE ASSISTANCE OF COUNSEL.


Defense counsel has stated in his affidavit, that the defendant
asserts that he did not review an audio tape of the telephone
conversation between the defendant and victim before trial, but counsel
prepared notes of the tape and shared it with defendant on February 15,
2002.

The defendant asserts to this court that counsel never allowed
the defendant to view or inspect the tape recorded statement between
Ms.Cleckley and Detective Donion.

The prosecution did not disclose this tape recorded statement to
the defense until the day before trial, and defense counsel did object
to having this tape entered in as evidence. (transc-Feb 20.pg.13),
Notwithstanding, counsel arrored when he did not allow the defendant
to view or inspect this tape.

The defendant first hear about this tape between Ms. Cleckley and
Detective Doion when he enter the court room, trial Judge stated to
defendant:

Mr.Winn, the only thing that's happen in your absence is that
Mr.Edinger has put on the record those portion that are
objectionable-that he objects to and so I could consider them
while we were bringing you up from the cell block. So I haven't
made any ruling.Mr.Edinger has just put on the record his areas
that he's concerned about. (transc-Feb 20.pg.25).
The defendant assert that he was misled by the court, Unintentionally
or not. The court stated that the only thing happen in absence of the
defendant was that counsel entered objection to the introduction of tape
into evidence.

14. A

the defendant was that counsel entered objection to the introduction
of tape into evidence.

The record clearly reflects that there was a third party on this
tape, (Ms.Mercer), who's presence, comments and statement was redacted
from the tape, out side the presence of the defendant. (transc-Feb 20.
pg.16-17).

The record reflects that no one ever mention anything about Ms.
Mercer role on the tape while the defendant was present in the court
room. (transc-Feb 20.pg.25-37)

The court has held, "practice of producing government document to
the trial judge for his determination of relevancy and materiality, with-
out hearing the accused, is disapproved. Relevancy and materiality, with
a view to use on cross examination, are established when the reports are
shown to relate to the testimony of the witness. Only after inspection
of the reportd by the accused, must the trial judge determine admissibi-
lity-e,g, evidentiary questions of inconsistency, materiality and rele-
vancy-of the contents and the method to be emploed for the elimination
of parts immaterial or irrelevant. Jencks v. United States, 77 S.ct at
1015, 1007 (1957).

After reviewing and inspecting the tape statement between Detective
Donion and Ms.Cleckley, the defendant had the right to consider if the
whole tape was inadmissible, because Ms.Mercer was present at and during
the interview, but she was not a member of the police department.

The defendant had the right to consider if Ms.Cleckley statement
on the tape should be heard by the juror's in showing that Ms.Mercer's
comments touched on evidence, (as the duck tape), in trying to build an
adequate crime scence for the allege victim.

The defendant had the right to consider to allow the juror's to
hear the whole tape in demonstrating the allege victim's character and
demeanor at the time of the allege crime. The defendant had tne right
to deside in what manner this tape was to be used or not used for his
defense., and for defense counsel not to allow the defendant to view
or to inspect the context of this tape denied the defendant of effective
assistance of counsel, and the trial court's actions prejudice the
defendant.

$15, A$

This is the second time in this trial that counsel has called the wrong witness to the stand, the first was Mr.Walker. (see Ground two of this motion).

The harmful effects of counsel's actions was laid out before the juror's again during closing agruments, when prosecuting attorney stated:

> "Let me turn my comments to the to the witnesses, First the defense witness, Tony Oh and Emanual Walker, The defense witnesses. They told you that someone paid Stephen Winns pager Bill on January 18th and they told you that Stephen Winn worked on a car sometime in January, I think term used by Donno Cleckley in one of the tapes sums up their testimony very well; WHOOPTY-DO-So WHAT? These are non-witnesses-they added nothing to the trial. (transc-Feb 22.pg.9).

Defense counsel's actions clearly prejudice the defendant, denying him of the ability to impeach state witnesses, while stopping the defendant from presenting and establishing his defense.

The defendant also wanted Kevin Winn, the defendant's brother to be called to the stand as a witness, because he would confirm that the defendant did buy a new pager, because he was the one who drove the defendant to Pager Plus. ( see EXHABIT y ) PG JY-53

Kevin Winn would also testify to the fact that he did see the allege victim come looking for the defendant at his home on different occassion, and when she came she was alone. Defense counsel refused to call Kevin Winn to the stand as a witness. Kevin, testimony was important because it would show the character and demeanor of the allege victim. Kevin would testify that on those days that she came looking for the defendant, that she did not look fearful, demonstrating it by coming alone.

The defendant asserts, that counsel has a duty to make reasonable investigations or to make a reasonable decision that make particular investigations unnecessary. In any ineffective case, a particular decision not to investigate must be directly assessed for reasonableness in all the circustances.

There is no plausible strategy that would cause counsel to call

GROUND FIVE:

COUNSEL DID NOT SUBPOENA DEFENDANT'S
WITNESSES; WHICH DENIED THE PETITIONER
OF HIS 5TH AND 14TH AMENDMENT RIGHT OF
DUE PROCESS OF LAW, AND HIS 6TH AMENDMENT
RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

DEFENSE COUNSEL STATES IN HIS AFFIDAVIT THAT HE SUBPOENAED ALL THE DEFENDANT'S WITNESS, AND THOSE THAT APPEARED WERE CALLED EXCEPT THOSE, WHO IN COUNSEL'S OPINION HAD NOTHING OF SUBSTANCE TO ADD TO DEFENDANTS DEFENSE.

THE DEFENDANT ADMITS THAT COUNSEL DID SUBPOENAED HIS WITNESSES, BUT FAILED TO CALL THE NECESSARY WITNESSES TO THE STAND TO TESTIFY TO THE DEFENDANT'S DEFENSE.

THE DEFENDANT TOOK THE STAND AND TESTIFIED UNDER OATH THAT MARCUS JOHNSON, WAS A DRUGDEALER WHO THE ALLEGE VICTIM, OWED MONEY TO, AND DRUGS WAS THE REASON BEHIND THE DEMESTIC DISPUTE BETWEEN THE DEFENDANT AND THE ALLEGE VICTIM., AND MARCUS JOHNSON WOULD ALSO TESTIFY AS THE DEFENDANT TESTIFIED THAT HE SAW THE DEFENDANT AND THE ALLEGE VICTIM ON SERVAL OCCASSIONS TOGATHER WITHIN DAYS AFTER THE ALLEGE CRIME. (TRANSC-FEB 21. PG. 127).

THE DEFENDANT WANTED MARCUS JOHNSON TO TESTIFY TO THOSE FACTS, BUT COUNSEL REFUSED TO CALL MARCUS JOHNSON AS A WITNESS. (SEE EXHABIT X) PG 55

17.A

COUNSEL'S ACTION BECAME EXTREEMLY PRJUDICAL WHEN PROSECUTING ATTORNEY IN HIS CLOSING, IN THE PRESENCE OF THE JUROR'S, ASKED WERE IS MARCUS JOHNSON? HE WAS SUBPOENAED, HOW COME WE DIDN'T HEAR FROM HIM? (TRANSC - FEB 22. PG. 19.).

THIS ALLOWED THE JUROR'S TO SEE THAT THE DEFENDANT TESTIFIED TO FACTS OF HIS DEFENSE THAT WERE NOT CORROBORATED BY THIS WITNESS.

THE DEFENDANT ALSO WANTED MR. AND MRS. KIM, THE OWERS OF PAGER PLUS, CALLED AS WITNESS, TO TESTIFY CONCERNING THE DEFENDANT'S BEEPER.

MR. AND MRS. KIM, WOULD HAVE TESTIFIED THAT THEY KNOW THE DEFENDANT BECAUSE HE IS A REGULAR CUSTOMER AND THE DEFENDANT'S BEEPER WAS DISCONNECTED ON THE DATE OF JANUARY 15th WHEN THE ALLEGE VICTIM TESTIFIED THAT SHE HAD PAGED THE DEFENDANT ON THAT DATE. (TRANSC - FEB 19. PG. 59). (SEE EXHABIT A). PG 2,3

MR. AND MRS. KIM, WOULD HAVE ALSO TESTIFIED THAT THE DEFENDANT PURCHASED A NEW BEEPER ON JANUARY 16 th, IMPEACHING THE VICTIM'S AND STATE'S WITNESS TESTIMONY, THAT THE DEFENDANT HELD THE ALLEGE VICTIM FOR THREE DAY, NOT ALLOWING HER TO LEAVE. (TRANSC - FEB 19. PG. 104). (SEE EXHABIT B PG 7,6) AND PG 4

DEFENSE COUNSEL NEVER DID CALL MR. AND MRS. KIM, THE PERSONS WHO HANDLED THE DEFENDANT'S TRANSACTIONS, DEFENSE CALLED TONY OH INSTEAD. (TRANSC - FEB 21. PG. 89 - 90).

THE WRONG WITNESSES TO SUPPORT THE DEFENDANT'S DEFENSE., AND THERE IS NO REASONABLE STRATEGY THAT WOULD ALLOW THE DEFENDANT TO TESTIFY TO THE FACTS OF HIS DEFENSE AND NOT CALL WITNESSES TO SUPPORT THAT DEFENSE WHEN THEY WERE AVAILABLE.

THE DEFENDANT HAS BEEN DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

18.A

GROUND SIX : THE DEFENDANT CONTENDS THAT HE WAS DENIED THE OPPORTUNITY TO PARTICPATE IN THE JURY SELECTION AND THE PREMPRETORY STRIKE AND CHALLENGES.

THE PETITIONER ASSERTS TO THIS COURT THAT COUNSEL FAILED TO ALLOW THE PETITIONER TO HAVE ANY SAY, POSITION, DECISION OR PARTICIPATION IN SELECTING THE JURY FOR TRIAL.

COUNSEL HAD STATED IN HIS AFFIDAVIT. "COUNSEL ALWAYS MAKES THE DECISION REGARDING JURY SELECTION, BUT ALSO CONSIDERS THE VIEW OF THE CLIENT. IN THIS CASE, DEFENDANT SHOWED NO INTEREST IN JURY SELECTION UNTIL AFTER THE FIRST TWO OR THREE CHALLENGES HAD BEEN EXERCISED. WHEN HE DID OFFER HIS VIEW OR OPINION, IT WAS CONSIDERED BY COUNSEL". SEE COUNSEL'S AFFIDAVIT. GROUND SIX PG 58 IN EXHIBIT

THE PETITIONER WAS NEVER INFORMED OR MADE AWARE THAT JURY SELECTION WERE TAKING PLACE, WHICH WAS DUE TO COUNSEL DIRECTING PETITIONER TO REVIEW A REPORT. THE PICKING OF THE JURY WAS ABLE TO GO UN-NOTICE. DUE TO THE FACT THESE PROCEEDINGS BEGUN IN SILIENCE, NO ONE WAS TALKING JUST MOTIONING, USING HAND SIGNAL, LIKE SIGN LANGUAGE.
* THE PETITIONER WROTE A LETTER TO THE SUPERIOR COURT REQUESTING AN COPY OF THE JURY SELECTION TRANSCRIPTS FOR HIS RULE 61 MOTION.

THE TRIAL COURT REFUSED TO GIVE THE DEFENDANT THE TRANSCRIPTS AND DENIED HIS REQUEST.

COUNSEL NEVER EXPLAINED THE JURY SELECTION PROCESS TO THE PETITIONER NOR DID COUNSEL INFORM PETITIONER THAT HE WAS PICKING OR DETERMINE WHAT JURY MEMBERS SERVED ON HIS PANEL.

COUNSEL NEVER EXPLAINED ANY NAMES OR INFORMATION OF SUBJECTED JURORS. IN U.S V. DANSON, 897. F. 2d 1444 (8th CIR 1996).

THE COURT HELD THAT COUNSEL MOST PROVIDE A DEFENDANT WITH INFORMATION OF THE JURORS CONCERNING THEIR EDUCATIONAL BACK-GROUND, WHAT THEIR OCCUPATION IS, WHICH IS REQUIRED OF A FAIR CRASS SECTION UNDER THE SIXTH AMENDMENT THAT APPLIES TO THE JURY POOL AND NOT TO PETITE JURORS ALSO IN MCBRIDE V. STATE, DE SUPR. 477 A. 2d 174 (1984) STATED A DEFENDANT IS NOT DENIED DUE PROCESS NIETHER WAS THE DEFENDANT'S RIGHT TO PREMPTORY CHALLENGES IMPLICED WERE DEFENDANT HAD FREE ACCES TO INFORMATION FROM JUROR QUESTIONAIRE.

COUNSEL ACTIONS DENIED THE PETITIONER THE ABILITY TO MAKE ANY PREMPTORY CHALLENGES OR TO MAKE A FAIR DECISION BASED ON INFORMED INFORMATION TO ANY PREMPTORY CHALLENGES WHEN AND HOW THEY WERE TO BE USED, WHICH MAY HAVE PRODUCED SOME FORM OF JURY BIAS. CLEARLY SOME FORM OF PREJUDICE MOST BE PRESUMED. BECAUSE COUNSEL IS THE PETITIONER'S MOUTH TO THE COURT.

COUNSEL IS REQUIRED BY THE UNITED STATES CONSTITUTION TO CONSULT WITH HIS CLIENT.

20). A

COUNSEL IS TO KEEP HIS CLIENT INFORMED OF ANY NEW DEVELOPMENT THAT MAY ARISE, AND TO MAKE SURE HIS CLIENT UNDERSTANDS HOW EACH PROCEDURE WORKS AND HOW HIS CLIENT CAN BE HELPFUL IN THAT PROCEDURE. THE COMPLEXITY OF THIS TRIAL AND THE KNOWLEDGE THAT THE PROSECUTION IS OFFERING A CASE BASED ON BATTERED WOMAN SYNDROME AND THERE IS GOING TO BE EYE WITNESS TESTIMONY GIVE THAT THE ALLEGE VICTIM IS SUCH A PERSON.

COUNSEL SHOULD HAVE MADE A MEANIFUL VOIRE TO THE JUROR'S VIEWS CONCERNING BATTERED WOMAN SYNDROME.

IN HANDSIGHT ONE CAN NOT BE CERTAIN THAT JURY BIAS DID NOT ATTACH TO THIS TRIAL CONCERNING BATTERED WOMAN SYNDROME.

COUNSEL'S ERROR IN NOT QUESTIONING THE JUROR'S CONCERNING THERE VIEWS ON BATTER WOMAN SYNDROME DENIED THE PETITIONER OF HIS RIGHT TO MAKE AN INFORMED DECISION, WHEN TO USE OR HOW TO USE HIS PREMPTORY CHALLENGES.

COUNSEL'S LACK OF VOIR SHOWNED WHEN IT WAS FOUND THAT JUROR 11 WORKED AT THE SAME JOB AS THE ALLEGE VICTIMS.

( THE POST OFFICE )

ON THE SECOND DAY OF TRIAL THE ALLEGE VICTIM INFORMED THE COURT THAT SHE KNEW JUROR 11 WORKED AT THE POST OFFICE WITH HER.

SEE: TRANSCRIPT FEB 20, PG 4

COUNSEL SHOULD HAVE KNOWN THE JOB STATUS OF JUROR 11; WITH THIS IN MIND, COUNSEL DID NOT INFORMED THE PETITIONER OF ANY NAMES OF THE JURY TO BE SELECTED.

21). A

COUNSEL NEVER GAVE THE PETITION ANY INFORMATION CONCERNING THE JUROR'S NOR DID COUNSEL ALLOW THE PETITIONER TO PARTICIPATION IN ANY WAY IN SELECTING THE JURY, WHICH IS SUPPOSE TO BE 12 PEOPLE OF MY PIERS, WHICH MEANS UNDER THE COUSTITUTION OF UNITED STATES THAT 12 PEOPLE WHO ARE FROM MY SURROUNDING AREA WHO ARE FAMILIAR WITH MY LIFE STLYE AND LIVING CONDISTION. PREJUDICE MOST BE PRESUMED. COUNSEL'S ACTIONS DENIED THE PETITIONER OF HIS 5th AND 6St AMENDMENT RIGHT TO INEFFECTIVE ASSISTANCE OF COUNSEL.

CONTROL AND DIRECTION OF THE CASE :

(A) CERTAIN DECISIONS RELATING TO THE CONDUCT OF THE CASE
ARE ULTIMATELY FOR THE ACCUSED AND OTHER ARE FOR COUNSEL;

(B) ALL OTHER DECISIONS ARE THE EXCLUSIVE PROVINCE OF THE
LAWYER AFTER CONSULTATION WITH THE CLIENT;

(C) IF A DISAGREEMENT OR SIGNIFICANT MATTERS OF TACTICS
OR STRATEGY ARISES BETWEEN THE LAWYER AND CLIENT,
THE LAWYER SHOULD MAKE A RECORD OF THE CIRCUMSTANCES HIS
ADVISE AND REASONS, AND THE CONCLUSIONS REACHED.

" EVEN IF THE DEFENDANT WILL LIKELY LOSE THE CASE ANYWAY, HE HAS THE
RIGHT - WHICH HE SUFFERS WHATEVER CONSEQUENCES THERE MAY BE TO THE
KNOWLEDGE THAT IT WAS THE CLAIM THAT HE HAD PUT FORWARD THAT WAS
CONSIDERED AND REJECTED, AND TO THE KNOWLEDGE THAT IN OUR FREE SOCIETY,
DIVESTED TO THE IDEAL OF INDIVIDUAL WORTH, HE WAS NOT DEPRIVED OF HIS
FREE WILL TO MAKE HIS OWN CHOICE, IN HIS HOUR OF TRIAL, AND TO
HANDLE HIS OWN CASE. " UNITED STATES V. DOUGHTERLY, 473 F. 2d 1113, 1128
D.C. CIR. 1972).

MOVANT CLAIMS THIS CASE MUST BE REVERSED AND ALL CHARGES DISMISSED
DUE TO THE VIOLATION OF MOVANTS 6th AND 14th AMENDMENT RIGHTS

MOVANT CLAIMS THAT HIS TRIAL ATTORNEY

MR. EDINGER CREATED A CONFLICT OF INTEREST

GROUND VII    IN THIS CASE WHICH VIOLATED MOVANTS 6th

AND 14th AMENDMENT RIGHTS THEREBY VIOLATING

MOVANT'S RIGHT TO A FAIR TRIAL.

MOVANT CLAIMS A CONFLICT OF INTEREST WHICH UNDERMINED THE JUDICIAL SYSTEM AND CAUSED THESE ILLEGAL CONVICTIONS IN VIOLATION OF MOVANT'S 6th AND 14th AMENDMENT RIGHTS. THE LEADING CASE OF THIS CLAIM UNDER CONFLICT OF INTEREST IS CITED UNDER. CUYLER V. SULLIVAN, 100,S.Ct.1708

MOVANT CLAIMS HE WAS REPRESENTED BY THE PUBLIC DEFENDERS OFFICE IN WILM DELAWARE, MR. JOHN S. EDINGER JR, FOR ALL CHARGE, WHICH MOVANT WAS ILLEGALLY ARRESTED AND CONVICTED OF IN THE SUPERIOR COURT OF NEW CASTLE COUNTY, IN ACCORDANCE WITH SUPERIOR COURT. SEE... GIDEON V. WAINWRIGHT 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed. 2d 799

MOVANT CLAIMS MR. EDINGER CREATED A CONFLICT OF INTEREST IN THIS CASE BY CUSSING AND FUSSING AT THE MOVANT AS SOON AS HE WAS APPOINTED TO REPRESENT THE MOVANT OF THE CRIMINAL CHARGES.

MOVANT CLAIMS MR. EDINGER CALLED HIM NAMES AND THREATEN TO SELL HIM OUT ON A NUMBER OF OCCAISION. JUST TO FORCE MOVANT TO TAKE A PLEA FOR SOMETHING HE DIDN'T DO AND THE PROSECUTION COULDN'T HAVE IEGALLY FOUND THE MOVANT GUILTY. IF HIS PUBLIC DEFENDER WOULD PROTECTED MOVANTS CONSTITUTIONAL RIGHTS TO A FAIR TRIAL. SEE LETTER EX PAGE 24, 25

MOVANT CLAIMS (HE HIRED) A PRIVATE INVESTIGATOR. DID INVESTIGATE
THE CASE AND GAVE MOVANT VALUABLE INFORMATION CONCERNING MOVANT CASE
AND MOVANT RELAYED THE IMPORTANT INFORMATION TO MR. EDINGER AND HE
CHOSE TO IGNORE THIS VERY IMPORTANT INFORMATION, WHICH COULD HAVE FOUND
MOVANT NOT GUILTY. MOVANT CLAIMS THIS CONFLICT OF INTEREST RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL. SEE.., STRICKLAND V. WASHINGTON 104
S. Ct. 2052     SEE: EXHABIT H PAGE 18   I PAGE 19

THE 6th AMENDMENT DOES MORE THAN REQUIRE THE STATES TO APPOINT COUNSEL
FOR INDGENT DEFENDANTS; THE RIGHT TO COUNSEL PREVENTS THE STATES FROM
CONDUCTING TRIALS AT WHICH PERSONS WHO FACE INCARCERATION MUST DEFEND
THEM SELVES WITHOUT ADEQUATE LEGAL ASSISTANCE.

FAILURE OF A RETAINED COUNSEL TO PROVIDE ADEQUATE REPRESENTATION CAN RENDER
A TRIAL SO FUNDAMENTALLY UNFAIR AS TO VIOLATE FOURTEENTH AMENDMENT AND
REQUIRE HABEAS RELIEF. U.S.C.A. CONST. AMENDS 6, 14.


A DEFENDANT WHO SHOWS THAT A CONFLICT OF INTEREST ACTUALLY AFFECTED THE
ADEQUAEY OF HIS REPRESENTATION NEED NOT DEMONSTRATE PREJUDICE IN ORDER
TO OBTAIN RELIEF. U.S.C.A CONST. AMENDS 6, 14.

TRIAL COUNSEL PERFORMANCE WAS AFFECTED BY HIS CONSTANT WILLINGNESS TO
UNDERMINE ANY TYPE OF DEFENSE, WHICH SHOULD HAVE BEEN PRESENTED AT
TRIAL, THIS WAS A DIRICT VIOLATION OF MOVANT'S 6th AND 14th AMENDMENT
RIGHTS. SEE.., EXHABIT (A) AND (B) PAGE 2, 4


MOVANT CLAIMS EVEN BEFORE TRIAL BEGAN HIS ATTORNEY MR. EDINGER BROUGHT
HIM BEFORE THE COURT AND TRIED TO FORCE MOVANT TO REPRESENT HIMSELF
ON THESE ILLEGAL CRIMINAL CHARGES. MR. EDINGER ELECTED TO MOTION FOR
THE MOVANT A MOTION TO PROCEED PRO-SE AS WELL AS A MOTION TO SEVER.
SEE: FEBRUARY 15, 2002 TRANSCRIPT OF MOTION TO PROCEED PRO SE AND TO SEVER
IN THE EXHABIT PAGE 30-33

MOVANT CLAIMS AT THIS HEARING HE WAS DENIED THE RIGHT TO A COMPETENT ATTORNEY FROM THE VERY BEGINING BECAUSE HIS ATTORNEY PRESENTED ISSUES HE RECEIVED FROM THE OFFICE OF DISCIPLINARY COUNSEL AGAINST HIS CREDABILITY. THEREFORE MOVANT WAS LEFT WITHOUT COUNSEL AT THAT TIME BECAUSE HIS ATTORNEY DEFENDING HIMSELF.

IT'S MOVANT'S CONTENTION MR. EDINGER WAS OPPOSED TO PROVIDING COMPETENT REPRESENTATION FROM THE VERY BEGINING BUT WHEN (A) FORMAL COMPLAINTS WERE FILED WITH THE OFFICE OF DISCIPLINARY COUNSEL, MR EDINGER TOOK DELIBERATE ATTEMPTS TO UNDERMINE THE MOVANTS DEFENSE. SEE LETTER FROM DISCIPLINARY OFFICE IN THE EXHABIT PAGE 34, 35

MOVANT CONTENDS THAT JUST LIKE THE ENTIRE CRIMINAL PROCESS IN THIS CASE, ANY TIME HE MENTIONED ANY ISSUE CONCERNING THIS CASE AND HIS FREEDOM THE ATTORNEY MR. EDINGER HAD A NEGATIVE RESPONSE TO ALL OF MOVANTS REQUEST AS IN THE LETTER DATED DECEMBER 9, 2002. SEE EXHABIT PAGE 29 SEE LETTER EX PAGE 22, 23, 24 25,

THE ATTORNEY MR. EDINGER CLAIMS THERE WERE NO TRANSCRIPTS FOR A HEARING HELD ON FEBRUARY 15, 2002, HOWEVER AFTER A COMPLETE AND THURUOGH SEARCH IT WAS DISCOVERED THE SUPERIOR COURT DID HAVE TRANSCRIPTS OF THAT HEARING. THE MOVANT HAD TO FILE SEVERAL MOTION AND REQUEST OF LETTER TO THE JUDGE AND COMPLAINTS TO THE COURTS AND FINALLY MOVANT DID RECEIVE THE TRANSCRIPTS FROM SUPERIOR COURT REPORTERS OF THE HEARING DATED FEBRUARY 15, 2002 SEE EXHABIT PAGE 30, 32

MOVANT CLAIMS MR. EDINGER WAS INEFFECTIVE AT EVERY STAGE OF THESE CRIMINAL PROCEEDING BECAUSE HE FAILED TO ENTER EVIDENCE THAT COULD CLEAR ME, AT THE TIME I WAS TOLD BY MR. EDINGER THAT STATE WOULD NOT PAY FOR THE PICTURES TO BE TAKEN AND ENTERED AS EVIDENCE. THERE WAS TWO PICTURES OF SUPPOSE TO BEEN BELT WOUNDS & PURPLE WOUNDS. THE PICTURES SHOULD HAVE BEEN TAKEN TO THE F B I LAB. THEY ALSO SAID THE WRISTS HAD CUTS AND BRUISES. SEE TRIAL TRANSCRIPT FEB 20, 2002 PAGE 111 IT WAS SAID THAT DUCK TAPE WAS ALSO USED. THE F B I COULD BLOW THE PICTURES UP TO BE ABLE TO TELL THAT THE STORY WAS FABRICATED. MR. EDINGER WOULDN'T HONOR ANY OF MY REQUEST. THE JURY WAS MISLEAD TO BE BELEIVE ALLEGE VICTIM WRISTS WERE TIED.

MOVANT CLAIMS PROSECUTOR CONVINCE JURORS THAT PICTURES ARE TO DARK AND THAT SOMETIMES WITH AN AFRICAN AMERICAN YOU CAN'T SEE THE BRUISE: AS DARKLY ESPECIALLY ON THE INSIDE. THIS IS UNTURE AN FALSE STATEMENT AND MISLEAD THE JURY TO BELEIVE THAT ALLEGE VICTIM COMPLEXION IS DARK. SEE STATE'S EXHIBIT ② PAGE 28 SEE: TRIAL TRANSCRIPTS FEB 20, PAGE 112 MOVANT CLAIMS THE RECORD REFLECTS THAT STATE WITNESS BARBARA KUBEC GIVE TESTIMONY TO THE FINDING OF THIS MEDICAL REPORT. SEE: TRANSCRIPT FEB 21, 2002 PAGE 20, 21.

MOVANT CLAIMS THERE IS NO MEDICAL RECORDS REFLECTS THAT X RAYS WAS TAKEN OF THE WRISTS. NO MEDICAL RECORDS MENTION ABOUT CUTS AND BRUISES AROUND THE WRISTS TO CORROBRATE STATE WITNESS EMILY CUNNINGHAM TESTIMONY TO THE KNOW FACT CENTERED AROUND THESE ALLEGE INCIDENT. MOVANT CLAIMS CROSS EXAMINATION IS THE PRINICIPAL MEANS BY WHICH THE BELEIVABILITY OF A WITNESS AND TRUTH OF HIS TESTIMONY ARE TESTED. DAVIS V. ALASKA

MOVANT CLAIMS THE PICTURES WERE ILLEGAL BECAUSE OF THE PREJUDICIAL EFFECT THEY HAD ON THE JURY AND THE WHOLE TRIAL BECAUSE, IT WAS NOTED THE PICTURES WERE NOT CLEAR.

HOWEVER THESE ILLEGAL PICTURES ALLOW VERY PREJUDICIAL TESTIMONY TO BE PRESENTED TO THE JURY, FROM THE STATES WITNESSES.

MOVANT CLAIMS HE IS INNOCENT OF THE CHARGES AND HE SHOULDN'T HAVE BEEN FOUND GUILTY OF NOTHING. BOUSLEY V. UNITED STATES. 523 U.S 614, 118 S.Ct. 1604, 140, LED 2d, 828 (1998) MURRAY V. CARRIER 477 U.S. 478, 485, 91 LED 2d 397, 106 S.ct 2639 (1986) ALSO SEE, SCHLUP V. DELO 513 U.S 298, 327, 328, 130. LED 2d 808, 115 S.ct 851 (1995).

MOVANT CLAIMS HE MADE SEVERAL LIGITIMENT REQUEST, FIRST FORMOST WAS THE MOTION TO SUPRESS ALL ILLEGAL AND INADMISSIABLE EVIDENCE. HOWEVER MR. EDINGER FAILED TO SUPPRESS THE PICTURES BECAUSE HE SAID THE PICTURES CAN'T BE SUPPRESS BECAUSE NOTHING WAS TAKE FROM ME AND I TOLD HIM THAT THEY WAS TALKING ABOUT THESE PICTURES IN FAMILY COURT AND MS. CLECKLEY ENTERED THIS CONSENT IN GIVING UP HER RIGHT TO A TRIAL ON THE ALLEGAT- IONS. THE COURT AWARE MS. CLECKLEY OF THAT ON 9th DAY OF JANUAR 2002. THE TRANSCRIPT OF THE TESTIMONY IS IN MY MEMORANDUM.

MOVANT CLAIMS THE TESTIMONY ABOUT ILLEGAL PICTURES THAT SHOULD HAVE NEVER BEEN ADMITTED INTO EVIDENCE. THE PROSECUTOR KNEW WAS GOING TO ILLEGALLY ENTER THE PICTURES BECAUSE IN THE OPENING STATEMENTS BY ROBERTS! PHOTOGRAPHS SHE TOOK, ALBEIT THEY'ER POLAROIDS. THEY'ER NOT REAL CLEAR. THE PROSECUTOR FAILED TO LAY PROPER FOUNDATION TO ALLOW THE PICTURES TO BE ENTERED INTO EVIDENCE BECAUSE THE REASON COULDN'T BE SEEN. IF THEY'ER WERE ANY BRUISES ON THE ALLEGED VICTIMS WRIST, THEREFORE IT WAS IMPOSSIBLE TO LAY A PROPER FOUNDATION FOR SOME OF THE PICTURES.

MOVANT CLAIMS IT WAS ILLEGALLY ENTER THE PICTURES, AND TO ILLISTED PREJUDICIAL TESTAMONY FROM THE STATES WITNESSES, THEREBY PERJUDICING THE MIND OF THE JURY. THE PROSECUTOR KNEW THIS WAS FALSE REPORT.

AS NOTED ON CUNNINGHAM - DIRECT

A. THESE ARE PICTURES THAT I TOOK OF MS. CLECKLEY EARLIER IN THE MORNING ON THE 20th TRANSCR - FEB 20. PG 109

Q. ARE THEY TO LIGHT OR TOO DARK OR HOW DO THEY APPEAR?

A. THESE PICTURES ARE TOO DARK TO ACTUALLY SHOW THE EXTENT OF THE COLORS. TRANSCR FEB 20. PG 110

MS. CLECKLEY IS AN AFRICAN AMERICAN FEMALE, HOW WOULD YOU DISCRIBE OR GAUGE HER COMPLEXION, MEDIUM, DARK, LIGHT?

A. DARK I WOULD SAY

MOVANT CLAIMS THIS TESTIMONY WAS ILLEGAL AND PREJUDICE THE MINDS OF THE JURY, BECAUSE FIRST THE STATEMENT WAS NOT TRUE, AND IT WAS GIVING THE JURY A FALSE SENSE OF SECURITY, BY MISLEADING THEM TO BELIEVE THE ALLEGED VICTIM WAS TO DARK TO PHOTOGRAPH.

THE ATTORNEY MR. EDINGER SHOULD HAVE FILED FOR AN EXPERT PHOTOGRAPHER TO TESTIFY THAT THERE WAS NO BRUISES ON THE ALLEGED VICTIM, FROM BEING TIED UP AS TESTIFIED TO AT TRIAL. IT'S MOVANT'S CONTENTION THAT THESE ALLEGED BAD BRUISES WOULD HAVE BEEN LISTED IN THE DOCTORS REPORT AS INJURIES SUFFERED.

MOVANT CLAIMS COUNSEL WAS INEFFECTIVE BECAUSE HE FAILED TO OBJECT OR MOVE TO DISMISS THE CHARGES DUE TO THE BRUISES WERE AN ELIMENT OF THE CHARGES OF THIS ILLEGAL INDICTMENT, BECAUSE THESE ILLEGAL CHARGES INCLUDE KIDNAP IN THE 1$^{St}$DEGREE PARTLY BECAUSE THE BRUISES WAS SUPPOSE TO BE THE PRODUCT OF THE ALLEGED VICTIMS CONFINEMENT OR KIDNAPPING IN THE 1St DEGREE.

MOVANT CLAIMS THAT COUNSEL FAILED TO PREPARE FOR TRAIL AND ARGUES THAT BECAUSE OF HIS FAILURE TO PREPARE, DEFENDANT WAS DENIED HIS RIGHT TO "EFFECTIVE ASSISTANCE OF COUNSEL" THAT HE IS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

MOVANT ALSO ARGUES THAT BECAUSE OF COUNSEL'S UNPREPAREDNESS, MOVANT WAS PREJUDICED AND DENIED A FAIR TRIAL. IF IT WAS NOT FOR COUNSEL'S UNPROFESSIONAL ERRORS, THERE IS A REASONABLE PROBABILITY THAT THE OUT COME OF THE TRIAL WOULD HAVE BEEN DIFFERENT, AND FACTFINDER WOULD HAVE HAD A REASONABLE DOUBT RESPECTING GUILT. STRICKLAND V. WASHINGTON 466 U.S 694-95, 104 S Ct. 2052

THE SIXTH AMENDMENT RIGHT TO COUNSEL IS MORE THAN JUST A RIGHT TO HAVE A WARM BODY SEATED NEXT TO AN ACCUSED DURING A CRIMINAL PROCEEDING. INDEED, IT HAS LONG BEEN RECOGNIZED THAT THE RIGHT TO COUNSEL IS THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. STEVENS V. DELAWARE CORRECTIONAL CENTER, 152 F. SUPP, 561, 587 DEL. 2001.

THERE IS ALSO A QUESTION OF WHETHER THERE IS A "REASONABLE PROBABILITY" THAT THE OUTCOME COULD HAVE HAD A DIFFERENT RESULT? MOVANT DOES NOT HAVE TO SHOW BY A PREPONDERANCE OF THE EVIDENCE THAT THE OUTCOME COULD HAVE BEEN DIFFERENT, BUT JUST A REASONABLE PROBABILITY. BROWN V. MYERS, 137 F. 3D 1184 (9th CIR. 1998)

ACCORDING TO "THE STANDARDS RELATING TO THE DEFENSE FUNCTION OF THE AMERICAN BAR ASSOCIATION'S PROJECT ON STANDARDS FOR CRIMINAL JUSTICE: SEE: FARETTA V. CALIFORNION 95 S. 2525

DEFENDANT'S WROTE A LETTER TO THE SUPERIOR COURT REQUESTING A COPY OF THE JURY SELECTION TRANSCRIPTS FOR HIS RULE 61 MOTION THE TRIAL COURT REFUSED TO GIVE THE DEFENDANT THE TRANSCRIPTS AND DENIED HIS REQUEST.

ON JUNE 21, 2005, THIS COURT HAS STATED THAT DEFENDANT MAY RAISED AS AN ISSUE IN HIS OPENING BRIEF THE UNAVAILABILITY OF THE HEARING TRANSCRIPTS OF THE JURY SELECTION.

IT IS THE DEFENDANT'S CONTENTION THAT TRIAL COUNSEL PREFORMANCE AT TRIAL WAS HIGHLY PREJUDICIAL TO HIM, WHERE BY RENDING DEFENDANT TRIAL FUNDAMENTALLY UNFAIR.

## CONCLUSION

NOW THEREFORE, BASED UPON THE REASONS EXPRESSED AND THE AUTHORITIES CITED THEREIN, AS WELL AS THE ESTABLISHED LAW, DEFENDANT RESPECTFULLY REQUEST THIS HORORABLE COURT TO GRANT HIS MOTION AND REVERSE HIS CONVICTION BASED UPON THE FACT THAT THE TRIAL COURT DECISION IS NOT JUSTIFIED BY THE RECORD.

RESPECTFULLY SUBMITTED,

DATE : 2/7/06

Stephen R. Winn
STEPHEN R. WINN
PRO-SE DEFENDANT'S
(7)   D.C.C 1181 PADDOCK RD
SMYRNA, DE 19977

SUPERIOR COURT
OF THE
STATE OF DELAWARE

WILLIAM C. CARPENTER, JR.
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE (302) 255-0670

September 16, 2004

Stephen Winn
Delaware Correctional Institution
Smyrna, DE 19977

RE:   State v. Stephen Winn
Criminal ID No. 0103012308

Dear Mr. Winn:

I am in receipt of your letter addressed to the Prothonotary and clocked in on August 27, 2004 regarding the above-captioned matter. In essence, the letter requests that you be given a copy of the "jury selection transcripts" for your Rule 61 motion. Your request is denied.

First of all, you have already filed your Rule 61 petition, and I have allowed a subsequent amendment that you filed on June 28, 2004. Your present petition is pending a resolution before me, and it would be inappropriate to continue to file documents for that matter. Whatever issues you wish to raise should have been included in that motion, and therefore I see no reason or justification to order additional transcripts on your behalf. If the Court needs a transcript for it to appropriately decide an issue that you have raised in your petition, the Court can order one.

Again, as a result of the above, your request is hereby denied.

Sincerely yours,

Judge William C. Carpenter, Jr.

WCCjr:twp
cc:   Prothonotary

# SUPREME COURT OF DELAWARE

#14

CATHY L. HOWARD
*Clerk*

AUDREY F. BACINO
*Assistant Clerk*
DEBORAH L. WEBB
*Chief Deputy Clerk*
LISA A. SEMANS
*Senior Court Clerk*
DEBRA J. ZATLOKOVICZ
*Senior Court Clerk*

June 21, 2005

SUPREME COURT BUILDING
55 THE GREEN
DOVER, DE 19901

P.O. BOX 476
DOVER, DE 19903

(302) 739-4155
(302) 739-4156
(302) 739-8091

Mr. Stephen R. Winn
SBI #00177957
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Loren C. Meyers, Esquire
Department of Justice
Carvel State Office Building
820 North French Street
Wilmington, DE 19801

RE: *Stephen R. Winn v. State,* No. 27, 2005

Dear Mr. Winn and Counselor:

The Court is in receipt of your letter dated June 11, 2005, regarding the unavailability of one of the requested transcripts in the above captioned matter. Since it appears that you have obtained all available transcripts, please be advised that the appellant's opening brief and appendix are due on or before **July 21, 2005.\*** The appellee's answering brief is due 30 days after service of the appellant's opening brief and appendix. The appellant's reply brief, if any, is due 15 days after service of appellee's answering brief.

Very truly yours,

/eas

The unavailability of the hearing transcript on July 30, 2001, may be raised as an issue in your opening brief.

## Certificate of Service

I, _STEPHEN R. WINN_____, hereby certify that I have served a true

and correct cop(ies) of the attached: _PETITION UNDER 28 U.S.L 2254 FOR_

_A WRIT OF HABEAS CORPUS   (2) COPY____ upon the following

parties/person (s):


TO: _LOREN C. MEYERS_____          TO: _____

_CHIEF OF APPEALS_____             _____

_820 N. FRENCH STREET_____          _____

_WILMINGTON, DE_____           _____

_____         _____


TO: _____         TO: _____

_____         _____

_____         _____

_____         _____

_____         _____


**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE
19977.

On this __7___ day of _FEBRUARY____ 2006_____, 2006

Stephen R. Winn

I/M _STEPHEN R. WINN_
SBI# _177957_  UNIT _19_
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
844 N. KING STREET, LOCKBOX 18
WILMINGTON, DELAWARE 19801

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE


WINN

V.                          CASE NU: 1:06-CV-38 K.A.J

CARROLL et al


------

PETITION UNDER 28 U.S.C. 2254 FOR A WRIT

OF HABEAS CORPUS

SUPPORT MEMORANDUM

------


Stephen R. Winn

STEPHEN R. WINN

DATED: 2/7/06                    SBI # 177957

DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD

SMYRNA, DE 19977

MOVANT FILED AMENDMENT, ADDING SEVERAL OTHER GROUNDS IN CONNECTION TO HIS RULE 61 POST-CONVICTION RELIEF MOTION. ON JUNE 28, 2004, AND THE MOTION WAS CONSIDERED BY TRIAL JUDGE (WILLIAM C. CARPENTER JR.). SEE: JULY 20, 2004 IN EXHABIT (E) PAGE 13, 14 15,

MOVANT CONTENDS LOWER COURT ABUSED IT'S DISCRETION IN BARRING MOVANT CLAIMS BECAUSE OF NOT RAISING THEM IN HIS DIRECT APPEAL WHEN HE HAD THE OPPORTUNITY AND THAT THE EXCEPTIONS OF RULE 61 (i) (4) AND (5) ARE INAPPLICABLE.

THEY GO ON TO SAY, "DEFENDANT HAS FAILED TO DEMOSTRATE A "COLORABLE CLAIM". THE RECORD REFLECTS THE MOVANT MADE SEVERAL ATTEMPTS TO RAISE THESE CLAIMS AND BECOME MORE INVOLVED WITH PROCEEDINGS DURING PRE-TRIAL STAGE OF HIS CASE. SEE: EXHABIT (F) COURT DOCKET SHEET (6/10/2002) (6/26/2002) (7/17/2002). SEE LETTER EX PAGE 20, 21   EX (F) PAGE 16

HOWEVER, TRIAL COUNSEL NEVER ACKNOWLEDED MOVANT INTEREST ACCORDING TO A.B.A. STANDARDS, COUNSELORS HAS DUTY TO COMPLY WITH CLIENT AND COME UP WITH OPTIONS DEFENSIVELY, ESPECIALLY ON CHARGES OF SERIOUS CONSEQUENCES. SEE: STEVENS V. D.C.C 152 F. SUPP 2d 561 D. DEL 2001 SEE LETTER EX PAGE 26, 27 ULTIMATELY REQUESTING WITHDRAWAL OF COUNSEL ALTOGETHER. SEE: EXHABIT (F) (G) IN VIOLATION OF MOVANTS DUE PROCESS RIGHTS THIS UNRELIABILITY, AMOUNTED TO THE MOVANT COMPELLING INEFFECTIVE ISSUES TO THE LOWER COURT. SEE: EXHABIT (G) COURT DOCKET SHEET (7/29/2002), PAGE 17 IN EX

(1)

MOREOVER, TRIAL JUDGE ABUSED HIS DISCRETION IN NOT ACKNOWLEDGING THESE ISSUES, AND DENYING MOVANT HIS OPPORTUNITY TO PROCEED PRO SE, IN WHICH EVERY U.S. CITIZEN HAS A CONSTITUTIONAL RIGHT TO DO, WHEN HE OR SHE DECIDES TO PRESENT BRIEFS AND MOTIONS ON APPEAL (CONST. AMEND. 14) (U.S.C.A). ADDITIONALLY, A CRIMINAL DEFENDANT HAS A CONSTITUTIONAL RIGHT DERIVED FROM THE FOURTEENTH AMENDMENT GUARANTEES OF DUE PROCESS AND EQUAL PROTECTION.

THIS APPLICATION OF MOVANT'S REASONING TO THIS COURT FOR REVIEW IS CONSISTANT WITH THAT OF (MCKASKLE, 465 U.S. 168 104 S. Ct. 944). IN THE INSTANT CASE, MOVANT TRIED UNSUCESSFULLY TO SELF-REPRESENTATION, (1) WHEN HE REQUESTED TRANSCRIPTS (2) ASKED FOR CASE NUMBER, (3) SENT LETTER TO TRIAL JUDGE REGARDING APPEAL AND BRIEF. (SEE: COURT DOCKET 7-29-2002) THIS ACTION IS FURTHER ABUSE BY TRIAL JUDGE AND PREJUDICED MOVANT'S RIGHTS. TRIAL JUDGE SHOULD HAVE LET MOVANT PROCEED PRO SE WITH STAND-BY ASSISTANCE BY AN APPOINTED ATTORNEY. THUS, THESE ISSUES ARE DEMONSTRATED AS FACTORS CONSISTANT WITH THE TENETS OF RULE 61(i) 5 CAUSE THIS MISCONDUCT UNDERMINED THE LEGALITY, INTEGRITY, RELIABILITY AND FAIRNESS OF THE PROCEEDINGS LEADING TO THE CONVICTION OF THE MOVANT.

FURTHERMORE, CLAIMS PRESENTED IN MOTION COULD NOT BE BARRED UNDER RULE 61 (I) (4) BECAUSE THEY WERE NEVER FORMALLY ADJUDICATED (SEE: OPENING BRIEF).

ADDITIONALLY, MOVANT'S INQUIRIES INTO THE ISSUES OF THE TAPE RECORDED COMMUNICATIONS BETWEEN THE ALLEGED VICTIM AND DEFENDANT INTO EVIDENCE THAT WERE ILLEGAL AND INADMISSIBLE. TRIAL COURT COMMITTED PLAIN ERROR WHEN THEY USED PROCEDURAL BAR IN EXSTINGUISHING MOVANT'S CLAIM RULE 61 (I)(4).

THE RECORD SUGGEST THAT TRIAL COUNSEL RAISED ONE CLAIM, THAT WAS A STATEMENT OF DET. DONLON AND MS. CLECKLEY. (SEE: OPENING BRIEF) THE TAPE RECORDED COMMUNICATION ONLY WAS RAISED BY MOVANT ON HIS AMENDED MOTION.

CLEARLY THE TRIAL COURT WAS IN ERROR AND MOVANT CONTENDS THESE ERRORS AMOUNTS TO A FUNDAMENTAL MISCARRIAGE OF JUSTICE. (TEAGUE V. LANE, 109 S. Ct 1060 1989); US V. YOUNG S.Ct 1038 (1985). BECAUSE OF THIS IMPEDIMENT, THESE ACTIONS PREVENTED MOVANT FROM PROPERLY RAISING THESE CLAIMS ON DIRECT REVIEW, AND HAD THEY BEEN RAISED OUTCOME WOULD HAVE BEEN DIFFERENT.

MOVANT ALSO NOTES, THAT A RESOLUTION CAN RESOLVE FROM THE RECORD, HIS CLAIMS ARE STRAIGHT-FORWARD AND CAPABLE OF RESOLUTION FROM THE DOCUMENTS.

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEPHEN R. WINN, | § | |
| | § | |
| Defendant Below- | § | No. 27, 2005 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware, |
| STATE OF DELAWARE, | § | in and for New Castle County |
| | § | Cr. ID 0103012308 |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted:  March 21, 2005
Decided:  April 7 , 2005

## O R D E R

This    7ᵗʰ    day of April 2005, upon consideration of the appellant's motion to stay and the State's response thereto, it appears to the Court that:

(1)    The appellant Stephen Winn has filed a motion requesting that further proceedings in this appeal be stayed until the Superior Court has issued a ruling on his amended motion for postconviction relief.    The Superior Court docket reflects that Winn filed his first motion for postconviction relief in September 2003.  In May 2004, he filed a motion to amend his postconviction petition to add several more claims.  In June 2004, he filed seven additional postconviction claims.  In July 2004, the Superior Court granted his motion to amend.  In December 2004, the Superior Court

## ARGUMENT

THE STATE ATTEMPTS TO JUSTIFY THE TRIAL COURT'S REFUSAL TO GRANT DEFENDANT'S MOTION FOR POST-CONVICTION RELIEF, BY ARGUING THAT DEFENDANT INEFFECTIVE ASSISTANCE CLAIMS FAILED TO MEET THE TWO-PART TEST SET OUT IN <u>STRICKLAND V. WASHINGTON</u>, 466 U.S 668 (1984). AND THAT HIS ADDITIONAL AMENDMENT CLAIMS ARE PROCEDURALLY BARRED. BECAUSE THE ISSUES COULD HAVE BEEN RAISED ON DIRECT APPEAL, BUT THEY WAS NOT, AND AS A CONSEQUENT, REVIEW ARE THUS FORECLOSED BY SUPERIOR COURT CRIMINAL RULE 61 (i) (3). SIMPLY IS WRONG IN FACT AND IN LAW.

DEFENDANT'S ASSERTS THAT RULE 61 POST-CONVICTION RELIEF ALSO PROVIDES A WAY TO INVOKE RULE 61 (i) (5) AND BY-PASS RULE (i) (3)'S PROCEDURAL BAR. IN SO DOING, DEFENDANT MUST RAISE A COLORABLE CLAIM THAT THERE WAS A MISCARRIAGE OF JUSTICE. HE ALSO MUST SHOW THAT THE MISCARRIAGE OF JUSTICE WAS CAUSE BY A CONSTITUTION VIOLATION THAT UNDERMINED THE FUNDAMENTAL LEGALITY, RELIABILITY, INTEGRITY OR FAIRNESS OF THE PROCEEDINGS LEADING TO THE JUDGEMENT OF CONVICTION.

THE DELAWARE SUPREME COURT HAS STATED THAT RELIEF IS AVAILABLE UNDER 61 (i) (5), "WHEN THE RIGHT RELIED UPON HAS BEEN RECOGNIZED FOR THE FIRST TIME AFTER DIRECT APPEAL. <u>YOUNGER V. STATE</u>, DEL. SUPR 580 A.2d 552, 554-55 (1990).

1

THE STATE ARGUED THAT UNDER THESE CIRCUMSTANCES, FOR WINN TO RAISE THESE CLAIMS FOR THE FIRST TIME IN HIS APPLICATION FOR POST-CONVICTION RELIEF, HE MUST ESTABLISHED IN THE SUPERIOR COURT, "CAUSE" FOR THE PROCEDURAL DEFAULT, AND ACTUAL "PREJUDICE RESULTING FROM THE ALLEGED ERRORS. FLAMER V. STATE, DEL. SUPR., 585 A.2d 736, 747 (1990).

IN THE INSTANT MOTION, DEFENDANTS HAS DEMONSTRATED "CAUSE" FOR THE FAILURE TO RAISE THE PROCEDURAL DEFAULT AND ACTUAL "PREJUDICE" AROSE AS A RESULT OF THE ALLEGED VIOLATION OF BOTH STATE AND FEDERAL LAW.

DEFENDANTS HAS ALSO DEMONSTRATED THAT FAILURE FOR THIS COURTS TO CONSIDER THE CLAIMS WOULD RESULT IN A FUNDAMENTAL MISCARRIAGE OF JUSTICE. MC CLESKEY V. ZANT, 499 U.S 467, 494 (1990); SAWYES V. WHITLEY, 112 S. CT. 2514, 2518-19 (1992); SMITH V. MURRAY 477 U.S. 527, 533-38 (1986).

DEFENDANT'S ASSERTS THAT THE FUNDAMENTAL FAIRNESS EXCEPTION OF RULE 61(i)(5) SHOULD BE APPLIED UNDER THE EXTRAORDINARY CIRCUMSTANCES, SUCH AS WHERE THE RIGHT RELIED UPON HAS BEEN RECOGNIZED FOR THE FIRST TIME AFTER DIRECT APPEAL. MAXION V. STATE, DEL. SUPR. 686 A.2d 148, 150 (1996). BAILY V. STATE, DEL. SUPR. 588 A.2d 1121, 1130 (1991)

WHERE A CONSTITUTIONAL CLAIM IS NOVEL THAT ITS LEGAL BASIS IS NOT REASONABLY AVAILABLE, A DEFENDANT HAS CAUSE FOR FAILURE TO RAISE THE CLAIM IN ACCORDANCE WITH THE APPLICABLE STATE PROCEDURES. SEE: REED V. ROSS, 468 U.S. 1, 12, 104 S. Ct- 2901 (1984).

2

THE STATE ALSO ARGUED THAT DEFENDANT'S CLAIMS OF INEFFECTIVE ASSISTANCE ARE WITHOUT MERITS, AND SHOULD BE DISMISSED, SEE: STATE ANSWER BRIEF AT 6.

THE STATE FIRST ARGUED THAT DEFENDANT'S FIRST COMPLAINT WAS THAT COUNSEL'S "REPRESENTATION WAS PERFUNCTORY AT BEST." S.A.B. AT 7.

DEFENDANT'S ASSERTS THAT COUNSEL FAILED TO ADEQUATELY CONSULT WITH HIM AND TO FULLY INFORMED HIM ON INPORTANT ISSUE AND DECISIONS REGARDING HIS DEFENSE. DEFENDANT CLAIMS THAT HE ONLY SAW DEFENSE COUNSEL 2 TIME BEFORE TRIAL STARTED,

COUNSEL'S FAILED TO DISCUSS ANY PRETRIAL MOTION, FAILED TO PROVIDES DEFENDANT WITH INFORMATION LEARNING FROM DISCOVERY, DEVELOPMENT THROUGH INVESTIGATION, TRIAL STRATEGY AND TACTIC

THE MOST FUNDAMENTAL ELEMENT OF COMPETENT REPRESENTATION OF ANY CLIENT IS THE ESTABLISHMENT OF TRUST AND CONFIDENTIAL RELATIONSHIP. A B A STANDARD 4-3.1(A). THE AMOUNT OF CLIENT CONSULTATION REQUIRED DEPENDS ON THE CIRCUMSTANCES, AND THE FACTS OF EACH INDIVIDUAL CASE, AT A MINIMUM, "THE CONSULTATION SHOULD BE SUFFICIENT TO DETERMINE ALL LEGALLY RELEVANT INFORMATION KNOWN TO THE DEFENDANT." U.S V. TUCKER, 716 F.2d 576, 581 (1983)

COUNSEL'S ALSO FAILED TO INTERVIEW AND TO CALL "CRITICAL" WITNESSES THAT WOULD HAVE CORROBORATE AND SUPPORTED DEFENDANT CLAIM OF INNOCENT. U.S V. JOHNSON, 995 F. Supp. 1259 (1998).

3

LIKEWISE, WITH RESPECT TO THE SO-CALLED "RAPE", COUNSEL'S FAILED TO CALL THE DOCTOR OR THE NURSE WHO EXAMINED CLECKLEY AT THE HOSPITAL TO TESTIFY, OR TO CALL AN INDEPENDENT MEDICAL EXPERT WITNESS TO THE STAND PUTS HIS PERFORMANCE FURTHER INTO QUESTION. IT APPEARS THAT UNDER THE CIRCUMSTANCES OF THIS CASE, DEFENDANT WAS FACED WITH THE CHALLENGE OF UNDERMINING THE CERDIBILITY OF THE PROSECUTION STATEMENT THAT CLECKLEY WAS RAPE WITHOUT ANY EVIDENCE THAT A RAPE OCCURRED. IN FACT, CLECKLEY NEVER STATED OR MENTION DURING HER TESTIMONY THAT SHE WAS RAPE

GIVEN THE AMOUNT OF TIME COUNSEL HAD TO PREPARE FOR TRIAL, THIS FACT ALONE WOULD BE INEXCUSABLE. WHAT BECOMES VERY CLEAR FROM CLECKLEY TESTIMONY THAT SHE DID NOT TELL ANYONE AT ST. FRANCES HOSPITAL THAT SHE WAS RAPED. TRANSC- FEB 19. PG 110 IT WAS THE PROSECUTION STATED TO THE JURY, "THE FIRST TIME SHE HEARD THAT SHE WAS A VICTIM OF RAPE WAS WHEN SOMEONE AT THE HOSPITAL TOLD HER. TRANSC- FEB 22, PG 13

THIS CONDUCT BY COUNSEL SHOWS THAT HE HAD NOT ADEQUATELY INVESTIGATED THE POSSIBILITY OF HIS USAGE IN ADVANCE OF TRIAL. IN ANY EVENT, THIS FACT IS SYMPTOMATIE OF A LACK OF TRIAL PREPARATION. THIS SHOWS THAT DEFENSE COUNSEL HAD NO DEFENSE STRATEGY OR TACTICS.

DEFENSE COUNSEL HAS ALSO SHOWS THAT HE HAD AN INTEREST OF CONFLICT IN THE DEFENDANT CASE, BY ADVISING HIM TO ACCEPT THE STATE PLEA OFTER, WHEN DEFENDANT HAD TOLD COUNSEL AN SEVERAL OCCASION THAT HE IS INNOCENT OF THE CRIME WITH WHICH HE WAS CHARGED.

4

NOT WITH STANDING DEFENDANT PLEAD FOR HIS INNOCENT, DEFENSE COUNSEL CONTINUED HIS ATTACK AN DEFENDANT TO TAKE THE STATE PLEA OFTER. THIS SHOWS THAT COUNSEL CONDUCT WAS PROFESSIONALLY UNREASONABLE UNDER THE CIRCUMSTANCES OF THIS CASE. THIS WAS CLEARLY PREJUDICE TO THE DEFENDANT FOR COUNSEL REPRESENTATION WITH CONFLICT IN THIS CASE.

THE TRIAL RECORD WILL REFLECT THE FACT THAT DEFENSE COUNSEL FAILED TO CONDUCT A VOIR DIRE EXAMINATION OF PROSPECTIVE JURORS TO IDENTIFY UNQUALIFIED JURORS. THUS VIOLATED DEFENDANT RIGHT TO DUE PROCESS OF LAW UNDER THE 6th AND 14th AMENDMENT TO THE U.S. CONSTITUTION. MORGAN V. ILLINOIS, 112 S. Ct. 2222 (1972); U.S. V. DAVIS, 583 F.2d 190 (1978); DENNIS V. U.S, 70 S.Ct.519, 523-24 (1950); MORFORD V. U.S, 70 S. Ct. 586, 587 (1950).

IT WAS REVEAL BY CLECKLEY DURING HER TESTIMONY AT THE TRIAL THE JUROR NUMBER 11, WORKED WITH HER AT THE SAME JOB. SEE; TRANSC-FEB 20, PAGE 4.

LACK OF ADEQUATE VOIR DIRE IMPAIRS THE DEFENDANT'S ABILITY TO EXERCISE PEREMPTORY AND INTELLIGENTLY HIS CHALLENGES WHERE PROVIDES BY STATUTE OR RULE, AS IT IS IN THE FEDERAL COURT IS GROUND FOR REVERSAL, IRRESPECTIVE OF PREJUDICE, SWAIN V. ALABAMA 85 S. Ct. 824 (1965); U.S. V. LEWIN, 467 F.2d 1132, 1138-39 (1972); U.S V. SABABU, 891 F.2d 1308, 1325 (1989); U.S V. RODRIGEZ, 993 F.2d 1170, 1176-77 (1997).

HAD COUNSEL CONDUCT A VOIR DIRE EXAMINTION OF PROSPECTIVE JURORS, HE WOULD HAVE DISCOVERED THAT JUROR NUMBER 11 KNOW CLECKLEY, BECAUSE THEIR WORK TOGETHER AT THE SAME JOB AT THE POSTOFFICE, AND WOULD NOT BE QUALIFIED FOR A JUROR IN THIS CASE. IT APPEARS THAT UNDER THE CIRCUMSTANCES OF THIS CASE, COUNSEL CONDUCT SUGGESTS THAT HE WAS EITHER UNFAMILIAR WITH THE RELEVANT LAW UNDERLYING THIS CASE OR THAT HE WAS EITHER UNPREPARED AND / OR INEXPERIENCED; OR THAT HE WAS ATTEMPTING TO GENERATE UNFAIR SYMPATHY FOR HIS CLIENT.

IN ANY EVENT, THIS FACT IS SYMPTOMATIC OF A LACK OF TRIAL PREPARATION AND COUNSEL'S COMPETENCE. BECAUSE THE TRIAL COURT'S FAILED TO CONDUCT AN ADEQUATE VOIR DIRE EXAMINATION OF PROSPECTIVE JURORS, THIS JUROR WAS IN PANEL, THUS SHOWING THAT THIS JUROR NUMBER 11 TO BE POTENTIAL PREJUDICE AND OR BIAS AGAINST THE DEFENDANT.

DEFENSE COUNSEL FURTHER PROVIDES INEFFECTIVE ASSISTANCE WHEN HE STATED THAT DECISIONS REGARDING JURY SELECTION ARE MADE BY HIM ALONE. THIS IS CLEARLY A VIOLATION OF THE DEFENDANT RIGHT TO DUE PROCESS OF LAW AND TO THE EQUAL PROTECTION OF LAW UNDER THE 6th AND 14th AMENDMENT TO THE U.S CONST.

6

I.

THE DEFENDANT WAS DENIED HIS 5FT AND 14TH AMEND-
MENT RIGHT TO DUE PROCESS OF LAW, WHEN TRIAL
COURT FAILED TO PROPERLY INSTRUCT THE JURY ON
ALL THE ELEMENTS NEEDED TO BE PROVEN FOR THE
CRIME OF UNLAWFUL SEXUAL INTERCOURSE IN THE
FIRST DEGREE, AND WHEN TRIAL COURT FAILED TO
GIVE A LESSER INCLUDED OFFENSE INSTRUCTION OF
THE UNLAWFUL SEXUAL INTERCOURSE IN THE FIRST
DEGREE.

Trial court stated, " Delaware law defines the offense of rape in
the first degree in pertinent part as follow: And the applicable one
here is the sexual intercourse occurs without the victim's consent
and during the commission of a crime the person causes physical injury
to the victim."

And in order to find the defendant guilty of rape in the first
degree, you must find that all the following elements have been estab-
lished beyond a reasonable doubt. First, the defendant had sexual int-
ercourse with Donna Cleckley. Second element is that the intercourse
occurred with out the consent of Donna Cleckley. The Third element is
that during the commission of the offense the defendant caused physical
injury or serious mental or emotional injury of the victim. And the
Fourth and final element is that the defendant acted intentionally.

The defendant asserts to this court that, trial court did not
instruct the juror's on the element, " that the complainant was not
defendant's voluntary social companion," which is one of the necessary
element to be proven in order to convict on the crime of unlawful sex-
ual intercourse in the first degree.

In order for the state to have proven this element, the state
would have to prove, that, the allege victim and the defendant did not
have a intimate, on going sexual realationship or that the allege victim
and defendant had not had sexual realations for a period of one year.

There was no special circumstances, presented to the court that
would have prevented this element, " that the complianant was not defend-

1.

ant's voluntary social compainion," from being apart of the jury instruction to the crime of unlawful sexual intercourse in the first degree.

With this in mind, the state could not meet there burden of prove of this element, because the defendant and the allege victim had an on going, intimate, sexual realationship for a period of three years or more.

Furthermore, it is well settled Delaware law, when a defendant "In the course of committing unlawful sexual intercourse in the third degree, displayed what appeared to be a deadly weapon or a dangerous instrument" he is guilty of first degree unlawful sexual intercourse. 11.Del.C.775 (a)(3).

The display of a deadly weapon, in the course of committing a rape, is a necessary element in a finding of guilty of unlawful sexual intercourse in the first degree. 11.Del.C. 755(a)(3). Jackson v. State. 600 A.2d 21 (1991).

The trial court never instructed the jury that in order for them to return a verdit of guilty for the offense of unlawful sexual intercourse in the first degree, they first most find the defendant guilty of the possession of a deadly weapon, which is a necessary predicate for unlawful sexual intercourse in the first degree.

The defendant was not guilty for the underline offenses of assault 2nd and the Possession of a Deadly Weapon, therefore, the defendant could not be found guilty of unlawful sexual intercourse in the first degree.

The harmful effects that has now taken root could have been corrected, being pulled up by the root, if the trial court had given a lesser included offense instruction.

The trial court's failure to instruct the jury of the element, "that the complainant was not defendant's voluntary social companion," and, " that, they most first find the defendant guilty of possession of a Deadly Weapon," in order to find the defendant guilty of unlawful sexual intercourse in the first degree, improperly diluted, relieving the state's burden of proven the elements that support a conviction of unlawful sexual intercourse in the first degree.

2.

There is well settled law, that a defendant must be acquitted when the court fails to instruct the jury on any element that the prosecution must prove beyond a reasonable doubt, or when the court defines reasonable doubt in a way that impermissibly eases the prosecution's burden of proof. Hall v. Kelso, 892 F.2d 1541,1546-47 (11th Cir.1990) Thomas v. Kemp, 800 F.2d 1024,1026 (11th Cir.1986) Osborne v. Chis, 495

The defendant asserts to this court, due to the fact that the defendant was found not guilty of the offense of the Possession of a Deadly Weapon, which took away the state's ability to find the defendant guilty of unlawful sexual intercourse in the first degree, and due to the fact that the court did not instruct the jury on any lesser included offense to the unlawful sexual intercourse, the defendant should be acquitted for the offense of unlawful sexual intercourse in the first degree.

Therefore, the defendant asks this court in it's remedy, to set the defendant's guilty verdit aside for unlawful sexual intercourse in the first degree and enter a judgment of acquittal or in the alternative, set the defendant's verdit aside and afford him the right to a new trial.

3.

THE DEFENDANT WAS DENIED HIS 5FH AND 14TH
AMENDMENT RIGHT OF DUE PROCESS OF LAW AND
6ST AMENDMENT RIGHT TO LEGAL AND FAIR
II.   PROCEEDINGS, WHEN THE STATE FAILED TO
PROVE EVERY ELEMENT OF THE UNLAWFUL SEXUAL
INTERCOURSE IN THE FIRST DEGREE.

The defendant asserts to this court when he pled not guilty, it
put to issue, every essential element of the crime charge. Roe v.
United States, 287 F.2d 435 (5th Cir), with that, the burden rested
on the prosecution to prove each materical element of the offense
charged beyond a reasonable doubt. Mullaney v. Wilbur, 421 U.S. 684.
State v. Griffin, 397 A.2d 89 (1979).

Proof of elements required,- To convict defendant the state needed
to prove four elements beyond a reasonable doubt; that defendant had
sexual intercourse with the complainant; that the age of the complainant
was less than sixteen, that the complainant was not defendant's volunt-
ary social companion, and that defendant's conduct was intentional.
Trump v. State, Del.Supr. 753 A.2d 963 (2000).

The prosecution did not satisfy the burden of proof in each element
of the charge of unlawful sexual intercourse in the first degree, the
prosecution has not even established that a rape has even occurred.

There was a witness that stated, that the allege victim told her
that she was rapes, (Ms.Cunningham, transc-Feb 20.pg.16 1/5), but her
testimony was hearsay evidence, because she testified with out her note
being present in the court room. (transc-Feb 20.pg 12 ), Nevertheless,
her testimony contradict the rest of the evidence presented in trial,
even the allege victim testimony.

Prosecution enter into evidence a tape conversation between Ms.
Cleckley and Detective Donion that was given days after the allege crime,
in this tape Ms.Mcleckley never said that she was raped. (transc-Feb 20.
pg.13).

Ms.Cleckley took the witness stand and when she was asked if she was
raped, she never said that she was raped. (transc-Feb 19.pg.87-88).

4.B

The prosecution entered the medical report of Ms.Cleckley into evidence and the information in this report was read to the court by Ms. Kubec.

The prosecution stated to the jury, "the first time she heard that she was a victim of rape was when someone at the hospital told her." (transc-Feb 22.pg.13), But Ms.Cleckley testified that she did not tell anyone at St.Frances Hospital that she was raped. (transc-Feb 19.pg.110), and the medical reports of the allege victim never stated or mention any where in them that Ms.Cleckley had said that she was raped or that she was told that she was raped or that she was treated for rape. (transc-Feb 21.pg.20,21)

The prosecution never offered into evidence any proof that a rape had occurred, not even from the allege victim her self.

To proof that there was some form of sexual contact doesn't prove that there was a rape, it must be proven that the sexual contact was with out complainants consent.

The prosecution never offered any physcial evidence to prove there had been a rape, He never offered any documents that confirmed that a rape had occurred, nor did Ms.Cleckley testify that she was raped under oath.

The prosecution also failed to prove that the complainant was not defendant's voluntary social companion, which is one of the necessary element to be proven in order to convict on the crime of unlawful sexual intercourse in the first degree.

In order for the state to have proven this element, the state would have to prove, that, the allege victim and the defendant did not have a intimate, on going sexual realationship, or that the allege victim and defendant had not had sexual realations for a period of one year.

The state could not meet it's burden of prove concerning this element, because it is a proven fact that the defendant and the allege victim had a on going, intimate, sexual realationship for a period of three year or more.

Furthermore, it is well setted Delaware law, when a defendant "In the course of committing unlawful sexual intercourse in the third degree,

5.6

displayed what appeared to be a deadly weapon or a dangerous instrument" he is guilty of first degree unlawful sexual intercourse. 11.Del.C. 755(a)(3).

The display of a deadly weapon, in the course of committing a rape is a necessary element in a finding of guilty of unlawful sexual intercourse in the first degree. 11.Del.C. 755(a)(3). Jackson v. State. 600 A.2d 21 (1991).

The defendant was found not guilty of the underline offenses of Assault 2nd and the Possession of a Deadly Weapon, therefore, the state could not meet it's burden of prove concerning this element of the charge of unlawful sexual intercourse in the first degree.

The defendant has been convicted on a charge that has not and could not be proven by the evidence. The state may have proven second or third degree unlawful sexual intercourse, and that's not clear from the record, but the state could not prove First Degree.

The Due Process Clause requires that the government to prove beyond a reasonable doubt every element of the crime with which defendant is charged. If the government fails to sustain it's burden of proof on any element, the defendant must be acquitted.

The state has not proven the elements of the crime of unlawful sexual intercourse in the first degree, therefore the defendant asks this court in it's remedy, to set the defendant's guitly verdit aside for unlawful sexual intercourse in the first degree and enter a judgment of acquittal or in the alternative, set the defendant's verdit aside and afford him the right to a new trial.

6.

III.    THE DEFENDANT WAS DENIED HIS 5FT AND 14TH
        AMENDMENT RIGHTS OF DUE PROCESS OF LAW,
        AND HIS 6ST AMENDMENT RIGHT TO LEGAL AND
        FAIR PROCEEDINGS, WHEN THE STATE FAILED
        TO PROVE EVERY ELEMENT OF THE KIDNAPPING
        OFFENSE BEYOND A REASONABLE DOUBT.

The defendant asks this court in it's review, to determine if there was much more substantial liberty, to the underline offenses, to warrant a separate charge of kidnapping.

The word " Restrain" is specifically defined in the kidnapping context by 11.Del. C. 786(A) as follow:

> "Restraint" means to restrict another person's movements intentional in such a manner as to interfere substantially with his liberty by moving him from one place, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. A person is moved or confined without consent, when the movement or confinement is accoplished by physical force, intimidation or deception.... 11.Del.C. 786(A). The court has interpreted the term "restrain" as it used in section 786(A) as having three element: (1) substantial interference with another's liberty, (2) by movement or confinement, (3) without consent. Burton v. State, Del. Supr., 426 A.2d 829,832 (1981)

The prosecution in this case presented the theory to the jury that the allege victim was violently beaten and rape over a period of three days, being tied by the hands to the head of the bed post.

To prove this theory prosecution enter into evidence photographs of the allege victim's bed and offered Detective Donlon to testify to the evidence found on this bed.

Detective Donlon testified that, there was residue on the head of the bed post, (transc-Feb 20.pg.146-147), to the point that the prosecution did a in court demonstration, placing duke tape on the prosecution's table, then pulling it off, having Detective Donlon

7.

testify that the residue that is on the prosecution's table, match or is the same typ of residue that was on the head post of the allege victim's bed in these photographs, in order to prove that the allege victim was restrained with duke tape, by the hands, being tied to the head of the bed post with this duke tape. (transc-Feb 20.pg.148).

This demonstration should not have been allowed, due to the fact that the state never informed the defense that it was going to use this typ of in court demonstration, nevertheless, this demonstration clearly shows that the state has not proven the necessary elements that warrant a seperate indepented charge of kidnapping, due to the fact that the state's prsentation of evidence, and this demonstration, along with Detective Donlon's testimony was totally contrary to the allege victim's account of how this allege crime occurred.

The allege victim testified that, the defendant used LEATHER BELTS that were already hanging on the head post of the bed, and he strapped her hands into the belt straps, and when she was asked how did he tie her feet? she said, he used duke tape. (transc-Feb 19.pg.80).

Even though the prosecution put on this elaborate demonstration, concerning this duke tape, there was no duke tape seized at the allege crime scene and the state never entered any duke tape into evidence.

The prosecution presented evidence that the allege victim was tied by the hands to the head of the bed post with duke tape, but the allege victim testified that she was tied by the feet with duke tape. The prosecution presentation of evidence did not confirm the allege victim's testimony.

Furthermore, the allege victim testified that she was tied with leather belts by the hands to the head of the bed post, but the state offered no evidence at all to support her testimony. There was no leather belts seized at the allege crime scene, there was no leather belts brought into trial or presented as evidence in trial. The prosecution never mentions this area of restraint in his offer of prove,

The prosecution has tried to make it appear that the allege victim was kidnapped for three days, this is why the area of restraint and the

8.

the allege victim was restrain is so important.

The allege kidnapping, rape and assault allegedly happen in the bed room, this is why the bed room was the only area of the house that was considered to be the crime scene.

According to the allege victim's testimony these incidents occurred on January 15, for 20 to 30 minutes, then she was released, and even though she did not leave the house she had plenty of opportunity to do so if she choose to.

The allege victim testified, after she was untied, during the course of the three days, that on several occassion the defendant left the house and she could have went across the street to a neighbor or down the street to another neighbors house and that she could have called the police, but she choose not to. (transc-Feb 19.pg.104).

She also testified that her and the defendant had slept together all night and on one occassion she woke up way before the defendant., and the first thing she did was to call her job to report off sick. (transc-Feb 19.pg.100), and at some point she said that she called the defendant's mother. (transc-Feb 19.pg.100), she also testified to going in and out on the porch. (transc-Feb 19.pg.105).

The commentary to the Delaware Kidnapping Statue was cited with approval by the court in Burton v. State, 426 A.2d 832 (1981). When the term "substantial interference" was construed by the court to be a limitation with in the statutory framework of kidnapping. Burton v. State, 426 A.2d at 833-36 and Commonwealth v. Hughes, 399 A.2d 694, 696.

In Burton, the court held that the requirement that the defendant interfere substantially with the victim's liberty insures that where the movement or restraint is entirely incident to the underlying crime, there Cannot be a kidnapping conviction under 11.Del.C. 783(A)., Thus, in Burton, the court held that in order to allow a conviction for kidnapping in conjunction with an underlying crime such as rape, robbery, or assault, the movement and/or restraint of the victim must be more than incidental to the underlying crime. Therefore, to sustain a conviction of kidnapping in conjunction with an underlying offense, the

9.

state must prove the underlying offense and substantial interference which is independant of and not incidental to the underlying offense.

If the state's evidence does not prove the kidnapping charge by demonstrating substantial interference that is independent of the underlying offense, there can be no conviction for kidnapping. Weber v. State, 547 A.2d 948., Burton v. State, 426 A.2d at 834, Scott v. State, 521 A.2d 242.

Furthermore, if a defendant is charged with both kidnapping and such an underlying crime such as rape, robbery or assault, the degree of movement, the nature of the restraint, or the duration of the restraint should not be the pirmary focus of inquiry. Commonwealth v. Hughes, 399 A.2d at 697-698., But when a defendant is charged with kidnapping in conjunction with an underlying crime the dispositive issue is not the degree or duration of the movement and/or restraint but whether the movement and/or restraint are incident to the underlying offense.

As you look at this case now before you it is clear that the nature of the restraint and the degree of movement is clearly at issue, and has become the controlling focus of this evidence.

Based on the state's theory, the in court demonstration, along with the testimony of Detective Donlon, testifying that the allege victim's hand's were tied with duke tape to the head of the bed post, (transc-Feb 20.pg.148), contricts the testimony of the allege victim's, who said she was tie with leather belts that were already hanging on the head post of the bed, along with the fact that the state did not seized any duke tape or leather belts or straps from the allege crime scene, and that the fact, that the state did not enter into evidence any duke tape or any leather belts or straps clearly demonstrates that the state has not proven that any kind of restraint ever occurred or existed in this case.

It was impossible to prove that there was much more substantial interference that is independent of and not incidental to the underlying offense to warrant a seperate charge of kidnapping without first proving there was some from of restraint.

The state never prove these facts, therefore the defendant was
denied his 5ft and 14th amendment right to due process of law and his
6st amendment right to legal and fair proceedings, when prosecution
failed to prove every element of the kidnapping offense beyond a reason-
able doubt.

The defendant asks this court to set aside his verdict and afford
him the right to a new trial.

11.

IV.

THE DEFENDANT WAS DENIED HIS 5FT AMENDMENT RIGHT
AGAINST SELF-INCRIMINATION, HIS 4TH AND 14TH AMEND-
MENTS RIGHT TO DUE PROCESS OF LAW, AND HIS 6ST
AMENDMENT RIGHT TO FAIR AND LEGAL PROCEEDINGS WHEN
PROSECUTION OFFERED TAPE RECORDED COMMUNICATIONS
BETWEEN MS.CLECKLEY AND DEFENDANT INTO EVIDENCE
THAT WERE ILLEGAL AND INADMISSIBLE EVIDENCE.

The defendant was being held in Gander Hill Prison and he made
collect phone calls to Ms.Cleckley. Ms.Cleckley taped recorded one of
these conversation with out the defendant's knowledg or premission.

Ms.Cleckley's reasoning for tape recording the defendant's communi-
cation was because there was a PFA in place, ( a order of no contact),
so she wanted to tape the defendant's communications for the sole pur-
pose of using it as evidence in trial. (transc-Feb 19.pg.124,127).

The defendant asserts to this court that Ms.Cleckley's actions
were illegal and the tape between her and the defendant's communication
was inadmissible evidence. Ms.Cleckley's actions amounted to " Wire
Tapping."

Wire Tapping or Wire Communication means: any aural transfer made
in whole or in part through the use of facilities for the transmission
of communications by the aid of wire, cable or other like connection
between the point of origin and the point of reception (including the
use of a connection in a switching station) furnished or operated by
any person licensed to engage in providing or operating such facilities
for the transmission of communications. ( 72 Del. Laws, c. 232, 1.).

Ms.Cleckley's actions violated several constitutional right of the
defendant. The defendant's right to privacy and his right against self-
incrimination.

The Fourth Amendment protects a defendant from becoming a victim
of invasion of privacy. U.S. Const. Amend IV, State v. Jock, Del. Super.
404 A.2d 518 (1979). More importantly the Fifth Amendment safeguards
the defendant's right against self-incrimination.

The Fifth Amendment to the United States Constitution provides
that no person " shall be compelled in any criminal case to be a witness

12.

against himself," U.S. Const Amend. V. This privilege against self-crimination governs state as well as federal criminal proceedings through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Malloy v. Hogan. 378 U.S. 1,8, 84 S.ct. 1489, 1493, 12 L.E.D. 2d 653 (1964).

Ms.Cleckley intercepted this communication after she had reported the incident to the police and after she had been interviewed by the police and it is clear that there was no attempt by the police to encourage her to record the conversation. (transc-Feb 19.pg.131)

Therefore her actions were illegal and the tape was inadmissible evidence.

11 Del. 2402(a) prohibited acts-except as specifically provided in this chapter or else where in this code no person shall: (1) Intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication: (2) Intentionally disclose or endeavor to disclose to other person that contents of any wire, oral or electronic communication, obtain through the interception of a wire, oral or electronic communication in violation of this chapter. (3) Intentionally use or endeavor to use the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of this chapter.

In order for Ms.Cleckley's interception of the defendant's communication to be legal and allowed as evidence in trial, an application to interception communication had to be made before a judge and a court order provided. 11 Del. 2407(a).

2407(a) Application-any application for an order authorizing the interception of a wire, oral or electronic communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make application.

11 Del 2402(c) Lawful acts- It is lawful: (2) For a provider of wire or electronic communication service, its officers, employees and agents, landlords, custodians or other person to provide information,

13.

facilities or techinical assistance to person authorized by federal
or state law to intercept wire, oral or electronic, communication or
to conduct electronic surveillance, if the provider, its officer,
employees has been provided with a court order signed by an authorizing
judge directing the provision of information, facilities or technical
assistance.

Ms.Cleckley was not working in conjunction with the police depart-
ment nor was, or is she a member of the police, If so, a court order
from a judge would still be needed to intercept the defendant's communi-
cation, and due to the fact that Ms.Cleckley was working on her own,
made this interception of the defendant's communication illegal. ( her
actions amounted to illegal wire tapping).

The violation of Ms.Cleckley's actions lies in her " INTENTION."
the defendant was in Gander Hill Prison, were he made collect phone
calls to Ms.Cleckley. There was no possible way for the defendant to
have contact with Ms.Cleckley, unless she accept the collect call.

Ms.Cleckley's sole purpose for accepting the defendant's phone call
putting herself in contact with the defendant, was to assist in the
prosecution of the defendant, by trying togather information to use
against the defendant at trial. (transc-Feb 19.pg.124).

Ms.Cleckley secretly tapped the defendant's conversation without
his knowledg or permission, which violated the defendant's Fourth Amend-
ment right to privacy, which took alway his Fifth Amendment right
against self-incrimination. The defendant was denied his 6st Amendment
right to legal and fair proceedings, when prosecution entered into
evidence the tape communications between Ms.Cleckley and the defendant,
which was inadmissible evidence.

The defendant asks that this court vacate his sentence and afford
him a new trial.

14.

V.

THE DEFENDANT WAS DENIED HIS 5FT AND 14TH
AMENDMENT RIGHT TO DUE PROCESS OF LAW AND
HIS 6ST AMENDMENT RIGHT TO CONFRONTATION,
WHEN PROSECUTION OFFERED INTO EVIDENCE
MEDICAL REPORTS OF THE ALLEGED VICTIM AS
BUSINESS RECORDS PURSUANT TO D.R.E. 803
(6) WITHOUT FIRST COMPLYING TO D.R.E. 902
(11)(C).

The defendant asserts that prosecution improperly introduced the medical records of the allege victim into evidence as a business record pursuant to D.R.E. 803(6) and offered Ms.Barabara Marie Kubec as witness to testify to the fact of these reports. (transc-Feb 21.pg.5).

Ms.Kubec was employed by St.Frances Hospital as the Medical Record Coder Correspondence. (transc-Feb 21.pg.16). Ms.Kubec was not an expert, niether did she fill out the medical report and she was not present at the initial examination of the allege victim. (transc-Feb 21.pg.18,19).

It is well establish and settle law, pursuant to D.R.E. 801(c), that Ms.Kubec testimony is inadmissible in trial, because it amounts to " Hearsay Evidence." It is also well established and settle law that a medical report can not be submitted into evidence as business records in pursuant to D.R.E. 803(8)(b) and (c).

Hearsay: Rule 803(8)-Specifically excluded from this exception, however, are the following: (B) investigative reports prepared by or for a government, a public or an agency when offered by it in a case in which it is a party. (C) factual findings offered by the government in criminal cases.

The value of the information found in a medical report is of such importance that the Courts has held that the person or persons who retrieved said information is to testify to it's findings, making these records inadmissible as business record. State v. Rivera, Del. Super. 515 A.2d 182 (1986).

The Court over objection allowed this medical documents to be entered into evidence as business records pursuant to D.R.E. 803(6), stating: " as long as the information that's contained in that is the type of information that would normally be contained in those documents,

15.

I think it can be admitted. I'll note your exception. I don't believe
the state is required to bring in the nurse or the doctor who actually
wrote down what's contained in the document as long as they can establ-
ish - now, they clearly have to establish with some precision that this
type of information is what would be normally recorded as part of the
business record. (transc-Feb 21.pg.9).

The defendant assert that trial Court failed to protect the defend-
ant's right in it's decision. D.R.E. 803(6) states:

> " Hearsay Except-
> ions,. Availability of Delarant immaterial. (6) Records of
> regularly conduted activity, a memorandum, report, record
> or data compilation, in any form, of acts, events, condit-
> ions, opinions or diagnoses, made at or near the time by,
> or from information transmitted by, a person with knowledge,
> if kept in the course of a regularly conducted business
> activity, and if it was the regular practice of that busi-
> ness activity to make the memorandum, report, record or
> data compilation witness, or by testimony of the custodian
> or other qualified witness, or by certification that complies
> with D.R.E. 902(11), D.R.E. 902(12) or a statute permitting
> certification, unless the source of information or the
> method or circumstance of perparation indicate lack of trust-
> worthness. The term " Business " as used in this paragraph
> includes business, institution, association, profession,
> occupation and calling of every kind, whether or not conduct-
> ed for profit.

The Court was allowed by law to enter the medical records into
evidence as business records pursuant to D.R.E. 803(6), only if the pro-
secution complied with D.R.E 902(11), D.R.E. 902(12).

D.R.E. 902(11)(c); Aparty intending to offer a record into evidence
under this paragraph must make the record and declaration available for
inspection sufficently in advance of their offer into evidence to provide
an adverse party with a fair opportunity to challenge them.

The prosecution did disclose a portion of the medical report to
the defense the day of trial, but not the complete document, and much
of it's photocopied, was unreadable, which cause defense counsel to have
to stop in the meddle of his examination of Ms.Kubec testimony to keep
going over the document. (transc-Feb 21.pg.24)

16.

The record reflects, that, the defense was unaware of Ms.Kubec pending testimony until she was about to testify under oath, because she was a suprise witness; she was not on the prosecution's witness list. (transc-Feb 21.pg.11).

The defense was not made aware of this witness until she was about to take the stand. The prosecution did not make these documents and Ms.Kubec available for inspection sufficiently in advance of their offer into evidence.

The defense was not able to begin it's inspection of Ms.Kubec's testimony to these documents until she was on the witness stand, under oath before the jury. This prejudice the defendant, violating D.R.E. 902(11)(c), thereby precluding the medical reports and Ms.Kubec's testimony to them from being presented into evidence as business records.

If the defendant was given the sufficient time, in advance as required by D.R.E. 902(11)(c), to inspect these documents and Ms.Kubec's testimony to them, the defendant would challenge that certain parts of the medical reports, that was now put into evidence by Ms.Kubec's testimony could only be explained by the nurse who filled out the report and the attending physician who examined the allege victim.

Ms.Kubec read from the medical reports which is now evidence in the trial,(1) that no medication was prescribed for pain,(2) that there was no mention of rape contain in the report,(3) there was no examination of the genitatia,(4)Diagnosis, Assault, subconjunctival hemorrhage left possible left eardrum hole, (5) and she was discharged the same day. (transc-Feb 21.pg.22,23).

The prosecution has stated, that this was a violent beaten and rape, but the allege victim was discharge from the hospital the same day, and she wasn't given any pain medication. There was no mention of rape found in this report, but the prosecution has stated, the first time she knew that she was a victim of rape was when someone told her at the hospital. (transc-Feb 22.pg.13). The allege victim was only treated for an eye injury.

These medical reports had the ability to pull and rip away the very fabric of the state's case, but in order to do so, the defense had

17.

to make a deeper inguiry, which could only be achieved through the
live testimony from the nurse who filled out the reports and the attend-
ing physician who examine the allege victim.

The state's actions denied the defendant of his 6st Amendment right
to confrontation and effective cross-examination.

The prosecution did not make these documents and Ms.Kubec available
for inspection sufficiently in advance of their offer into evidence,
violating D.R.E. 902(11)(c), thereby precluding the medical reports and
Ms.Kubec's testimony to them from being presented into evidence as busi-
ness records pursuant to 803(6).

The medical reports and Ms.Kubec's testimony was inadmissible
evidence pursuant to D.R.E. 801(c), 803(8)(b)and(c), and 902(11)(c)

The defendant asks that his sentence be vacated and he be afforded
a new trial.

18.

VI. THE TRIAL COURT COMMITTED PLAIN ERROR BY PERMITTING THE ALLEGE VICTIM TO TESTIFY TO THE DEFENDANT"S PRIOR BAD ACTS, WITHOUT APPLYING ANY OF THE REQUIRE- MENTS MANDATED BY GETZ, WHICH DENIED THE DEFENDANT OF HIS 5FT AND 14TH AMENDMENTS RIGHT TO DUE PROCESS OF LAW AND HIS 6ST AMENDMENT RIGHT TO LEGAL AND FAIR PROCEEDINGS.

On cross-examination defense counsel asked the allege victim, "(Q)[1] is it fair to say that you've had brawls in the past? (A)[2] twice in the past; (Q) and you weren't just on the receiving end: is that right? (A) all three times I was on the receiving end. He just received it one" (transc-Feb 20.pg.73).

On redirect, prosecution asked the allege victim, (Q) were you on the receiving end, I think you said on most of those prior brawls? (A) yes. (Q) and the one where you were-where you scratched him, were you the initiator in the right? (A) no. (Q) who started that one? (A) he did. (Q) where you defending yourself. (A) yes. (Q) did scratching work. (A) yes.

The allege victim's testimony was prejudical to the defendant because it offered into evidence other prior bad acts of the defendant.

Her testimony was in the nature of D.R.E 404(B), evidence for which an analysis pursuant to Getz, was required. Getz v. State, Del Supr. 538 A.2d 726 (1988).

Prior to the introduction of other bad acts evidence, the trial court is required to conduct a balancing test concerning the probative value of the evidence against it unfairly prejudical effect, as requir- ed by D.R.E. 403. Bullock v. State, Del.Supr 775 A.2d 1043 (2001) Trump v. State, Del. Supr. 753 A.2d 963 (2000).

The defendant asserts to this court, even though it was defense counsel who engaged into this line of inquiry, does not permit the

---

1. (Q)-Question to the allege victim

2. (A)-Answers from the allege victim

court the right to throw a blanket over this error.

The trial court also has a duty to make sure that the defendant's rights in trial are sageguarded by all parties involved. When the court saw counsel treading in deep water, it should have inquired into counsel's intent, to determined what kind of trial strategy would cause defense counsel to elicite this typ of character evidence, or prior bad acts from the allege victim.

The Delaware Courts has set forth the following guidelines which should govern the admissibilty of such evidence: (1) The evidence of other crime must be material to an issue or ultimate fact in dispute in the case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue.

(2). The evidence of other crime must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition.

(3). The other crimes must be proved by evidence which is "plain, clear and conclusive." Renzi v. State, Del. Supr. 320 A.2d 711,712

(4). The other crimes must not be too remote in time from the charged offense.

(5). The court must balance the probative value of such evidence against its unfairly prejudical effect, as required by D.R.E. 403.

(6). Because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105

No Getz, analysis was performed by the court and there was no limiting instruction given to the jury as required by Getz.

Defense counsel open this wound but it was the prosecution who refused to stop the bleeding, when it gave the appearance to the jury that the defendant was being tried for multple assaults.

The defendant was arrested and indicted for only one count of 2nd degree assault, but the prosecution, through the testimony of the allege victim, made it appear that the defendant was being tried for multple assaults, and the allege victim's testimony that she scratched

20.

R-31

the defendant during these previous offenses gave evidence to there existance.

This was prejudical to the defendant, because the defendant was never arrested, indicted neither was he on trial for these other prior bad acts;.There was no evidence presented in trial that gave any dates, times or prove that these alleged bad acts ever occurred.

This case now before you is the reason why the Getz analysis was born. No Getz analysis was ever performed by the court and no limiting instruction was given to the jury as required.

This error is plain and on the face of the record,. The defendant was denied his 5ft and 14th amendments rights to due process of law and his 6st amendment right to legal and fair proceedings, therefore the defendant asks this court to vacate his sentence, setting aside his verdit an afford him the right to a new trial.

THE DEFENDANT WAS DENIED HIS 5TH AND 14TH
AMENDMENT RIGHT TO DUE PROCESS OF LAW AND
HIS 6ST AMENDMENT RIGHT TO LEGAL AND FAIR
VII.. PROCEEDINGS, WHEN PROSECUTION MADE IMPRO-
PER COMMENTS TO THE JURY WHICH    INFERRED
GUILT TO THE DEFENDANT.


The prosecution stated in it's closing, " member of the jury,
there's not a shred of credible evidence before you that supports
such wild and speculative assertions. You've all had the opportunity
to observe the victim and her co-conspirators. And the state would
suggest to you that there's only one person in this trial with no
sense of ethics and no sense of dignity. And that person is also the
only person in the trial that has a motive to lie. And that's Stephen
Winn. And if you believe Stephen.Winn, don't waste any more time in
your deliberation. Find him not guilty.

Remember this, though: His own mother had talked to the victim.
And the defendant even admitted that he had talked to his mother. His
mother wouldn't even come in here and lie for him. At least She's not
abandoned her values! (transc-Feb 22.pg.24).

Prosecutions comments were impermissable and they prejudice the
defendant because these improper remarks compelled the juror's to
focus there attention on to the defendant's mother, and her reason for
why she did not come and testify on behalf of her son, the defendant.

The prosecution stated: " there's only one person in this trial
with no sense of ethics and no sense of dignity. And that person is
also the only person in the trial that has a motive to lie. And that's
Stephen Winn."

These comments caused the defendant to appear in the eyes of the
jury as one that is un-ethical, without dignity, and a liar, not to be
trusted or believed."

Prosecution stated, " and if you believe Stephen Winn, don't
waste any more time in your deliberations, Find him not guilty," "

22.

" Remember this: though his own mother had talked to the victim. And the defendant even admitted that he had talked to his mother. His mother wouldn't even come in here and lie for him. At least She's not abandoned her values."(transc-Fct 22.pg.24).

The ABA Standards, Prosecution and Defense Functions (Approved Draft 1971) 5.8(a) Argument to the jury, states: The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

The prosecution paints this picture that the defendant is unethical and a liar, then saids, the defendant's mother talked to the allege victim and the defendant admitted that he had talked to his mother.

The prosecution misstated the facts to the juror's the defendant never said any were in the record that he directly talked with his mother.

. The ABA Standards, Prosecution and Defense Function 5.6(b) presentation of evidence states: It is unprofessional conduct for a prosecutor knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or makes other impermissible comments or arguments in the presence of the judge or jury.

When the prosecution stated," that his mother wouldn't even come in here and lie for him," brought the defendant's mother to the witness stand, making her testimony to be that, she refuses to lie for him.

The respect, reverence and love that one has for his or her mother the juror's after hearing that his mother refuses to lie for him had to assume, consider or thing that the defendant is guilty.

The prosecution comments was improper and impermissable, the deendant never admitted to talking with his mother, and the defendant's mother never took the stand to offer into evidence any testimony dealing with thses allege crime。

The prosecution's actions in stating that the defendant's mother refused to lie for him, went way beyond the violation of hearsay evidence, because her comments were none-existing. The defendant's mother

23.

never testified in evidence. The prosecution was the one who created and brought to life the defendant's mother's testimony in the very prsence of the jury., coupled with the fact that the prosecution stated that the defense didn't put on a defense when he stated to the jury: " When Donna was on the stand? Mr.Edinger didn't ask her a single question about crack cocaine. (transc-Feb pg.20-21), "Well, Donna is a crack head, Marcus Johnson is her dealer, according to him. Hello? Marcus Johnson was under subpoena, did we hear from Marcus Johnson the drug dealer?" (transc-Feb 22 pg.19). " Well, the defense never asked anything to be tested." (transc-Feb 22.pg.10)., denigrating the role of defense counsel, the juror's could only believe that the defendant was guilty, so there was no need to fight against the state's evidence.

The law in this area is well settled, The prosecution " represents all the people, including the defendant" and must " seek justice, not merely conviction." In pursuing both goals, the prosecutor should abide by the American Bar Association"s standards governing prosecution and defense function.

Consistent with those standards, the prosecutor should not:(i) express personal beliefs as to the credibility of witness, (ii) misrepresent the evidence presented at trial, (iii) comment on the fact that a defendant exercised his or her constitutional right to remain silent, (iv) denigrate the role of defense counsel, (v) misrepresent the legal effect of defendant's statements (vi) appeal to the jury's sense of personal risk or the level of safety in the community, or (vii) attempt to inflame the prejudice of the jury by name-calling or other pejorative language.

The prosecution's improper comments destroyed the defendant's presumption of innocence. A guilty verdict must be based upon evidence and the reasonable inferences therefrom.

The prosecution improper comments denied the defendant of his 5th and 14th Amendment right to Due Process of Law and his 6st Amendment right to legal and fair proceedings. The defendant asks that this court vacate his sentence and afford him the right to a new trial.

GROUND VIII

THE DEFENDANT WAS DENIED HIS 5TH AND 14 TH
AMENDMENT RIGHT To DUE PROCESS OF LAW AND
HIS 6ST AMENDMENT RIGHT To LEGAL AND FAIR
PROCEEDING, WHEN PROSECUTION USING FALSE
OR MISLEADING EVIDENCE, WHEN MADE IMPROPER
COMMENTS To THE JURY WHICH INFERRED GUILT

THE PROSECUTION IN THIS CASE IN THE PRESENTED OF THE JURY IN ITS CLOSING, STATED
YOU DON'T NEED To BE BLOOD SPLATTER EXPERT To KNOW THAT AIN'T WAY IT HAPPENS.
COMMON SENSE TELL YOU. FIRST YOU HAVE To DRAW BLOOD IN ORDER To SPLATTER IT.
THE FIRST BLOW DOESN'T SPLATTER BLOOD, THE SECOND ONE DOES. SEE: TRANSC FEB 22 PG 21
MEAN THAT DEFENDANT THREW (2) TWO PUNCHES AT THE ALLEGE VICTIMS FACE BY STATED THE
FIRST BLOW DOESN'T SPLATTER BLOOD. THE SECOND ONE DOES. THIS WAS MANIFESTLY
IMPROPER AND SEVERELY PREJUDICED THE DEFENDANT RIGHT To A FAIR TRIAL BASED
EXCLUSIVELY ON THE EVIDENCE BEFORE THE JURY. BROKENBROUGH V. STATE 522 A.2d AT 859
THERE ARE SEVERAL ISSUE THAT COMMENTS WAS IMPROPER AND IMPERMISSABLE
CONSIDER OR THING THAT THE DEFENDANT IS GUILTY IN THE PRESENTED OF THE JURY. SEE:
BROKENBROUGH V. STATE, 522 A.2d AT 861. THE PROSECUTOR'S PERSONAL OPINION IS NOT
ADMISSIBLE EVIDENCE AT TRIAL. SEE id AT 858.

THERE IS NO TESTIMONY ON RECORD THAT DEFENDANT THREW (2) TWO PUNCHES AT ALLEGE
VICTIM FACE. MOVANT CLAIMS THE PROSECUTION NEVER OFFERED INTO EVIDENCE
(2) TWO PUNCHES WAS THROW. THE PROSECUTION REMARKS DID NOT CONFIRM ALLEGE
VICTIMS TESTIMONY BECAUSE AT TRIAL THE ALLEGE VICTIM TESTIMONY THAT
DEFENDANT THREW ONE PUNCH. SEE: TRANSC FEB 19, PG 68

THE AMERICAM BAR ASSOCIATION STANDARD FOR CRIMINAL JUSTICE,

(1) IT IS UNPROFESSIONAL CONDUCT FOR THE PROSECUTOR TO EXPRESS HIS OR HER PERSONAL BELIEF OR OPINION AS TO THE TRUTH OR FALSITY OF ANY TESTIMONY OR EVIDENCE OR THE GUILT OF THE DEFENDANT.

(2) IT IS THE RESPONSIBIBILITY OF THE COURT TO ENSURE THAT FINAL ARGUMENT TO THE JURY IS KEPT WITHIN PROPER, ACCEPTED BOUNDS COURT.

THE STATE, THROUGH IT'S PROSECUTOR, SIMPLY CANNOT GIVE ADDED WEIGHT TO THE STRENGTH OF ITS CASE AND THE CREDIBIDILITY OR THE CASE. WEBER V. STATE, DEL. 547 A. 2d, 960 (1988) IN THE CASE BELOW, THE CREDIBILITY OF THE COMPLAINANT AND THE DEFENDANT WERE CENTRAL TO THE RESOLUTION OF THE DEFENDANTS GUILT. THE PROSECUTOR GAVE ADDED WEIGH TO THE CREDIBILITY OF THE COMPLAINANT BY *PERSONALLY VOUCHING FOR HER CREDIBILITY. WEBER V. STATE, 547 A.2d AT 960 THE PROSECUTION STATED THAT YOU DON'T NEED TO BE BLOOD SPLATTER EXPERT TO KNOW AIN'T WAY IT HAPPENS. SEE: TRANSC FEB 22. PG 21 CLOSING.

PROSECUTOR STATEMENTS OF PERSONAL OPINION DURING THE STATE'S INITIAL CLOSING ARGUMENT, IS PLAIN ERROR. SEE: HOLTZMAN V. STATE, DEL. SUPR 718 A.2d 528 (1998). THE PROSECUTION NEVER CALL A WITNESS EXPERT TO THE STAND TO TESTIFIED THAT WAS A STAIN OF BLOOD ON THE WALL. DETECTIVE DONLONS TESTIMONY COULD ONLY BE EXPLAINED THAT WAS A STAIN LOCATED THERE ABOVE WHERE CALENDAR WAS HANGING APPEARED TO BE RED IN COLOR. APPEARED TO BE CONSISTENT WITH BLOOD. SEE: TRANSC FEB 20, PG 144

MOVANT CLAIMS THERE WAS NO LAB WORK DONE OR EXPERT WITNESS TO GIVE TESTIMONY OR TESTIFIED THAT STAIN WAS BLOOD ON THE WALL. WASN'T ANALYZED IN ANY SHAPE OR FASHION. THIS WAS MANIFESTLY IMPROPER AND SEVERELY PREJUDICED THE DEFENDANTS RIGHT TO A FAIR TRIAL BASED EXCLUSIVED ON THE EVIDENCE BEFORE THE JURY. BROKENBROUGH V. STATE, 522 A.2d AT 859

NELSON V. STATE 628 A.2d 69. 9 ALRS TH 369 CONTAINS ADMISSIBILITY OF EXPERT OPINION EVIDENCE AS TO BLOOD SPLATTER.

MOVANT CLAIMS THERE ARE MANY MORE ISSUE CONCERNING THE BLOOD SPLATTER THEORY THAT THE PROSECUTION MADE IN HIS CLOSING. PROSECUTION STATED THAT AFTER THE BLOOD HAD BEEN DRAWN FROM THE FIRST PUNCH SOMEBODY HAD TO REALLY GET SMACKED AROUND QUITE AT BIT MORE WITH SOME CONSIDIRABLE FORCE TO GET IT UP ON THE CEILING. SEE: TRANSC FEB 22, PG 22

THE PROSECUTION REMARKS TO THE JURY IN ITS CLOSING WAS TOTALLY CONTRARY TO DETECTIVE DONLON'S ACCOUNT OF HOW THIS ALLEGE CRIME OCCURRED.
SEE: TRANSC FEB 20, PG 144

IN THIS CASE, THE RECORD REFLECTS NO ONE TESTIFIED AT TRIAL THAT BLOOD WAS ON THE CEILING.

MOVANT CLAIMS THE PROSECUTOR HARMFUL ERROR INAPPROPRIATE OF INFLAMMATORY EVIDENCE, MISCHARCTERIZING THE EVIDENCE OR THE FACTS OF THE CASE TO THE COURT OR JURY WAS ILLEGAL AND PREJUDICE THE MINDS OF THE JURY BECAUSE FIRST THE STATEMENT WAS NOT TRUE, AND IT WAS GIVING THE JURY A FALSE SENSE OF SECURITY. BY MISLEDDING JURY TO BELIEVE BLOOD SPLATTER ON THE CEILING. D.R.E 403  D.RE 703

MOVANT CLAIMS IT HAD BEEN HELD THAT A PROSECUTING ATTORNEY REPRESENTS ALL THE PEOPLE, INCLUDING THE DEFENDANT WHO WAS BEING PROSECUTED. IS A PROSECUTORS DUTY TO SEE THAT THE STATES CASE IS PRESENTED WITH EARNESTNESS AND VIGOR, BUT IT IS EQUALLY THE DUTY OF THE PROSECUTOR TO SEE THAT JUSTICE BE SERVED BY GIVING A DEFENDANT A FAIR AND IMPARTIAL TRIAL.
SEE: HOLTZMAN V. STATE 718 A.2d 528 (DEL.SUPR. 1998).

DEFENSE COUNSEL'S ACTION BECAME EXTEEMLY PREJUDICAL WHEN PROSECUTION REMARKS CONCERNING THE BLOOD SPLATTER THEORY IN HIS CLOSING, IN THE PRESENCE OF THE JUROR'S.

DEFENSE COUNSEL'S FAILURE OF OBJECT TO USING FALSE OR MISLEADING EVIDENCE THAT WERE NOT CORROBORATED BY THE STATE WITNESS DETECTIVE DONLON'S TESTIMONY ABOUT THE CRIME SCENE. THE PROSECUTORS WITNESS WAS UTILIZED AS AN EXPERT WHICH GAVE CREDIBILITY DEFENDANT'S RIGHTS TO EQUAL PROTECTION AND DUE PROCESS. MOVANT CLAIMS COUNSEL'S FAILED TO CAPITOLIZE ON THIS CONTRADICTORY EVIDENCE CONCERNING STAIN BLOOD OR BLOOD SPLATTERS. THIS FABRICATED TESTIMONY WAS HIGHLY PREJUDICIAL AND BECAUSE THE REMARKS WAS UNCONTESTED BY DEFENSE COUNSEL, SUCH NEGLECT ENANCED THE PREJUDICE, DEPRIVNG DEFENDENT OF A CONSTITUTION RIGHT TO A FAIR TRIAL!

DEFENSE COUNSEL'S ACTION BECAME EXTEEMLY PREJUDICAL WHEN PROSECUTION REMARKS IN HIS CLOSING, IN THE PRESENCE OF THE JUROR'S.

THE PROSECUTION OPEN THE DOOR TO THIS LINE OF INQUIRD, IN DOING SO, DEFENSE COUNSEL'S FILED TO INVESTIGATION ALLEGE CRIME SCENE OR CALL EXPERT WITNESS TO THE STAND FOR HIS EXPERIENCE IN STAIN BLOOD OR HIS OPINION ON BLOOD SPLATTER. FEDERAL RULE OF EVIDENCE 702

MOVANT CLAIMS DEFENSE COUNSEL'S HAS A DUTY TO MAKE REASONABLE INVESTIGAT-ION IN ANY INEFFECTIVE CASE. SEE: EGGLESTON V. UNITED STATES 789 F.2d 374 COUNSEL'S ACTION AT THIS POINT IN THE PROCEEDING CRIPPLED THE DEFENDANT'S DEFENSE, WHICH DENIED HIM THE ABILITY TO ESTABLISH HIS DEFENSE THROUGH THE KNOWN FACTS.

MOVANT CLAIMS DEFENSE COUNSEL'S WOULD HAD CALL EXPERT WITNESS TO THE STAND ABOUT THE STAIN OR SPLATTER BLOOD. IT WOULD OPEN THE DOOR TO THE DEFENSE DEFENDANTS, IN DOING SO, ALLEGE VICTIM'S TESTIMONY AT TRIAL WOULD BE IN QUESTION. WAS THE ALLEGE VICTIM'S STANDING UP OR LAY ON A BED TO MAKE BLOOD GO INTO THIS AREA. "EXPERT CAN TELL" PROSECUTOR MISLEADING ALLEGE CRIME SCENE..

THERE By IMPLICATING THE DOUBLE JEOPARY PROVISION OF ART & 8 OF THE
DELAWARE CONSTITUTION AND BARRING THE RETRIAL OF THE DEFENDANT.
(WINN) ARGUES THAT THE PROSECUTIONS CLOSING REMARKS, WHICH CONTAINED.
(1) COMMENTS OF PERSONAL OPINION; (2) USING FALSE OR MISLEADING EVIDENCE;
(3) INFLAMMATORY AND PREJUDICIAL REMARKS; AND (4) STATEMENTS VOUCHING FOR
THE CREDIBILITY OF A STATE'S WITNESS;

DEPRIVED THE DEFENDANT OF HIS CONSTITUTIONALLY PROTECTED RIGHT OF A FAIR
TRAIL; (5)(7) HE NUMEROUS IMPROPER PERSONAL REMARKS IN THE PROSECUTION
CLOSING ARGUMENT SUBSTANTIALLY UNDERMINED (WINN) RIGHT TO A FAIR TRIAL.
THEREFORE: PROSECUTION WAS MOTIVATED By BAD FAITH OR MALICE ENGAGED IN
OPPRESSIVE TACTICS, OR ACTING TO SERIOUSLY PREJUDICE AND HARASS THE
DEFENDANT.

THEREFORE: THE CLAUSE OF MALICIOUS CONDUCT By PROSECUTION OF THE DELAWARE
CONSTITUTION SHOULD BE IMPLICATED TO RETRIAL AND OR DISMISSAL OF THE
DEFENDANT CHARGES . . .

## CONCLUSION

NOW THEREFORE, BASED UPON THE REASONS EXPRESS AND THE AUTHORITIES CITED
THERIN, AS WILL AS THE ESTABLISHED LAW, DEFENDANT RESPECTFULLY REQUEST
THIS HORORABLE COURT TO GRANT HIS MOTION AND REVERSE HIS CONVICTION
BASED UPON THE FACT THAT THE TRIAL COURT DECISION IS NOT JUSTIFIED
By THE RECORD.

RESPECTFULLY SUBMITTED,

Stephen R. Winn

STEPHEN R. WINN

DATED: 2/7/06

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

WINN

V.

CARROLL et al

CASE NU: 1:06-CV-38 K.A.J

EXHABIT

DATED: 2/7/06

Stephen R. Winn

STEPHEN R. WINN
SBI 177957
DELAWARE CORRECTION CENTER
1181 PADDOCK ROAD
SMYRNA, DE 19977

PAGE HERE

EXHIBIT (A)

Joseph's
3426 N. Market St
Wilmington, DE 19802

1 9860 90 +02 561

Attn: STEPHEN WINN 179957
M.P.C. J.T.
P.O Box 9561
Wilmington, DE 19809

1.

C-2

## EXHABIT (A)

DEFENDANT CLAIMS THE ALLEGED VICTIM COMMITTED PERJURY WHEN SHE TESTIFIED THAT SHE LEFT A MESSAGE ON THE DEFENDANT PAGER VOICE MAIL. SEE: TRANSCRIPTS FEB 19, PG 59

DEFENDANT CLAIMS HIS TRIAL ATTORNEY HAD EVIDENCE TO IMPEACH THE ALLEGE VICTIMS TESTIMONY BUT FAILED TO INTRODUCE THE EVIDENCE AT THE TIME OF TRIAL.

DEFENDANT CLAIMS THE ATTORNEY'S INVESTIGATOR AND THE PROTHONOTARY'S OFFICE AS WELL COUNSEL HAD THE EVIDENCE TO DISPUTE THE ALLEGED VICTIM'S TESTIMONY. THE EVIDENCE WAS A LEGAL BEEBER AND PAGER SHEET. WHICH CAME FROM THE SAME PAGER COMPANY THE ALLEGE VICTIM SAID SHE CONTACTED DEFENDANT ON JANUARY 15, 2001 WHICH WAS IMPOSSIBLE BECAUSE DEFENDANT PAGER WAS DISCONNECTED. SEE: EXHIBIT (A) NEXT PAGER

THIS WAS A DIRECT VIOLATION OF DEFENDANT 6th AND 14th AMENDMENT RIGHTS AND FURTHER DENIED DEFENDANT A FAIR TRIAL.

DEFENDANT CLAIMS HIS COUNSEL WITHHELD FAVORABLE EVIDENCE IN THE FORM OF BRADY MATERIAL BECAUSE THE COMPANY PAGER SHEET COULD HAVE IMPEACH THE ALLEGED VICTIM TESTIMONY AND THE STATE WOULD HAVE NO CHOICE BUT TO DISMISS ALL OF DEFENDANT CHARGES.

| (illegible) | (illegible) | (illegible) | (illegible) | (illegible) |
|---|---|---|---|---|
| -244-0435 | 18-May-99 | SSD disconnected from | B28-R1250557 | 36593604 |
| | 21-May-99 | SSD connected    to | B28-R1250067 | 36639804 |
| | 23-Dec-99 | SSD changed    on | B28-R1250637 | 36599604 |
| | 18-Jan-01 | SSD disconnected from | B28-R1250637 | 36609604 |
| | | SSD connected    to | B28-R0920102 | 36599604 |
| | 20-Mar-01 | SSD disconnected from | B28-R0920102 | 36599604 |
| | | SSD connected    to | B28-R0920102 | 36599604 |
| | 19-Apr-01 | SSD disconnected from | B28-R0920102 | 36599604 |

Our record shows pager # (302) 244 - 0435
was activated7 when we traced back to
the pager #.

## EXHABIT B PG 6

DEFENDANT CLAIMS THE FALSE AND MISLEADING WAS THE ALLEGE VICTIM WAS KIDNAPPED IN THE COURSE OF THREE DAYS UNABLE TO LEAVE THE HOUSE.

AS WRITEN IN THE POLICE REPORT TO SUPPORT THE CHARGE OF KIDNAP IN 1st DEGREE. THE ARRESTING OFFICER SWORE UNDER OATH IN OPEN COURT UNDER THE PENALTY OF PERJURY THAT THE ACCUSED WOULD NOT ALLOW ALLEGE VICTIM TO LEAVE THE HOUSE FOR ANY REASON. SEE: EXHABIT B PG 6

DEFENDANT CLAIMS THIS WAS UNTRUE BECAUSE AT TRIAL THE ALLEGE VICTIM STATED. THE ACCUSED WOULD COME AND GO IN THE COURSE OF THE THREE DAYS. SEE: TRANSCRIPT FEB 19, PG 103

THESE TESTIMONIES AT TRIAL CONTRADICTS WHAT WAS SWORN TO IN THE AFFIDAVIT OF PROBABLE CAUSE. OF THE POLICE, AND THE DEFENSE ATTORNEY SHOULD HAVE MOVE TO DISMISS THE ILLEGAL CHARGES DUE TO THE FALSE AND MISLEADING POLICE REPORT AND "AFFIDAVIT."

DEFENDANT CLAIMS HIS TRIAL ATTORNEY HAD THE AFFIDAVIT TO IMPEACH THE ALLEGE VICTIMS TESTIMONY BUT FAILED TO INTRODUCE THE EVIDENCE AT THE TIME OF TRIAL.

DEFENDANT CLAIMS THE FAILURE OF HIS ATTORNEY TO SUBMITT IMPEACHABLE EVIDENCE TO THE JURY FOR DELIBERATION VIOLATED HIS 6th AND 14th AMENDMENT RIGHT TO A FAIR TRIAL.

Exhibit B
Affidavit of Probable Cause

State of Delaware vs STEPHEN R WINN          Police Complaint: 3301001266
Also known as: STEFAN                         SBI Number: 00177957
Date of birth: 08/31/1962      Sex: M        Race: B      Accused's age: 38
Eyes: BRO      Hair: BLK      Height: 601        Weight: 172
Accused's home add: 122 PARMA AVE            Social Security Number 221566774
                    :                         Driver's License DE - 0877691
                    : NEW CASTLE, DE 197200000
                                              Name, Home and Work Addresses, and
Accused's Home Ph : 0                         Telephone Numbers of Next of Kin
                                              or Parent/Guardian
Accused's employer: SELF                      : LAURAMAE GREGORY
                   : PORT OF WILMINGTON       : SAA
                   :                          :

Accused's Emp Pho: 0                          Phone: 0
Accused's Work Hr:                            Work :
                                                   :
                                                   :
Relation: Vict to accused:                         :

Victim's Age :
Victim's D.O.B. :
Date(s) and time(s) of offense: 01/15/2001 21:00 thru 01/17/2001
Location where offense occurred: 200 BALDT AVE New Castle 19720

    Your affiant THOMAS M DONLON can truly state that:
1. Your affiant is employed by the New Castle Police department. Your affiant
has been employed by the City of New Castle for approx. 3 1/2 years. Affiant
has 5 1/2 years police experience prior to being employed by the City of New
Castle. Affiant is assigned to Criminal Investigations within the department.
2. On We,03/14/01 affiant was assigned to investigate this incident,which was
reported on 3/12/01. The victim, Donna Cleckley reported the following crimes
to this agency on said date.
3. Cleckley advised that she was having relationship problems with her live
in boyfriend, Winn,Stephen (Accused in this Affidavit of Probable Cause).
4. Cleckley advised that on 1/15/01 she was arguing with the accused at her
residence (200 Baldt Av,Nc). Cleckley advised that the accused was mad because
she was making him move from the residence, because the relationship was not
stable. Cleckley advised that earlier in the day she switched the locks on the
doors in an attempt to keep the accused out of the residence. The accused left
the residence. Cleckley advised that she only switched the front and rear
door locks. Cleckley took a shower after the accused left the residence. When
Cleckley was finished her shower she heard a knock at the front door. Cleckley
went to the front door wearing her robe. Cleckley recalled locking the storm
door. Cleckley opened the front door and saw the accused standing on the porch.
The accused entered the house without incident. Cleckley advised that she retu
ned to the bedroom and began to apply lotion to her body. The accused entered
the bedroom and began to argue with Cleckley again. The accused then punched
Cleckley in her left eye with his closed fist. The accused jumped pa Cleckley
and began to choke her with his hands. Cleckley advised that she was bleeding

_____                      _____
     (Affiant)                               (Judge-Master-Commissioner-Court Official)
                                              Sworn to and subscribed before me
                                              This 15 of March, 2001

Exhibit B

Statement of Probable Cause (Continued)

State of Delaware vs STEPHEN R WINN

from a cut above her left eye. The accused then smacked Cleckley in her face two times, with an open hand. Cleckley advised that the blood from the cut above her eye splattered on the wall above the headboard when he smacked her. Cleckley advised that the accused then ordered her to lay on the bed with her head to the headboard, and to remove her cloths. The accused then strapped her hands to the bed posts using two leather belts. The accused told Cleckley that if she could get out she would be doing good. Cleckley could not free her the belts from her hands. The accused told her he was giong to return with a bat and kill her. The accused left the room for a short time and returned with a baseball bat. The accused began to strike Cleckley in her legs with a the bat. Cleckley attempted to use her legs to avoid the hits. The accused then used duct tape to secure her hands and legs to the bed posts. The accused also used duct tape and to gag Cleckley's mouth.

5.    The accused then began to talk to Cleckley about having sex with him. He told Cleckley that "It better be good". The accused cut Cleckley's under wear from her body using a pair of sissors. The accused then climbed on top of Cleckley and attempted to penetrate her vagina with his penis. The accused could not penetrate the victim because her legs were strapped to the bed. The accused freed her right leg and began to rape her vaginally. Cleckley advised that the rape did not last a long time, but knew the accused ejaculated inside of her.

6. The accused then began to threaten Cleckley with the baseball bat, telling her to give him money. Cleckley advised that the accused was tapping her on her head with the bat while telling her to give him money. The accused removed pprox. $30.00 USC, and a cellular phone from the room and left. The accused returned approx. 20 to 30 minutes later, drinking a beer. He entered the bed room where Cleckley was still tied to the bed posts and told her that he could hear her screaming, but it was faint and no one could hear her.

7. Cleckley began to cry, begging the accused to remove the bindings from her hands. Cleckley told the accused that she could not feel her hands because of the tight bindings. The accused removed the bindings.

8.    Cleckley advised that she had trouble seeing and walking due to the beat ing by the accused. Cleckley also advised that the accused had sex with her on two other occasions that same night. Cleckley advised that she did not attempt to say no to his requests for sex, because she was afraid of him.

9.    Cleckley advised that the accused would not allow her to leave the house for any reason until 1/18/01. The accused allowed Cleckley to go to work to pick up her check, but drove with her. The accused allowed Cleckley to leave the house to go to work on 1/19/01. Cleckley left the house at 0700 hrs and never returned to the house. Cleckley received counceling from her employer ( .S Postal Service) who convinced Cleckley to flee to the Womans Shelter. Cleckley has been staying at the shelter since she fled her house on 1/19/01.

10.    Cleckley advised that she didn't attempt to flee sooner because she fear d that the accused would beat her again. Cleckley also was scared to notify the police about the incident because she feared the accused.

11.    On 03/02/01 Cleckley filed for a PFA order at Family Court. After the hearing, the accused walked by Cleckley and stated "better get a gun". This

_____
(Affiant)

_____
(Judge-Master, Commissioner, Court Official)
Sworn To and subscribed before me
this 15 of March, 2001

Exhibit B

Statement of Probable Cause (Continued)

State of Delaware vs STEPHEN R WINN

incident  is being handled by Capitol Police,Wilm. A warrant was issued due to that violation.
    12.   The  accused continued to contact Cleckley while incarcerated at  Gander Hill Prison  on unrelated charges,via telephone. The telephone contact  is  a violation of the Family Court Protective Order.
    13. On 3/12/01 Cleckley decided to report the incident to the police.
    14. On 3/15/01 Cleckley responded to New Castle City Police and met with your affiant.  Affiant and Cleckley responded to 200 Baldt Avenue. Cleckley  turned over  all  remaining items that were used during the crime. Some of the  items were  removed  from the residence by the accused. Cleckley  advised  that  the accused washed the bedding after the attack,and removed the duct tape bindings from the house. Affiant seized the items as evidence and secured them at NCPD.
    16. Affiant took photographs of the crime scene.
    17.  Photographs  of  Cleckley's injuries were taken by an  employee at  the battered womans shelter on 1/20/01. Photos in possession of the shelter.
    18.  Cpl.  Walker  (NCPD) and Lt. Cannon (NCPD) observed the  photos  of  the injuries on 3/12/01.
    19. This investigation revealed that the accused was convicted on Assault 2nd on 3/17/89, Court action # IN88030394, New Castle County Superior Court,NC.
================================================================

Affiant:
THOMAS M DONLON NEW CASTLE CITY PD Phone 0 Work 0

Victims:
DONNA CLECKLEY
DONNA CLECKLEY

_____
Affiant

Sworn and subscribed before me this 15 day of March A.D. 2001

_____
Judge/Master/Commissioner/Court Official

1. late report
   DOI - 4/15-19/01
   DO Rpt 3/12/01
2. very detailed for late report
3. physical evidence collected
   - detail
   - rape kit done
4. Photos gto Women's Shelter
   - chain of custody? (finished?)
   - Now in police custody?
   - what di pix show?
   of pix of injuries and...

5 Statement?
- Miranda?
- Record?

C-7

EXHIBIT (C)

DEFENSE COUNSEL WROTE THE DEFENDANT IN A LETTER DATED
July 5, 2001, STATING: THE STATES CASE IS ROCK SOLED ON THE
ASSAULT 2nd AND POSSESSION OF A DEADLY WEAPON. SEE EXHIBIT (C).PG1.

THE DEFENDANT ASSERTS THAT DEFENSE COUNSEL'S STRONG BELIEF
IN THE STATES CASE BLINDED HIM FROM THE TRUTH OF THE DEFENDANT
DEFENSE, WHICH MADE HIM TO FOCUS ONLY ON GETTING THE DEFENDANT
TO PLEAD OUT.

THE DEFENDANT WAS FOUND NOT GUILTY ON THE ASSAULT 2nd AND
POSSESSION OF A DEADLY WEAPON.

DEFENSE COUNSEL HAS A DUTY TO BRING TO BEAR SUCH SKILL AND
KNOWLEGE AS WILL RENDER THE TRIAL A RELIABLE ADVERSARIAL TESTING
PROCESS, THIS NEVER HAPPEN BECAUSE COUNSEL HAD MORE FAITH IN THE
CASE AGAINST THE DEFENDANT, THAT ALL HE WANTED THE DEFENDANT TO
DO WAS PLEAD OUT.

DEFENDANT CLAIMS THAT DURING THE COURSE OF THESE CRIMINAL
PROCEEDING THROUGH A PRIVATE INVESTIGATOR AND AS WELL AS HIS
OWN INVESTIGATOR EFFORTS HE HAS LEARNED THE PUBLIC DEFENDER
MR. JOHN S. EDINGER JR, HAS A HISTORY OF SPEAKING TO AFRO-
AMERICANS DEROGATORY AND DEMEANING. THIS COURT CAN CHECK
MR. EDINGER'S BACK GROUND AND IT WILL FIND MR. EDINGER HAD TO
BE TRANFERRED FROM DOVER FOR THE SAME REASON CLAIMED OF IN
THE FORMAL COMPLAINT, FILED WITH THE OFFICE OF DISCIPLINARY.

9

C-8



EXHIBIT
(C) p.6(10)

## PUBLIC DEFENDER OF THE STATE OF DELAWARE
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

JOHN S. EDINGER
ASSISTANT PUBLIC DEFENDER

TELEPHONE
(302) 577-5137

July 5, 2001

Stephen Winn
M.P.C.J.F.
P. O. Box 9561
Wilmington, DE    19809

RE:   State of Delaware v. Stephen Winn
      I.D.#0103012308

Dear Mr. Winn:

I am in receipt of your letter of 6/30/01 requesting that I investigate a particular matter for you. I have passed the letter on to our investigator.

I am confused by your request because on 6/11/01 you specifically instructed me to take no further actions on your case. You said you wanted to fire me because I was "crooked". At your request, I informed the Court you were requesting new court appointed counsel. This matter is to be heard on 7/10/01.

As I told you before, the Court is unlikely to appoint new counsel. They will probably give you 3 options. Hire an attorney, represent yourself, or continue with my representation.

You have a final case review on 7/30/01. You are facing 3 counts of Rape 1st, Kidnapping 1st, Assault 2nd, Robbery 1st, 2 counts of Possession of a Deadly Weapon During the Commission of a Felony, Terroristic Threatening and Criminal Contempt. You are facing a minimum of 53 years to life in prison. The plea offer in this case is to Rape 3rd, Unlawful Imprisonment 1st, Assault 2nd and Possession of a Deadly Weapon During the Commission of a

9.

Felony. Under the plea you would face 4-50 years in prison. After reviewing all the State's evidence (which you have copies) and considering all the evidence you think is relevant to your case, it is my opinion that you should take the State's plea offer.

On every occasion that we have spoken you have indicated that if we obtain the victims credit card records and cell phone records we could prove she is lying. I completely disagree with you on that point. All that those records can prove is that her cell phone and her credit card were used during the period of time the offenses were alleged to have occurred.

A jury could still find beyond a reasonable doubt that you raped her, kidnapped her, robbed her and assaulted her even if we proved her cell phone and credit card was being used on the same days as the alleged incidents.

More importantly, however the State's evidence corroborates essential parts of her story. The medical reports (which you have copies) show she was treated for injuries to head, arms and legs. The photos taken at Women's Shelter on 1/20/01 (which you also have copies) show injuries to face, wrists and thighs and knees. Medical evidence will show that the bruises on the legs in the photographs are consistent with injuries caused by blunt trauma such as a baseball bat. DNA analysis will show that blood on the bat, found in the house belongs to Donna Cleckly.

Donna Cleckly told police she was in fear of you and as a resultdid not report this to police. I suspect the jury will believe her for the simple fact that even though she told you to leave her house, she chose to move to a battered women's shelter. I can not think of a reasonable explanation why anyone would move out of their own house to a shelter unless they were in fear.

The State's case is rock solid on the Assault 2nd and Possession of a Deadly Weapon. My experience tells me that if the jury is convinced she's telling the truth about these charges they will more than likely believe her for all the charges.

According to the Deputy Attorney General, Mr. Roberts, there is no further room for negotiation. The plea offer is final and will be withdrawn if not accepted on 7/30/01. For the above reasons I strongly urge you to consider the plea and accept it.

Sincerely,

John S. Edinger, Jr.
Assistant Public Defender

JSE/dd



### PUBLIC DEFENDER OF THE STATE OF DELAWARE
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

JOHN S. EDINGER
ASSISTANT PUBLIC DEFENDER

TELEPHONE
(302) 577-5137

June 12, 2001

Stephen Winn, SBI#177957
M.P.C.J.F.
P. O. Box 9561
Wilmington, DE   19809

      RE:   State of Delaware v. Stephen Winn
          I.D.#0103012308

Dear Mr. Winn:

      Pursuant to your instructions I will take no further action on
your case. I will inform the Court of your desire to dismiss me as
your attorney. As I told you today at the courthouse, I am
doubtful the Court will appoint new counsel to represent you.

      I have enclosed copies, 9 memorandum that were written to me
by the PD Staff in preparation of your case. If I can be of
further assistance please feel free to call me.

                    Sincerely,

                    John S. Edinger, Jr.
                    Assistant Public Defender

JSE/dd
Enclosure

*EXHABIT (E)*

SUPERIOR COURT
OF THE
STATE OF DELAWARE

WILLIAM C. CARPENTER, JR.
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE (302) 255-0670

July 20, 2004

Stephen Winn
Delaware Correctional Institution
Smyrna, DE 19977

> RE:   State v. Stephen Winn
>       Criminal ID No. 0103012308

Dear Mr. Winn:

On June 28, 2004 you filed a pleading with the Court entitled "Defendant's Motion to Amend his Rule 61 Postconviction Relief Motion." I have briefly reviewed the document and since it was filed within the three years from the time the mandate was issued in your case by the Delaware Supreme Court, I will allow the amendment to occur. Obviously with the addition of these new grounds the Court will have to take additional time to consider your motion.

Sincerely yours,

Judge William C. Carpenter, Jr.

WCCjr:twp

cc:   Donald Roberts, Esquire
      John Edinger, Esquire
      Prothonotary

13.

C-13

STEPHEN R. WINN
118 PADDOCK ROAD
D.D.C SMYRNA DE
19977

HON. JUDGE, WILLIAM C. CARPENTER
SUPERIOR COURT
500 N. KING ST.
WILMINGTON, DE
19801

I.D. #0103012808

RE: RESPONSE TO COUNSEL'S

DEAR HONORABLE JUDGE

In response to att,Edinger's feb 12,04 response to the post-conviction,
what he asserts will prove "suspect" under cross-examination.
If this honorable court will grant an evidenting hearing, I could further
estalish the merits warrenting a new trial!

Consequently their are many issues I take with counsels six responses.
However without over-burdening the court I will attempt to respond in
whole-substance.

Upon meeting counsel he spoke on pleading the case out and when I
refused to engage in such dialogue he shut down.All brief encounters with
counsel was arrogant and hostile, On both sides. I said on both side's
because as I insistanted on the preperation of a defense for trial,
Counsel mentally detterred me counsel refused to call nurse thomas to
whom initially exmined the victim at the hospital. On the stand when the
victim was asked of being raped, she said it wasent like she was raped....
Your Honor, its apparent the victim is quite valuable to suggestiveness
and the presence of nurse thomas could have offered clarity.

In addition to no calling that witness their were other witnesses,
some family members I wanted called to the stand but counsel refused.

The day of trial counsel not only didnt bother to confer with me
prior to trial but was in the process of picking the jury when I entered
the court?
What about the policy-rule requiring a defendant be present and permitted,
to participate??

(1)

JUDGE CARENTER
PAGE 2.

Than theirs the issue of an evidentiary matter being discussed in open
court, without my being their?
and at the last minute the state disclose a tape,no objections and nor
was it played to the jury. The fact the tape was available evidence,
I wanted the jury to hear it.

    Your Honor, I was prejudice and deprived of a fair trial because of
counsels actions. I was so hurt and discouraged by counsels refusal to
adhere to the reasonable request, I was ready to accept a guilty plea
but the plea paper I gave/returned to him while he was picking my jury,
he put it aside only hours later when it-trial had started, he informed
the prosecution.

    Your Honor, Ive cooridinated a list of issues, with supporting transcript
documents for preperation and anticipation of being afforded an evidentiry
hearing.

    In conclusion, I humbly appeal to this court for consideration- an
evidentiary hearing please. and I thank you in advance for your anticipated
cooperrtion.

                                    Respectfully submitted

cc: Donald R. Roberts, ESQ            STEPHEN R. WINN 177957

(2).

SUPERIOR COURT CRIMINAL DOCKET                    Page    8
( as of   10/02/2002 )

State of Delaware v.   STEPHEN R WINN                        DOB: 08/31/1962
State's Atty: DONALD R ROBERTS , Esq.      AKA: STEPHEN STEPHEN
Defense Atty: JOHN S EDINGER , Esq.             STEPHEN STEPHEN

```
       Event
No.    Date         Event                                  Judge
----------------------------------------------------------------------------
       DEFENDANT LETTER TO MR.EDINGER REQUESTING THAT HE START AN APPEAL
       ON HIS CASE.WOULD ALSO LIKE TO KNOW HIS POSITION ON THE SENTENCING
       PHASE OF HIS TRIAL.
66     04/03/2002                             CARPENTER WILLIAM C. JR.
       EMAIL FILED TO JUDGE CARPENTER FROM DONALD ROBERTS, DEPUTY ATTORNEY
       GENERAL
       RE: YOUR HONOR PRESIDED OVER THE TRIAL OF THE ABOVE DEFENDANT WHO WAS
       FOUND GUILTY OF RAPE 1ST DEGREE AND KIDNAPPING 1ST DEGREE, ETC. IN
       CHECKING JIC, I NOTICED THAT SENTENCING IS SCHEDULED FOR MAY 3RD, 2002
       I LONG AGO PUT IN FOR A VACATION DAY FOR MAY 3RD AND WOULD REQUEST
       THAT SENTENCING EITHER BE MOVED UP OR BACK. AT PRESENT, I HAVE NO
       OTHER VACATION PLANS UNTIL AUGUST. INASMUCH AS THERE IS SUBSTANTIAL
       MINIMUM MANDATORY TIME, THE DEFENDANT WOULD NOT BE PREJUDICED BY THE
       RE-SCHEDULING.
67     05/21/2002
       LETTER FROM: STEPHEN WINN   TO: MR. EDINGER
       RE:SENTENCE DATE.TRANSCRIPTS OF TRIAL
       05/31/2002                             CARPENTER WILLIAM C. JR.
       SENTENCING CALENDAR: DEFENDANT SENTENCED.
85     05/31/2002                             CARPENTER WILLIAM C. JR.
       SENTENCE: ASOP ORDER SIGNED AND FILED 09/04/02.
68     06/10/2002
       LETTER FROM: STEPHEN WINN  TO: MR. EDINGER
       RE:TRANSCRIPTS,APPEAL
69     06/18/2002
       LETTER FROM SUPREME COURT TO KATHLEEN FELDMAN, COURT REPORTER
       RE: A NOTICE OF APPEAL WAS FILED ON JUNE 10, 2002.
       THE TRANSCRIPT MUST BE FILED WITH THE PROTHONOTARY NO LATER
       THAN JULY 28, 2002.
       328, 2002
70     06/21/2002
       TRANSCRIPT FILED.
       SENTENCING TRANSCRIPT, MAY 31, 2002.
       BEFORE JUDGE CARPENTER.
71     06/26/2002
       LETTER FROM: STEPHEN WINN  TO: MR. JOHN EDINGER
       RE:WOULD LIKE TO HAVE THE CASE NUMBER FOR HIS APPEAL.
72     06/28/2002
       LETTER FROM: STEPHEN WINN  TO: JOHN EDINGER
       RE:MOTION TO WITHDRAW
75     07/10/2002
       DEFENDANT'S LETTER FILED. REQUESTED COPY OF DOCKET RECEIVED 7/10/02.
```

*EXHABIT (G)*

SUPERIOR COURT CRIMINAL DOCKET                          Page    9
( as of  10/02/2002 )

State of Delaware v.  STEPHEN R WINN                          DOB: 08/31/1962
State's Atty: DONALD R ROBERTS , Esq.      AKA: STEPHEN STEPHEN
Defense Atty: JOHN S EDINGER , Esq.              STEPHEN STEPHEN

        Event
No.   Date           Event                                   Judge
-----------------------------------------------------------------------------
        MAILED TO DEFENDANT ON 7/23/02.
76   07/10/2002
        DEFENDANT'S LETTER FILED. RE: NOTES OF APPEAL. SENT MR. WINN DOCKET
        ON 7/23/02.  KB
73   07/17/2002
        DEFENDANT'S LETTER FILED.
        RE: APPEAL
74   07/17/2002
        DEFENDANT'S LETTER FILED.
        RE:APPEAL
84   07/23/2002
        LETTER FROM FROM SUPREM COURT TO DOMENIC VERCHIA, COURT REPORTER
        RE: EXTENSION IS GRANTED THE TRANSCRIPT IS DUE AUGUST 19, 2002.
77   07/29/2002
        DEFENDANT'S LETTER FILED.
        RE: INEFFECTIVE DEFENSE/INFO REGRADING APPEAL AND BRIEF
78   07/29/2002                                  CARPENTER WILLIAM C. JR.
        MOTION FOR MODIFICATION OF SENTENCE FILED.
        PRO SE REFERRED TO JUDGE CARPENTER
        REFERRED TO PRESENTENCE FOR JUDGE CARPENTER 8-6-02
79   08/05/2002
        LETTER FROM:STEPHEN WINN  TO:JOHN EDINGER
        RE:DEFENDANT REQUESTING FOR MR.EDINGER TO FILE A MOTION TO WITHDRAW
80   08/15/2002
        TRANSCRIPT FILED.
        TRIAL TRANSCRIPT FILED. FEBRUARY 22, 2002.
        BEFORE JUDGE CARPENTER AND JURY.
81   08/15/2002
        TRANSCRIPT FILED.
        TRIAL TRANSCRIPT. FEBRUARY 21,2002.
        BEFORE JUDGE CARPENTER AND JURY.
83   08/15/2002
        TRANSCRIPT FILED.
        TRIAL TRANSCRIPT. FEBRUARY 19, 2002.
        BEFORE JUDGE CARPENTER AND JURY.
82   08/20/2002
        TRANSCRIPT FILED.
        TRIAL TRANSCRIPT. FEBRUARY 20,2002.
        BEFORE JUDGE CARPENTER AND JURY.
        08/21/2002
        RECORDS SENT TO SUPREME COURT.
86   09/04/2002



**PUBLIC DEFENDER OF THE STATE OF DELAWARE**
**ELBERT N. CARVEL STATE OFFICE BUILDING**
**820 NORTH FRENCH STREET, THIRD FLOOR**
**P.O. BOX 8911**
**WILMINGTON, DELAWARE 19801**

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY



### MEMORANDUM

To:      John Edinger

From:    

Date:    5-24-01

Re:      State v. Stephen Winn

Significant Findings From Medical Record of 1/19/01.

- Victim reported "beaten by friend Monday night".

- No mention to triage nurse of "rape".

- Admits sexual activity to physician as physician reports "Did have sexual activity-declines STD (sexually transmitted disease) exam/proplalaxis (preventative treatment).

- Had history of hysterectomy.

- Bruising present left cheek, right knee, tops of thighs, back.

- Hemorrhaging to left eye, extensive.

- No examination of the genitalia.

- X-ray to right forearm normal.

- Denied drug and alcohol use/abuse.



- Other than a possible tear inside her eye, there was no notation of lacerations .

- The victim was referred to her family physician for follow up for her left eye and eardrum. If there are inferences of permanent damage, you do not have those medical records.

- There is no notation that the victim was given any medications for pain.

- She had extensive bruising to top of her thigh and back of body.

- She had a possible hole in her left eardrum.

### Other medical records

- Swabs for STD (chlamydia, gonorrhea) collected by private MD, Elias Mamberg on 1/22/01. These were negative.

- This physician, Dr. Mamberg, a board certified gynecologist and obstetrician, had to have done an internal examination on the victim in order to obtain the samples for the STD testing. Only included within this discovery package is one page of notes from Dr. Mamberg. Two notations reference victim's desire for "VD" testing. The note includes "patient was beaten". Was in ER (emergency room) request VD testing repeat swab (date illegible). Another notation different date states "... prosecute of individual that she states beat her we reveal results of negative RPR (syphilis), negative CG (gonorrhea) and CHL (chlamydia). Patient aware that RPR needs repeat and HIV.

- Dependent on the physician there may or may not be more extensive notations in his file (which you may or may not want).

- However the specimens were collected by Dr. Mamberg on 1/22/01, this was one week after the alleged attack. This 42 year old female (presumably sexually active) may or may not have had any injuries (internally or on the external genitalia) to begin with. Typically there may have only been very minor indications of erathema minor petechia. These would have resolved in one week's time. Any minor tearing of the fourchette would have also resolved.

- Presumably, if this victim had any significant symptomology (pain, bleeding) in her genitalia she would have sought out medical attention for these problems specifically either at the emergency room, or through her private physician.

### DNA

- Blood was found on a calendar, pillow cover and baseball hat.

STEPHEN R. WINN #177957
1181 PADDOCK ROAD, D.C.C
SMYRNA, DE 19977

JOHN S. EDINGER, JR
PUBLIC DEFENDER
820 N. FRENCH STREET                CASE# 328, 2002
WILMINGTON, DE 19801                RE: INCORPORATE ISSUE

MARCH 20, 2003

DEAR MR. EDINGER

DELAWARE'S SUPREME COURT RULE 8 ALLOWS FOR AN ISSUE
TO BE RAISED FOR THE FIRST TIME ON APPEAL, IN THE INTERST
OF JUSTICE AND THE MISCARIAGE OF JUSTICE. ASSUMING IVE
INTERPRETATED THE RULE CORRECTLY. I HUMBLY INSIST you
AMEND THE APPEAL TO REFLECT THIS ISSUE:

THE PROSECUTION COMMITTED PLAIN ERROR BY COMMENTING ON
DEFENDANTS MOTHER, BEING ABSENT CAUSE SHE DIDNT WANT TO
LIE FOR DEFENDANT, SEE PAGE 24 #7 THRU 11 OF TRANSCRIPTS.
THIS IMPROPER AND PREJUDICIAL REMARK ALLOWED AN INFERENCE
TO BE DRAWN BY THE MOTHERS ABSENCE, THAT THE DEFENDANT WAS
GUILTY. AND BY THE REMARK HAVING BEEN MADE IN THE
PROSECUTIONS CLOSING, THEIR WAS NO WAY DEFENDANT COULD
HAD CALLED HIS MOTHER TO TESTIFY. THAT REMARK WAS EQUAL
TO A PROSECUTOR COMMENTING ON A DEFENDANT EXERCISING TO
HIS 5th AMENDMENT RIGHT TO REMAIN SILIENT AND NOT TESTIFY

1 TO 2

IN THE PAST 19 MONTHS THE DELAWARE SUPREME COURT, REVERSED THREE CASES BASED ON IMPROPER REMARKS MADE BY THE PROSECUTION. THE REMARK WAS EXTREMELY PREJUDICIAL AND IT UNDERMINEDED DEFENDANT CONSTITUTIONAL RIGHTS TO EQUAL PROTECTION UNDER THE LAW AND DUE PROCESS. BY SOME REMOTE POSSIBILITY THIS ISSUE COULD BE AMENDED, PLEASE DO SO, FOR COST PURPOSES AND CONVIENCES TO THE HONORABLE COURT, WE CAN APPEAL TO THE COURTS REASONING. COPIES I'm SENDING TO THE HONORABLE JUDGES IN HOPE OF PRESERVING THIS ISSUE FOR REVIEW.


RESPECTFULLY SUBMITTED

Stephen R. Winn

STEPHEN R. WINN 177957

D.C.C 1181 PADDOCK ROAD

SMYRNA, DE 19977

CC:


2 TO 2

JOHN S. EDINGER, JR
PUBLIC DEFENDER OFFICE                    DEC 18, 2001
820 N. FRENCH STREET
WILM, DE 19801

I.D. # 0103012308


DEAR MR. EDINGER


ON OR ABOUT AUGUST 15, AND OCTOBER 18, 2004.
I SENT YOU (2) TWO LETTER CONCERNING YOU SEEING ME BEFORE YOU INTER-
VIEW ANY WITNESSES:
ON OR ABOUT DECEMBER 18, 2001, I RECEIVED INESTIGATIVE MEMORANDUMS
CONCERNING MY WITNESSES AND MY BEEPER.

ATTENTION:

WHAT PART OF IT IS THAT YOU DON'T UNDERSTAND. THE WITNESSES DOES
NOT KNOW ABOUT MY RELATIONSHIP OR THE INCIDENT. PLEASE REVIEW
ACCORDING TO THE AFFIDAVIT OF PROBABLE CAUSE THIS SEQUENCE OF EVENTS
STARTED ON MONDAY 1-15-2001 THROUGH 1-17-2001. I WAS WORKING ON THE
WITNESSES CARS FROM 1-13-2001 THROUGH 2-2-2001.

IF YOU WOULD HAVE TALK TO ME BEFORE INTERVIEW THE WITNESSES YOU
WOULD HAVE HAD THE INFORMATION CONCERNING MY WHEREABOUTS OF JANUARY
15TH TO 17TH 2001. EVEN THE MATTER OF MY BEEPER. I TRIED TO GET YOUR
ATTENTION CONCERNING MY WHEREABOUTS ANY EVERY UNDISCUSED ITENS,

WHEN WE TALKED ON JULY 24, 2001 ,

ATTENTION :

WITNESS DAMON FOLLWERS, NEW INFORMATION .

HIS NAME IS DAMON FLOWER * NOT DAMON FOLLWERS SORRY

I HAVE NOT TALKED WITH YOU SINCE JULY 30, 2001 SO
IF YOU COULD PLEASE SEE ME SO WE CAN RESOLVE SOME ISSUES, ALSO
I NEED TO TALK TO YOUR INVESTIGATIVE .

THANK YOU FOR YOUR TIME .

SINCERELY ,

CC: PROTHONOTARY

STEPHEN WINN 177957
P.O. BOX 9561
WILM, DE 1909

JOHN S. EDINGER, JR                    JANUARY 18, 2002
PUBLIC DEFENDER OFFICE
820 N. FRENCH STREET                   I.D.#0103012308
WILMINGTON, DE 19801


DEAR MR, EDINGER

        YOU CONDUCTED A VIDEO PHONE INTERVIEW WITH ME ON
1-17-02 AT THE PUBLIC DEFENDER OFFICE / GANDER HILL PRISON
IN PREPARATION FOR TRIAL SCHEDULED 2-19-02. YOU BEGAN
THIS INTERVIEW BY READING OFF MY INDICTMENT YOU THEN
STATED I "WAS GUILTY, AND THAT I WAS GOING TO DO LIFE
IN PRISON". I MADE REFERENCES TO THE WITNESSES I PROVIDED
FOR YOU, YOU STATED THAT "MY WITNESSES WILL NOT HELP ME".
I THEN REQUESTED THAT YOU GET THE FAMILY COURT ORIGIONAL
PETITION FILED BY MS, CLECKLEY, YOU STATED THAT YOU WOULD
NOT DO IT. YOU THEN THREATENED TO FILE A MOTION IN THE
COURT FOR ME TO PROCEED PRO-SE. THE INTERVIEW YOU CONDUCTED
WITH ME ON THE ABOVE REFERENCED DATE, CLEARLY DEMONSTRATES
WHAT I HAVE ALLEDGED ALL ALONG "INEFFECTIVE ASSISTANCE OF
COUNSEL", FOR THE FOLLOWING REASONS:
i). THE PURPOSE OF DEFENCE COUNSEL IS TO PREPARE THE
DEFENDANTS CASE WITH A VIABLE DEFENSE AGAINST THE SCOPE
OF THE LAW, AND TO INTERPRET ANY PROCEEDURE THE STATE
EXECUTES AGAINST HIM IN EFFORT TO PROSECUTE HIM,
2)

YOU TELLING ME "I'M GUILTY" IS THE JOB OF THE JURY, AND THEN TELLING ME "I'M GOING TO DO LIFE" IS A JUDGEMENT OF THE PRECIDING JUDGE IN THIS MATTER. SUCH CONDUCT FALLS FAR AND SHORT, OF THE PROFESSIONAL EXPECTATIONS OF WHAT A DEFENGE COUNSEL IS SUPPOSE TO PROVIDE IN HIS SERVICES TO A DEFENDANT.

2). AS FAR AS YOU FILEING A MOTION IN THE COURT FOR PRO-SE REPRESENTATION, AT THIS STAGE BEFORE TRIAL IT WOULD BE IMPOSSIBLE FOR TRAINED COUNSEL TO TAKE ON THIS CASE, KNOWING WELL THAT ANY PRO-SE EFFORTS WOULD BE FUTILE AND STRATEGICALLY SUICIDAL.

THIS CAN ONLY BE VIEWED AS A SUBATAGE EFFORT TO ULTIMATELY SECURE THE "LIFE SENTENCE" YOU REFERENCED. I AM THEREFORE MAKING AN EFFORT TO SAVE MY LIFE BY POINTING OUT ALL OF THE ABOVE OF COUNSEL, NOTING IT ON RECORD THE HISTORY OF CONFLICT WE HAVE HAD AT THE ONSET OF THIS CASE.

YOUR TRULY,
STEPHEN WINN 177957
M.P.C.J.F
P.O. BOX 9561
WILMINGTON, DE 19809

CC. JUDGE JOSEPH R. SLIGHTS III
CC PROTHONOTARY
CC. DISCIPLINARY BOARD OF COUNSEL'S

C-25

JOHN S. EDINGER, JR
PUBLIC DEFENDER OFFICE
820 N. FRENCH STREET
WILMINGTON, DE 19501

July 30, 2002

I.D. # 0103012305

DEAR MR, EDINGER,

I AM WRITING you CONCERNING my TRANSCRIPTS OF THE
TRIAL you REPRESENTED ME IN DURING THE MONTH OF FEBRUARY,
2002. AS you KNOW, I WAS SENTENCED ON MAY 31, 2002, AND
I AM AWARE THAT THERE IS A 30 DAY WINDOW PERIOD TO
FILE my BRIEF ALONG WITH your MOTION.
IT WOULD BE GREATLY APPRECIATED IF you WOULD SEND ME A
COPY OF your MOTION ALONG WITH my TRANSCRIPTS.

By THE WAY, I AM SENDING A COPY TO CATHY HOWARD OF THE
SUPREME COURT.

CC

STEPHEN R. WINN 177957
M.P.C.J.F P.O. BOX 9561
WILMINGTON, DE 19809

C-26

JOHN S. EDINGER, JR
PUBLIC DEFENDER OFFICE                    SEPTEMBER 18, 2002
820 N. FRENCH STREET
WILMINGTON, DE 19801                      I.D. #0103012308


DEAR MR, EDINGER

    I AM SENDING YOU THIS LETTER TO INFORM YOU
THAT I HAD RECIEVED MY DOCKET SHEET,
INFORMING ME THAT BRIEF SCHEDULE ISSUED. (OPENING
BRIEF DUE SEPTEMBER 25, 02).
I HAD NOT RECIEVED ANY INFORMATION REGARDING YOUR
MOTION AND THE BRIEF.
I AM AWARE THAT THERE IS A 30 DAY PERIOD TO FILE
MY BRIEF ALONG WITH YOUR MOTION AND BRIEF.
IT WOULD BE GREATLY APPRECIATED IF YOU WOULD SEND
ME A COPY OF YOUR MOTION AND THE BRIEF ALONG WITH
MY TRANSCRIPTS OF THE TRIAL YOU REPRESENTED ME IN
DURING THE MONTH OF FEBRUARY, 2002.

CC. CLERK OF SUPREME COURT            SINCERELY,
    OFFICE OF PROTHONOTARY            STEPHEN R. WINN 177957
    SUPERIOR COURT                    D.C.C 1181 PADDOCK ROAD
                                      SMYRNA, DE 19977

C-27

EX 2

STATE EXHABIT

 

CUNNINGHAM - DIRECT

SHE HAD CUTS AND BRUISES TO BOTH ARMS.

SOMETIMES WITH AN AFRICAN AMERICAN WOMAN YOU CAN'T SEE THE BRUISES AS DARKLY ESPECIALLY ON THE INSIDE.

TRIAL TRANSCRIPT    PAGE 111

FEBRUARY 20, 2002



**PUBLIC DEFENDER OF THE STATE OF DELAWARE**
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

JOHN S. EDINGER
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 577-5137

December 9, 2002

Mr. Stephen R. Winn
SBI# 00177957
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

RE: I.D.# 0103012308

Dear Mr. Winn:

In response to your November 29, 2002 letter, enclosed please find copies of the trial transcripts. There are no transcripts for case reviews or the February 15, 2002 hearing.

If you need anything further, please get in touch with me.

Sincerely,

John S. Edinger, Jr., Esquire
Assistant Public Defender

JSE:mls
Enclosure

**1**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,

v.                                ID
                          No. 0103012308
STEPHEN R. WINN,

          Defendant.

BEFORE:    HON. SUSAN C. DELPESCO

COPY

TRANSCRIPT OF MOTION TO PROCEED
PRO SE AND TO SEVER

---

**2**

1        February 15, 2002
         Courtroom No. 202
2        10:00 a.m.

3

4

5    DONALD ROBERTS, ESQUIRE
     DEPARTMENT OF JUSTICE
6        820 N. French Street
         Wilmington, Delaware  19801
7        for State of Delaware

8    JOHN EDINGER, ESQUIRE
     PUBLIC DEFENDER'S OFFICE
9        820 N. French Street
         Wilmington, Delaware  19801
10       for Defendant

11
12
13
14

---

**3**

1        THE COURT: Okay. We are here today to discuss
2    a couple of issues. This case is set for trial on
3    Tuesday. There has been correspondence regarding
4    representation. Mr. Winn?
5        THE DEFENDANT: Yes.
6        THE COURT: There are two matters. One is a
7    motion to sever one count of the indictment.
8    Mr. Edinger, you want to address that?
9        MR. EDINGER: Your Honor, there are two
10   matters. Maybe the issue as to the motion to sever the
11   count, I don't know if the prosecution has an
12   opposition. If we could note that second and then
13   address the issue of representation first. Maybe if I
14   put on the record; I initiated this hearing with Mr.
15   Roberts, and basically the reason that I initiated this
16   hearing is I had discussions that maybe Mr. Winn wants
17   to represent himself, although he never made a formal
18   request to proceed pro se. In a round about way, he has
19   indicated that while at least he has made it quite clear
20   he wants to dismiss me as counsel, that has been pretty
21   clear on the record. As informed by the Court last
22   summer that new counsel was not going to be appointed to
23   represent him; it was either myself or no one that would

---

**4**

1    be appointed to represent him.
2        However, presently, apparently he made
3    application he wanted to proceed pro se. I think the
4    Court has copied the report which he indicated he wanted
5    to proceed pro se. He has made -- I received from the
6    Office of Disciplinary Counsel a letter that was, I
7    believe, sent to him with the attachment of the letter
8    that he sent to them, asking or submitting that he was
9    receiving substandard representation.
10       Taken as a whole those indications and there
11   are occasions which I have not enumerated, taken as a
12   whole I suppose he wants an opportunity to address the
13   Court as to whether he wants to proceed pro se or not.
14   We made that determination today in the Court.
15       If Mr. Winn decides he does not want to proceed
16   pro se, I think it should be made clear to him if I am
17   the attorney of record, I will be the one that is making
18   strategic and tactical decisions as to how the case is
19   conducted; certainly the objectives of the case are
20   within his province, but which witnesses and what
21   evidence is presented is entirely within my realm.
22       And if Mr. Winn wants me to proceed as his
23   attorney, those would be the rules of the road, so to

5

1  speak. I don't know if Mr. Winn wants to address the
2  Court.
3         THE COURT: Mr. Winn, please rise. Here is the
4  way things stand; you have corresponded on a number of
5  times, number of occasions with the Court. There are
6  letters where you express concern about representation
7  and ask that someone else be appointed. I read your
8  letter not saying I want to represent myself, saying I
9  want a different attorney appointed to represent me. We
10 don't do that. That has been reviewed with you, I
11 believe, before. That is not going to change.
12        The rules of the Court are that if the Court.
13 Public Defender's Office appoints someone to represent
14 you, that is the individual appointed to represent you.
15 You do not get different counsel simply because you want
16 different counsel.
17        And so the alternatives are that you accept
18 Mr. Edinger and work with him as your counsel, or you
19 represent yourself. Now, the decision to represent
20 yourself, especially given the number and nature of
21 charges against you is a pretty serious decision. You
22 are at risk if you were to be convicted of these
23 charges, you are at risk for a long, long time in

7

1  incarcerated the only thing I have been fronted with is
2  pictures. And I am saying I got the doctor report. The
3  doctor explained it. I agreed with him. He is telling
4  me to take a plea to a charge that I know that did not
5  happen. It was -- this is a vicious thing to do to me,
6  just to keep me behind bars because I made a statement.
7  I am explaining it to him. I want to proceed by myself.
8  I have an 11th grade education. I have all these people
9  helping me, but I don't see the help from him.
10        He is discussing my case for 15 minutes. 23
11 minutes, shut up or represent yourself. Those are his
12 choices, not mine. Your Honor, I have been working with
13 him. I asked him to do this, at least check it out.
14 No. I am not going to do it. I got a first degree
15 kidnapping this woman, using her credit card on the day
16 after we had a fight. I am asking them to get this.
17 No. I have been in jail; me and this woman talk before
18 we give these charges. I asked him to get the phone
19 records. No. He interview any witnesses? He went out
20 there and asked the witness about the incident. Your
21 Honor? I have a business. These people were around me
22 all this time.
23        She never came out to introduce herself to -- I

6

1  custody. This is a serious matter.
2         That is the choice. How do you want to
3  proceed?
4         THE DEFENDANT: I would like to explain the
5  situation. I requested for a hearing to be held by
6  itself concerning Mr. Edinger. This hearing was held
7  during a bail reduction. So my motion was never heard.
8  The prosecution intervened and denied it without
9  discussing it with me. The reason why I wanted another
10 attorney, money that I do have and all that I used it
11 for a paralegal to look at my case and everything. So
12 when he went to address my concerns to Mr. Edinger, what
13 he was doing to me was showing me a picture of an eye
14 and telling me to take this plea. If I don't, then I
15 would be put away for the rest of my life.
16        So I am telling him, this is a vicious attack
17 because I opened my mouth in another courtroom. So the
18 charges was upgraded. I am trying to explain that to
19 him. He is going with the indictment itself, but not
20 the evidence that he is giving me. I am trying to
21 review the evidence that he gave me with him, which I
22 never had the opportunity to do that.
23        All I -- since this whole year I have been

8

1  worked right there. Those people can say I was working.
2  I even told a couple people about our fight. I don't
3  know why they did not come forward because with the
4  investigator went to them and said. I got one letter I
5  can show you where this man made a statement that he was
6  on my property. I was working for him. He figured out
7  that I had her tied up in the house. What day was he
8  there? If he was there on a Wednesday, Mrs. Cleckley
9  telling people I only had her for 15 to 20 minutes. I
10 have three or four days it was out of the house. I am
11 asking them to subpoena these people. He come to me, I
12 am going to take the witness stand now. I ain't got no
13 witness. I have none, ain't sent me nothing saying he
14 subpoenaed anybody.
15        THE COURT: Any response?
16        MR. EDINGER: As to this witness, I sent
17 numerous memos to Mr. Winn on numerous occasions about
18 his witnesses. I won't reveal what these memos said.
19 Mr. Winn knows, but in anticipation of the possibility
20 that he may want to proceed pro se, I have subpoenaed
21 those witnesses that he has requested. Because if Court
22 did decide he can proceed pro se, he would have those
23 witnesses available.

**9**

1  THE DEFENDANT: Pro se came in due to the fact
2  Mr. Edinger excused the witness --
3       THE COURT: Witnesses you have identified have
4  been subpoenaed.
5       THE DEFENDANT: I have no record.
6       THE COURT: He just said it right now out loud.
7  You have a record of it. The point is that he is a
8  trained attorney and he will speak to these individuals
9  and he will make a determination after he has heard the
10 State's case as to whether or not there is anything that
11 they can say that is going to be helpful to you. All
12 right.
13      He is going to make that determination. They
14 have been subpoenaed. Now, if he believes that it is
15 not helpful to you, or might even be prejudicial to you,
16 then he is not going to call them because there wouldn't
17 be any sense in it. The point is that this case is
18 scheduled for trial on Tuesday. Do you want to
19 represent yourself, or do you want Mr. Edinger to
20 represent you?
21      THE DEFENDANT: Your Honor, I cannot represent
22 myself.
23      THE COURT: Then he is going to represent you.

**11**

1       THE COURT: There are, this is the opportunity.
2  Don't waste your time being rejecting his available
3  services.
4       THE DEFENDANT: Your Honor, on some of the
5  witnesses he told me that they would hurt my case. What
6  about if I want them there, because the truth got to
7  come out.
8       THE COURT: He will explain to you why he is
9  not going to call them. He is the decision maker. If
10 you think he is inadequately representing you, that will
11 be an issue for another day. At this point we have to
12 get through the trial, and we have to find out where we
13 are, and you need to work with him so that he can do the
14 best possible job for you. All right?
15      THE DEFENDANT: I agree with you.
16      THE COURT: You may be seated. Let's hear the
17 motion to sever, please.
18      MR. ROBERTS: The State has no opposition to
19 the untimeliness. The State's position. I assume the
20 Court has had an opportunity to read Mr. Edinger's
21 motion, is that charge that Mr. Edinger wishes to have
22 severed out is the possession of a deadly weapon by a
23 person prohibited. In this instance, the deadly weapon

**10**

1  You have to give him -- continue to work with him, talk
2  with him, provide him with information. One of the
3  things that happens during a trial is that the
4  prosecutor is going to present a case. The prosecutor
5  is going to bring witnesses in. You and he are going to
6  have to work together. You are going to have to give
7  him information. You have to communicate.
8       THE DEFENDANT: Your Honor, I asked him for the
9  expert witnesses which I got through the Court docket
10 which it was two people on there that the names that I
11 never catch was in my trial, was supposed to be an
12 isolated incident. Mr. Edinger haven't sent me that
13 stuff. I mean, I have paralegals helping me with my
14 case that I am paying and I am walking into a courtroom
15 blind.
16      THE COURT: The answer to the question seems to
17 be that you want -- you cannot represent yourself.
18      THE DEFENDANT: I can't. All I know --
19      THE COURT: Sir, please. He is here. You are
20 here. This is an opportunity for the two of you to talk
21 now. Trial is in four days. He had subpoenaed people
22 that you have identified, if I understand what he said.
23      MR. EDINGER: Correct.

**12**

1  is the baseball bat that was used to beat the victim
2  Donna Cleckley. So if the jury finds that he possessed
3  the weapon, the only issue left is whether or not he is
4  a person prohibited.
5       The State would propose that we somewhat
6  sanitize it either by having the defendant stipulate to
7  the fact that he is a convicted felon, and/or the State
8  simply present evidence that the defendant is a
9  convicted felon, period. The jury need not be told what
10 the underlying offence is. The defendant in the motion
11 relied upon Loper, and Loper was an interesting case.
12 That was a drug murder. And the charge which the
13 defendant was a convicted felon on possessed a weapon
14 was a drug offence. This is a different type of
15 situation then here, although I guess the argument could
16 be assault, an assault.
17      But clearly there are a lot more folks
18 convicted of assault than there are of drug convictions.
19 That would make them persons prohibited. That would be
20 my proposal in the event that it is either not agreeable
21 with the defense, or the Court does not agree with that
22 position. I would argue further, but I will let it go
23 at that for now.

13

1    THE COURT: The proposal is that either there
2    be a stipulation he is a convicted felon, or the
3    defendant accept that, stipulate that the State need
4    only prove that he is a convicted felon without having
5    to prove his specifics of the prior conviction. What is
6    the defendant's --
7    MR. EDINGER: Your Honor, we will stand by our
8    motion.
9    THE COURT: Okay. This is fair enough. The
10   request to sever the charge is denied because it is
11   intrinsically related to all the other counts in the
12   indictment. It rises on the same date and arises out of
13   the same sequence of events. It would simply make sense
14   to sever entire charge. So in terms of the severance
15   application, it is denied. I do think there may be a
16   sensible alternative that would minimize the prejudice
17   to your client.
18   MR. EDINGER: Well, in light of the Court's
19   ruling, we will support the alternative which is
20   offered, which is to present to the jury that the
21   indictment is not recent about the assault, previous
22   felony being assault.
23   THE COURT: The defendant will stipulate that

14

1    the State need only prove he has a prior felony
2    conviction without proving the specifics of the prior
3    conviction?
4    MR. EDINGER: Correct.
5    MR. ROBERTS: I will pose a stipulation where
6    we can cut out one witness.
7    THE COURT: You want to stipulate he previously
8    has been convicted of a felony?
9    MR. ROBERTS: What you are suggesting is kind
10   of my last bottom alternative which would require me to
11   bring in someone to testify from a certified copy he is
12   a convicted felon rather than totally sanitize it to
13   give your client the most benefit agreeing yes, I am a
14   convicted felon. It is one less witness and we will
15   redact from the indictment that part that says prior
16   felony of assault, just simply say felony.
17   MR. EDINGER: In the spirit of your new found
18   cooperation with Mr. Winn and I think I will confer with
19   Mr. Winn.
20   THE COURT: Yes.
21   (Discussion held off the record.)
22   MR. EDINGER: Stipulate to Mr. Robert's
23   proposal.

15

1    THE COURT: So there is a stipulation that in
2    order to eliminate the need to bring in the details of
3    the prior conviction that the defendant has been
4    previously convicted of a felony. That is a good
5    resolution because obviously -- strike that. I am
6    thinking of the case I am about to select.
7    MR. ROBERTS: I will prepare a written
8    stipulation we can all execute on the date of trial.
9    THE COURT: Okay. Anything else we need to
10   address?
11   MR. ROBERTS: No.
12   THE COURT: Stand in recess.
13   (Whereupon the proceedings were concluded.)
14
15
16
17
18
19
20
21
22
23

16

**CERTIFICATE OF COURT STENOGRAPHER**

I, John P. Donnelly, RPR, Official Court
Stenographer of the Superior Court, State of Delaware,
do hereby certify that the foregoing is an accurate
transcript of the proceedings had, as reported by me, in
the Superior Court of the State of Delaware, in and for
New Castle County, in the case herein stated, as the
same remains of record in the Office of the Prothonotary
at Wilmington, Delaware.

WITNESS my hand this ^ day day of ^ Month,
2003.

Cert. # 161-PS

John P. Donnelly, RPR
Official Court Reporter

*Ex*

# Office of Disciplinary Counsel

SUPREME COURT OF THE STATE OF DELAWARE

200 West Ninth Street
Suite 300-A
Wilmington, Delaware 19801
(302) 577-7042
(302) 577-7048 (FAX)

**MARY M. JOHNSTON**
Chief Counsel

ANDREA L. ROCANELLI
MICHAEL S. McGINNISS
MARY SUSAN MUCH
Disciplinary Counsel

January 29, 2002

CONFIDENTIAL

Mr. Stephen Winn (#177957)
M.P.C.J.F.
P.O. Box 9561
Wilmington, DE 19809

> Re:   ODC File No. C02-1-13
> (John S. Edinger, Jr.. Esquire)

Dear Mr. Winn:

The Office of Disciplinary Counsel has received your complaint about John S. Edinger, Jr., Esquire, who represents you in your criminal matter.

This Office cannot intervene in a criminal proceeding for any reason. Furthermore, for your general information, this Office has no authority to vacate a plea or a conviction, reduce a sentence, appoint counsel to represent a defendant or grant any other type of substantive relief. This Office cannot act on your behalf to obtain copies of documents such as plea agreements, police reports, docket sheets and Rule 16 discovery motions. More importantly, this Office does not adjudicate claims of ineffective assistance of counsel.

Your claim is that your attorney is failing to effectively represent you in that he has failed to adequately communicate with you regarding your case, has failed to subpoena certain witnesses on your behalf, has failed to obtain certain documents requested by you, and believes you to be guilty. Where a complaint filed with this Office relates to alleged ineffective assistance of counsel, as your complaint does, this Office sends the complaint to the criminal defense attorney for appropriate action. This Office does not conduct a disciplinary evaluation or investigation for complaints such as yours because this Office has no jurisdiction to affect your criminal matter. You have postconviction remedies available to you for that purpose.

Mr. Stephen Winn
January 29, 2002
Page Two

**CONFIDENTIAL**

Therefore, by copy of this letter with your complaint to Mr. Edinger, as well as to his supervisor, Angelo Falasca, Esquire, I am asking that they promptly evaluate your complaint and take any action they deem appropriate, including providing you any documents to which you are entitled. However, I am not requesting a written response.) Pursuant to the authority of this Office under Rule 9(a) of the Delaware Lawyers' Rules of Disciplinary Procedure, this matter is now closed.

Very truly yours,

Mary Susan Much

MUCH:mrm

cc:    John S. Edinger, Jr., Esquire (w/enc.)
       Angelo Falasca, Esquire (w/enc.)

October 10, 2001

Mr. Angelo Falasca
Chief Deputy
Office of the Public Defender
820 N. French Street
Wilmington, DE 19801

State v. Stephen Winn
ID No: 0103012308

Dear Mr. Falasca:

I am scheduled for trial in the above-referenced case in January of the coming year. I am writing with respect to my representation by Mr. Edinger. I have tried to arrange for representation by another attorney but, regrettably the Superior Court denied my motion because it was submitted directly by me. Mr. Edinger seems intent on getting me to take a plea to crimes that I did not commit. Consequently, he seems disinterested and unwilling to diligently prepare for my defense. This is evidenced by his lack of contacting and/or interviewing witnesses and to gather telephone records. Further, in spite of several attempts to contact Mr. Edinger, I have not heard from him since July 30. So if you could please ask Mr. Eddinger to contact me so we can resolve some issues or, alternatively, to submit a motion to withdraw as counsel so that I may have the benefit of court-appointed counsel.

Sincerely,

Stephen R. Winn

Stephen Winn #177957
P.O. Box 9561
Wilmington, DE 19809

Cc:    Mr. John Eddinger

MR, ANGELO FALASCA
CHIEF DEPUTY
PUBLIC DEFENDER OFFICE                    JUNE 11, 2001
820 N. FRENCH STREET
WILMINGTON, DE 19801


MR, FALASCA

     I AM WRITING TO YOU TO SEE IF YOU CAN HELP
ME. ON JUNE 10, 2001 I FILE A MOTION TO DISMISS
COUNSEL. ON JUNE 11, 2001 I WAS AT THE COURT HOUSE
TALKING WITH MR, JOHN EDINGER, JR.
MR, EDINGER HAVE A SERIOUS PROBLEM WITH ME. HE IS
NOT HELPING ME WHATSOEVER. I AM AFFRAID THAT MY
EVIDENCE HAS FALLEN THROUGH THE CRACKS. MY CHARGES
ARE SERIOUS. SO PLEASE SEND A INVESTIGTOR. I NEED
YOUR HELP CONCERNING MR, JOHN S. EDINGER, JR


                              SINCERELY,
CC.                           STEPHEN WINN
                              M. P.C. J.F
                              P.O. BOX 9561
                              WILMINGTON, DE 19809

MR, ANGELO FALASCA

CHIEF DEPUTY                          MAY 7, 2001

PUBLIC DEFENDER OFFICE

820 N. FRENCH STREET

WILM, DE 19801

I.D #0103012308

MR, FALASCA

I HAVE SPOKEN WITH MR, JOHN S. EDINGER JR ON MAY 2, 2001 ON A T.V-PHONE INTERVIEW. I WAS ONLY ALLOWED THE TIME OF 15 MINUTES TO DISUSSE MATTER CONCERNING MY CASE. ON MARCH 28, 2001 I HAD A T.V-PHONE INTERVIEW WITH A PUBLIC DEFENDER INVESTIGTOR. I WAS ONLY ALLOW THE TIME OF 30 MINUTES TO DISUSS MATTER CONCERNING MY CASE. ON APRIL 18, 2001 MY INTERVIEW WAS RESCHEDULED. DO TO A LACK OF TIME. ON APRIL 25, 2001, I DID NOT TAIK WITH MR EDINGER MY INTERVIEW WAS RESCHEDULED TO MAY 2, 2001. I WAS ONLY ALLOWED THE TIME OF 15 MINUTES TO DISUSSE MATTER CONCERNING MY CASE. WHICH DID NOT MERIT ME THE OPPORTUNITY TO DISCUSS ALL MATTERS OF THE EVIDENCE I HAVE CONCERNING MY CASE. I AM WRITING TO YOU TO SEE IF YOU CAN HEIP ME. THERE IS SOME INFORMATION THAT HE NEEDS TO GATHER TO HEIP SUPPORT MY DEFENSE. SOME OF THIS INFORMATION MAY BE TIME SENSITIVE, AND

FURTHER DELAY MAY PREJUDICE MY ABILITY TO DEVELOP A VIABLE DEFENSE. I WOULD LIKE FOR MR, EDINGER TO COME AND VISIT ME AT THIS EARLIEST CONVENIENCE .

SINCERELY
STEPHEN WINN 177957

CC. LAWRENCE M. SULLIVAN
CC. MR, ANGELO FALASCA
CC MR, JOHN S. EDINGER, JR

I.D.#/03012308

# 33

TO: JUDGE JOSEPH R. SLIGHTS III

FR: STEPHEN R. WINN

   I.D.# 0103012308

RE: INEFFCTIVE ASSISTANCE OF COUNSEL

NOV 6, 2001

DEAR JUDGE SLIGHTS

   THIS WRITTER HAVEN HAD NO FORMAL TRAINING ON
PROCEEDVEL PREPARATION OF MOTIONS SUBMITS THIS
REQUEST IN EFFORT TO RECEIVE A COURT APPOINTED
NEW COUNSEL TO PEPRESENT ME IN THE MATTER OF STATE
VS. STEPHEN R. WINN. CURRENT APPOINTED COUNSEL
<u>TOTALLY LACK CONCERN</u>, I AM SCHEDULED FOR TRIAL
IN THE ABOVE-REFERENCED CASE IN JANUARY OF THE
COMING YEAR. I AM WRITING WITH RESPECT TO MY
REPRESENTATION BY ANOTHER ATTORNEY BUT, REGRETTABLY
THE SUPERIOR COURT DENIED MY MOTION BECAUSE IT
WAS SUBMITTED DIRECTLY BY ME. CONSEQUENCED, <u>HE
SEEMS DISINTERESTED AND UNWILLING TO DILIGENTLY
PREPARE FOR MY DEFENSE.</u>
<u>THIS IS EVIDENCED BY HIS LACK OF CONTACTING AND/OR
INTERVIEWING WITNESSES AND TO GATHER TELEPHONCE RECORD</u>
FURTHER, IN SPITE OF SEVERAL ATTEMPTS TO CONTACT
MR, EDINGER, I HAVE NOT TALKED TO HIM SINCE JULY 30
SO IF YOU COULD PLEASE ASK MR, EDINGER TO CONTACT
ME SO WE CAN RESOLVE SOME ISSUES OR,

I.D. 0103012308                              Nov 6, 2001

ALTERNATIVELY, TO SUBMIT A MOTION TO WITHDRAW AS
COUNSEL SO THAT I MAY HAVE THE BENEFIT OF COURT
APPOINTED COUNSEL.


                              SINCERELY,


                              STEPHEN R. WINN 177957
                              M. P. C. J. F
CC. PROTHONOTARY              1301 E 12th STREET
                              WILMINGTON, DE 19809


C-41

TO: JUDGE JOSEPH R. SLIGHTS III

FR: STEPHEN WINN, DEFENDANT                DEC 2, 2002

I.O  O103012308

RE: INEFFECTIVE ASSISTANCE OF COUNSEL

2002 JAN -8  AM 9:          FILED PROTHONOTARY

ON 1-2-02 I HAD OCCASSION TO MEET WITH MY ATTORNEY
MR, JOHN S, EDINGER, AT WHICH TIME MR, EDINGER
ADVISED ME THAT THERE WOULD BE NO NEED TO SUBPOENA
A LIST OF WITNESSES FOR DEFENSE; SINCE THE WITNESSES
WOULD NOT CORROBORATE THE VICTIMS ALLEGATIONS. FIRST
AND FARMOST, THIS SHOULD BE THE STATES DESIRE, NOT THE
DEFENSE. THE DEFENSE SHOULD SEEK WITNESSES TO SUPPORT
DEFENSE. I ADVISED THAT THE LIST OF WITNESSES I
PROVIDED ARE EXPECTED TO CORROBORATE ALIBI FOR
DEFENSE. COUNSEL AND I DISAGGREED ON THIS STRATEGY.
THIS HAD BEEN THE TREND (DISAGGREEMENT) FROM THE
TIME THAT MR, EDINGER HAD BEEN ASSIGNED AS COUNSEL
TO MY CASE. I AM SCHEDULED FOR TRIAL JAN 8, 2002
AND STILL MR, EDINGER AND I ARE NOT PREPARED FOR
TRIAL. I THEREFORE TURN TO HIS HONOR TO RESOLVE
THE PROBLEM OF INEFFECTIVE ASSISTANCE OF COUNSEL.
PLEASE EXCEPT THIS CORROSPONDANCE AS AN EFFORT TO
REMEDY A VACUMED POSSITION THIS DEFENDANT.

CC: PROTHONOTARY

YOUR TRULLY

STEPHEN WINN 177957

P.O BOX 9561

WILMINGTON, DE 19809

TO: JUDGE JOSEPH R. SLIGHT'S III

FR: STEPHEN WINN, DEFENDANT

JANUARAY 15, 2002

DEAR JUDGE SLIGHT'S

YOU WILL FIND ENCLOSED A COPY OF A CORRESPONDANCE FORWARDED TO MY COUNSEL ASSIGNED TO REPRESENT ME AT TRIAL SCHEDULED FOR 2-19-02. AS I HAVE PREVIOUSLY POINTED OUT THE GREAT CONFLICTS COUNSEL AND I HAVE HAD, YET I AM STILL FORCED TO GO TO TRIAL WITH COUNSEL WHO HAS REPETIVLY FALLEN SHORT OF THE PROFESSIONAL STANDARDS OF WHAT TRAINED ATTORNEYS ARE TO PRESENT TO CLIENTS IN CRIMINAL PROCEEDUAL MATTERS. THIS CLEARLY DEMANSTRATES INEFFECTIVE ASSISTANCE OF COUNSEL.

I AM REQUESTING THAT THIS CONFLICT, DOCUMENTED FACTUAL SUB STANDARD OF REPRESENTATION, BE MADE APART OF RECORD, AND REMIDIED BY POSTPONEING THE SCHEDULED TRIAL DATE IN EFFORTS TO CORRECT THE PROBLEM BY ASSIGNING NEW COUNSEL TO THE MATTER. I AM EXPOSED TO UP TO LIFE IMPRISONMENT AND SHOULD BE GIVEN AT LEAST COMPETENT COUNSEL.

PLEASE REVIEW THE ENCLOSED LETTER TO MR, EDINGER

CC: PROTHONOTARY

YOURS, TRULY,

STEPHEN WINN 177987

M.P.C.J.F

P.O. BOX 9561

WILMINGTON, DE 19809

JOHN S. EDINGER, JR
PUBLIC DEFENDER OFFICE                    JANUARY 4, 2002
820 N. FRENCH STREET
WILMINGTON, DE 19801                      I.D. #0103012308

DEAR MR, EDINGER

        I AM HOPING THAT THIS LETTER WILL SET TONE OF
A FRESH START AS I APPROACH TRIAL. FROM THE TIME
YOU WERE ASSIGNED AS COUNSEL; WE HAVE DIFFERENCE
OF OPPINION AS TO THE LEGAL STRATEGY AND APPROACH TO
MY DEFENSE. LAST YEAR I PROVIDED A LIST OF
WITNESSES FOR DEFENSE. YOU SENT YOUR INVESTIGATOR TO
INTERVIEW THESE WITNESSES WITHOUT YOU FIRST SPEAKING
WITH ME SO THAT YOU WOULD KNOW AS TO WHAT I WAS
EXPECTING THEM TO COOBERATE. AS A RESULT CERTAIN
FACT WERE NOT DRAWN FROM THE STATEMENTS OF THESE
WITNESSES. IT IS THE CREDIBILITY OF A VICTIM AS
WELL AS TESTIMONY OF MATERIAL WITNESSES THAT A JURY
MUST RELY UPON TO REACH IT'S VERDICT.
INTERVIEWING POTENTIAL WITNESSES FOR TRIAL MUST BE
CONDUCTED WITH TACT. I WOULD LIKE TO REQUEST THE
THE FOLLOWING TO REMEDY THE PROBLEM WITH THE
WITNESSES : HAVE WITNESSES INTERVIEWED AGAIN, BUT

BEFOREHAND CONTACT ME SO THAT I MIGHT SHED
LIGHT AS TO HOW THEIR TESTIMONY WILL HELP ME,
THUS PROVIDING A TACTFUL APPROACH TO THE INTERVIEW.
ONCE WITNESSES HAVE BEEN INTERVIEWED I AM REQUESTING
THAT THE SUBSTANCE OF THESE INTERVIEWS BE MADE
AVAILABLE TO ME. I WOULD RATHER ALL ENERGIES BE
MADE DIRECTED TO THE FOCUS OF THIS CASE, RATHER THAN
THE PERSONALITY CONFLICTS WE HAVE HAD. I AM AWARE
THAT ANY AND ALL LEGAL DECISSIONS ARE MADE BY ME.
I WILL ALSO LIKE TO NOTE THAT I AM OPEN FOR ANY
REASONABLE OFFER MADE BY THE PROSECUTOR

SINCERLY,
STEPHEN WINN 177957
P.O. Box 9561
WILMINGTON, DE 19809

CC: PROTHONOTARY

MR, JOHN S. EDINGER, JR
PUBLIC DEFENDER OFFICE                    JANURAY 9, 2002
820 N. FRENCH STREET
WILMINGTON, DE 19801 ·             I.D. #0103012308

## RE: RULE 16.(E) EXPERT WITNESSES

DEAR MR, EDINGER

        PLEASE BE ADVISED THAT I'm IN RECEIPT OF
my SUPERIOR COURT CRIMINAL DOCKET, I HAVE AN ENTRY
ON THE DOCKET THAT REQUIRES A PREPERATORY REPONSE
FOR TRIAL PURPOSES. WITNESS SUBPOENA'S WERE ISSUED AS
OF 12-28-01, FOR WITNESS EXPECTED TO TESTIFY ON BEHALF
OF THE STATE. I AM THEREFORE REQUESTING THAT DEFENSE
FILE AN APPROPRIATE RESPORNSE WITH THE STATE UNDER
THE "CONTINUING DISCOVERY DUTIES", SKINNER V. STATE DEL,
SUPR. 575 A2D 1108 .

RULE 16. (E)

EXPERT WITNESSES. UPON REQUEST OF A DEFENDANT, THE STATE
SHALL DISCLOSE TO THE DEFENDANT ANY EVIDENCE WHICH THE
STATE MAY PRESENT AT TRIAL UNDER RULES 702, 703 OR 705
OF THE DELAWARE RULES OF EVIDENCE. THIS DISCLOSURE
SHALL BE IN THE FORM OF WRITTEN RESPONSE THAT INCLUDES
THE IDIENTITY OF THE WITNESS AND

THE SUBSTANCE OF THE OPINION TO BE EXPRESSED.
I AM REQUESTING THAT DEFENSE EMPLOY THE ABOVE RULE
TO THE FOLLOWING WITNESSES:

1). KEITH MURPHY
2). EMILY CUNNINGHAM
3). DET. DONLON

PLEASE PROVIDE THE ABOVE DATA TO ME AS PER RULE 16.
(E), AS IT IS MADE AVAILABLE TO DEFENSE, THAT I
MIGHT INTELLIGENTLY DISCUSS THE DIRECT AND CROSS
EXAMINATIONS OF THESE WITNESSES. THIS REQUESTED
DATA MUST BE MADE AVAILABLE TO DEFENSE NO LESS
THAN 10 WORKING DAYS PRIOR TO TRIAL.
PLEASE NOTE AS A REMINDER THAT WE ARE SCHEDULED
FOR TRIAL 2-19-2002 AND THAT TIME IS OF THE ESSENCE.
THANKING YOU IN ADVANCE.

TRULY,
STEPHEN WINN
CC: PROTHONOTARY
P.O. BOX 9561
WILMINGTON, DE 19809

MR, EDINGER DIDN'T DO THIS WHATSOEVER?
Stephen Winn

A·47

MR. JOHN S. EDINGER, JR
PUBLIC DEFENDER OFFICE                         DEC 10, 2001
820 N. FRENCH STREET

WILMINGTON, DE 19801                    I.D #0103012308

DEAR MR. EDINGER

       I AM REQUESTING YOU TO SUBPOENA THE
PHONE RECORDS FROM GANDER HILL PRISON, FROM
FEBRUARY — MARCH 31, 2001. THIS WILL REFLECT
AN ONGOING COMMUNICATION WITH ME AND THE
VICTIM. THIS COMMUNICATION THE VICTIM HAS NOT
MADE KNOWN TO PROSECUTION OR INVESTIGATORS.
I AM SURE THE PROSECUTIONS POSSITION REGAURDING
THESE PHONE CALLS WILL BE; "THERE'S NO WAY OR
KNOWING WHO I WAS TALKING TO". THE FACTS ARE
NO ONE ELSE LIVE AT THAT ADDRESS BUT THE
VICTIM.
AS YOU ARE AWARE I AM SCHEDULED FOR TRIAL 1/8/200
I REMAIN

DIDN'T DO THIS                     SINCERELY,
WHATSOEVER                         STEPHEN WINN  177957
                                   M. P. C. J. F
                                   1301 E 12th STREET
                                   WILMINGTON, DE 19809

MR, JOHN S. EDINGER, JR

DEC 14, 2001

PUBLIC DEFENDER OFFICE

820 N. FRENCH STREET

I.D #0103012308

WILMINGTON, DE 19801

DEAR MR, EDINGER

I AM WRITING REGARDING TO MY PSYCHIATRIC EVALUATION
THAT YOU HAD SCHEDUL AND OTHER MATTER PERTANING
TO MY CASE TO SEE IF I WANT YOU TO DO SO IN MY
BEHALF NOR HAVE YOU RESPONDED TO MY CONCERNS
THAT I HAVE WROTE TO YOU. I HAVE NOT SEEN YOU
OR TALK WITH YOU SINCE JULY 30, 2001 NORE HAVE
YOU RESPONDED TO MY LETTERS.
IF YOU COULD PLEASE CONTACT ME SO WE CAN RESOLVE
SOME ISSUES, AS YOU ARE AWARE I AM SCHEDULED
FOR TRIAL JAN 8
THANK YOU FOR TAKING TIME OUT OF YOU BUSY SCHEDUL
TO ADDRESS MY CONCERNS.

SINCERELY,
STEPHEN WINN 177957
M. P. C. J. F
1301 E 12ᵗʰ ST
WILM, DE 19809

CC: PROTHONOTARY

JOHN S. EDINGER, JR
PUBLIC DEFENDER OFFICE                    OCT 18, 2001
820 N. FRENCH STREET
WILMINGTON, DE 19801                      I.D. #0103012308

MR, EDINGER

    ON OR ABOUT AUGUST 15, 2001 I SENT you A
LETTER CONCERNING you SEEING ME BEFORE you TALK
WITH ANY WITNESS.

I WOULD DEEPLY APPEREATE IF you WOULD SEE ME
BEFORE TALKING WITH ANY WITNESS CONCERNING THIS
CASE.

THANK you FOR your PROMPT ATTENTION CONCERNING
THIS MATTER.

                SINCERELY
                STEPHEN WINN 177957
                P.O. BOX 9561
CC                                        WILMINGTON, DE 19809

MR, JOHN S, EDINGER, JR.
PUBLIC DEFENDER OFFICE
820 N. FRENCH STREET
WILMINGTON, DE 19801

NOV 17, 2001

I.D. #0103012305

DEAR MR, EDINGER

I AM WRITING you IN REFFERANCE my PENDING
CASE WHICH IS SCHEDULED FOR TRIAL IN SIX WEEKS.
DUE TO OUR LACK OF COMMUNICATION, WE HAVE DEVELOPED
A SLIGHT MISUNDERSTANDING IN WHICH DIRRECTION THIS
CASE IS HEADING.
AS my ONLY MEDIATOR IN THE SUPERIOR COURT OF
DELAWARE. I PLACE my FAITH, AND TRUST Souly IN
YOUR HANDS. THE LAST DAY WE MADE FORMAL CONTACT
WAS July 30th 2001. AND I FEEL AS THOUGH WE NEED
ADEQUATE TIME TO DISCUSS my CASE.
I INTIRELY BELIEVE you ARE CAPABLE TO RESOLVE
THESE CHARGES PLACED ON ME, IN A TIMELY AND
SUFFICIENT MATTER AND I ADDRESS my CONCERNS TO
you ONLY BECAUSE A LAWYER AND CLIENT FOUNDATION
IS BASED OPON COMMUNICATION, AND BEING ON ONE
ACCORD. my LIFE HAS COMPLETELY BEEN ALTERED By
THESE ACCUSATIONS AND I SEARCH TO RESOLUE THIS
CASE AS FEASIBLY AS POSSIBLE.

I PRAY THAT ANY WORDS OR DISAGREEMENTS WE HAD
IN THE PAST WILL NOT BE HELD AGAINST ME, AND
TOGETHER WE MAKE POSSITIVE PROGRESS IN THIS CASE.
THANK YOU

ATTENTION:

I AM FORWARDING THREE ADDICTIONAL NAMES TO
BE ASERTED TO THE WITNESS LIST. ALSO I AM REQUESTING
TO BE SURQUESTERED ON THE BEHALF OF THE WITNESSES
BEFORE TRIAL.

PLEASE REPLY:

SINCERLY
STEPHEN WINN 177957
P.O. BOX 9561
WILMINGTON, DE 19809

DEFENDANT CLAIMS DEFENSE COUNSEL READED THE AFFIDAVIT OF PROBABLE CAUSE TO HIM, OF THE POLICE REPORT. WHEN DEFENSE COUNSEL READED THE PART THAT SAID. THE ACCUSED WOULD NOT ALLOW ALLEGE VICTIM TO LEAVE THE HOUSE FOR ANY REASON. SEE: EXHABIT B PG 6

AT THAT TIME DEFENSE COUNSEL INQUIRE AS TO HIS ACTION AND WHEREABOUTS FROM THE DATE JANUARY 15, UP UNTIL JANUARY 18, 2001.

DEFENDANT TOLD DEFENSE COUNSEL ABOUT HIS ACTION AND WHERE-ABOUTS FROM THE DATES INQUESTION.

DEFENDANT CLAIMS THAT HE GAVE HIS ATTORNEY MR. EDINGER A LIST OF WITNESSES. TRANCS-FEB 20. PG 169 (11) ELEVEN WITNESSES CONCERNING HIS ACTION AND WHEREABOUTS THAT HE WANTED TO TESTIFY IN HIS DEFENSE.

ON ONE OF THE DAYS INQUESTION THE PROSECUTION IN ITS CLOSING IN THE PRESENCE OF THE JURY THAT SOMEONE PAID DEFENDANT PAGER BILL ON JANUARY 18th 2001 SEE: TRANCS- FEB 22, PG 9

DEFENDANT CLAIMS HIM AND KEVIN WINN WERE TOGETHER DOING BUISNESS IN TOWN THAT DAY INQUESTION. SEE EXHABIT (Y) PG 14

DEFENSE COUNSEL DIDN'T CALL KEVIN WINN TO THE STAND THAT WOULL CORROBORATE THE DEFENDANT'S DEFENSE AND THAT COUNSEL NEVER SOUGHT OUT EVIDENCE OR DOCUMENTS TO SUPPORT THE DEFENDANT DEFENSE.

THIS WITNESS AS WELL BUT HIS TESTIMONY COULD HAVE CLEARED HIM AND THE JURY COULD HAVE FOUND DEFENDANT NOT GUILTY.

EX Y

EXHABIT (Y)

Marcus' cell phone # is 275-7340.

Kevin Winn

I then called Kevin Winn at 1:10 p.m. at 762-5123. He lives at 1202 Westlawn Court, Woodsedge.

Kevin said the defendant asked him for a ride to the beeper store on Market Street because his beeper was broken. At about 11:00 a.m. they went to that store. The people at the store said someone must have switched beepers because it was not the one he originally got from the store. The defendant paid his bill ($20.00-$30.00) and got another beeper.

They then went to their sister's house in Southbridge and got some money. They drank a couple beers and then went home. About an hour later the defendant came back with Donna's car. This was around 2:00 p.m.

After that day, Kevin saw the defendant off and on when the defendant was working on cars.

Kevin doesn't know exact dates but he saw Donna every day going by 122 Parma Avenue. The day she saw him she called the police. Donna met the police and the defendant was arrested. Kevin said Donna was riding around trying to give the defendant a restraining order.

Kevin saw that Donna had a black eye.

Tijuana Johnson

Johnson and Kevin Winn live together. She said she saw Donna drive by 122 Parma Avenue for 3 or 4 days. She spoke to Donna one day and Donna said she was looking for the defendant to give him a restraining order.

Calvin Winn is 11 years old. He was not home.



$EXHABIT (X)$          $EX \ X$

## PUBLIC DEFENDER OF THE STATE OF DELAWARE
### ELBERT N. CARVEL STATE OFFICE BUILDING
#### 820 NORTH FRENCH STREET, THIRD FLOOR
#### P.O. BOX 8911
#### WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

RAYMOND N. SCOTT
INVESTIGATOR
SPECIAL INVESTIGATIVE UNIT

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 577-5200

### MEMORANDUM

TO:      John Edinger

FROM:    Ray Scott
         Special Investigations Unit

DATE:    7-25-01

RE:      Stephen Winn

Marcus Johnson

On 7-25-01 at 12:55 p.m. I spoke to Marcus Johnson of 112 Parma Avenue (phone 655-2847).

Marcus did not know the dates but said Donna put the defendant out of her house and the defendant moved in with his father at 122 Parma Avenue. A number of days later, Marcus saw the defendant and the defendant told him he was going back home that day. Marcus saw Donna come and pick up the defendant. The defendant put his tools in the trunk of her car.

A number of days later Donna put him out a second time. This was a few days before his arrest. For about 3 or 4 days Donna kept coming around 122 Parma Avenue, where the defendant was staying. On the day of his arrest Donna came by with the police. The police arrested the defendant on a warrant from the Plummer Center. The defendant had been outside working on a car by his father's home-122 Parma Avenue.

Marcus tried to get bail for the defendant, but later learned of the charges brought by Donna.

Marcus never saw any injury to Donna.

Marcus said he talked to Donna by phone several times at night, but he cannot recall exact dates.



PUBLIC DEFENDER OF THE STATE OF DELAWARE
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

JOHN S. EDINGER
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 577-5137

February 12, 2004

The Honorable William C. Carpenter, Jr.
Superior Court
New Castle County Courthouse
500 King Street
Wilmington, DE    19801

> RE:    STATE OF DELAWARE v. STEPHEN R. WINN
> I.D. #0103012308

Dear Judge Carpenter:

Please accept this letter as my affidavit in response to the allegations of ineffective assistance of counsel.

Ground One: The defendant asserts that his "representation was perfunctory at best." It is impossible to calculate all the hours that the Public Defender's Office spent interviewing witnesses, gathering records, reviewing medical reports, counseling the defendant and otherwise preparing his case for trial. The number is significant, however.

The Public Defender Investigator spent many hours investigating defendant's case. After the defendant's initial interview on March 20, 2001, the Public Defender investigator, Raymond Scott, met with the defendant on two additional occasions, March 28, 2001 and May 2, 2001. Furthermore, Mr. Scott tracked down and conducted interviews of nine individuals identified by the defendant as defense witnesses. Several attempts, without success, were made to contact two others.

Additionally, he sought and obtained the victim's work records and the defendant's pager bills. Mr. Scott also attempted to

The Honorable William C. Carpenter, Jr.
February 12, 2004
Page 2

obtain cell phone records of the victim, but those records could
not be obtained.

At the defendant's request, he was polygraphed by Public
Defender Investigator William Prettyman.

During the course of his investigation, Mr. Scott prepared
twenty-four memorandum for counsel regarding his findings. These
memos were given to the defendant.

The victim's hospital records were reviewed by Assistant
Public Defender Lisa Schwind, a forensic nurse with extensive
forensic training. Ms. Schwind prepared a report for Counsel
regarding her findings after review of the records. This report
was shared with the defendant.

Counsel met with the defendant in Court, on videophone and at
Gander Hill on May 21, 2001, May 24, 2001, June 11, 2001, July 24,
2001, July 30, 2001, January 2, 2002, January 17, 2002 and February
15, 2002. In addition to the above meetings with the defendant,
Counsel sent defendant five letters advising him about his case and
attaching documents of discovery and investigative reports.

In addition to reviewing police reports, medical reports,
tapes, transcripts and investigative reports, Counsel also
interviewed four of defendant's identified witnesses and tried to
contact five others.

Ground Two:    The defendant asserts that defense counsel either
failed or refused to conduct a meaningful investigation. Defendant
provided the names of eleven witnesses he wanted interviewed.
Every witness but one (who could not be found) was contacted by Mr.
Scott or by defense Counsel. ·All requested records were obtained
or every attempt was made to obtain them.

Ground Three:  Defendant asserts that Counsel failed to obtain and
share discovery with defendant. He further asserts Counsel did not
discuss the case aside from pressuring him to plead guilty.

Counsel is unaware of any discovery violations.   Counsel
provided defendant with discovery on May 10, 2001, May 21, 2001 and
February 15, 2002. Counsel did discuss with defendant the subject
of pleading guilty on numerous occasions. Those discussions were

$\varepsilon \chi$

The Honorable William C. Carpenter, Jr.
February 12, 2004
Page 3

in the context of the weight of the State's evidence and the merits
of defendant's defense. On January 2, 2002, defendant walked out
of his interview with Counsel while Counsel was discussing the
case.

   In addition to meeting with defendant, Counsel sent letters to
defendant discussing the merits of defendant's case and the wisdom
of accepting the plea.

Ground Four:   Defendant asserts that he did not review an audio
tape of the telephone conversation between the defendant and victim
before trial.   Counsel prepared notes of the tape and shared it
with defendant on February 15, 2002.

Ground Five:   Defendant asserts that his witnesses were not
subpoenaed. All defendant's witnesses were subpoenaed. Those that
appeared were called except those, who in Counsel's opinion, had
nothing of substance to add to defendant's defense.

   Kevin Winn was subpoenaed and did appear. He was not called
as a witness because it was decided jointly by Counsel and
defendant that his testimony would be of little value and actually
may harm defendant's case.

Ground Six:   Defendant asserts he was not allowed to pick or
determine what jury members served on his panel. As a matter of
practice, Counsel always makes the decision regarding jury
selection, but also considers the view of the client.   In this
case, defendant showed no interest in jury selection until after
the first two or three challenges had been exercised.  When he did
offer his view or opinion, it was considered by Counsel.

                          Respectfully, submitted,

                          John S. Edinger
                          Assistant Public Defender

JSE/ks

cc:  Donald R. Roberts, Esquire
     Mr. Stephen R. Winn