UNITED STATES DISTRICT COURT OF DELAWARE

STEPHEN R. WINN

      APPELLANT,

    V.

THOMAS L. CARROLL, WARDEN

  AND CARL C. DANBERG

ATTORNEY GENERAL OF THE OF DELAWARE

      RESPONDENTS,

CIV. ACT. NO. 06-038 ntl



FILED

JAN 2 3 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD scanned

MOTION TO AMEND

MATERIAL FACT OF STATEMENT

PETITION UNDER 28 U.S.C § 2254 FOR A WRIT OF HABEAS CORPUS

DATED: 1/19/07

DEFENDANT DIDN'T HAVE OPPORTUNITY TO HAVE COUNSEL PREPARE AN INITIAL BRIEF IN THE COURT OF APPEALS AND THE NATURE OF THE SUPREME COURTS DISCRETINARY REVIEW AT EVERY STAGE OF THE PROCEEDING.

" DENIED DEFENDANT ON HIS INITIAL APPEAL, OF RIGHT". THEIR WAS ARGUABLE BASES FOR DIRECT APPEAL, SINCE NO TRANSCRIPT OR ITS EQIVALENT WAS MAKE AVAILABLE TO HIM IN SMITH V. BENNETT, 365 U.S 708, 81. S. Ct 895.6. L.E.d 2d (1961).

" FULL EXAMINATION OF ALL THE PROCEEDING".

UNCONSTITUTIONAL LINE HAS BEEN DRAWN BETWEEN RICH AND POOR

372, U.S AT 357, 83. S. Ct AT 816 (EMPHASIS IN ORIGINA).

COUNSEL FAIL ASSISTING HIM IN EVERY CONCEIVABLE MANNER AT EVERY STAGE IN THE PROCEEDING.

DEFENDANT AN ADEQUATE OPPORTUNITY TO PRESENT HIS CLAIMS, FAIRLY IN THE CONTEXT OF THE SUPREME COURT PROCESS. RESPONDENT WAS NOT GIVEN THAT OPPORTUNITY UNDER THE EXISTING SUPREME COURT SYSTEM. BRIEF PREPARED BY THAT COUNSEL. WHEN HE IS FORCED TO FEND FOR HIMSELF IN SEEKING DISCRETANCE REVIEW. "BEST INTEREST," DEFENDANT IS A MUCH IN NEED OF THE ASSISTANCE OF A LAWYER WHO HANDLED THE FIRST APPEAL IN A CASE WOULD BE FAMILIAR WITH THE FACT AND LEGAL ISSUES INVOLVED IN THE CASE TO ADVISE HIS CLIENT THAT SUCH A PETITION WOULD HAVE NO CHANCE OF SUCCEEDING.

COUNSEL'S DIDN'T REVIEWED THE TRIAL RECORD, WITH RESPONDENT. COUNSEL'S DIDN'T CONDUCT IN THE TRIAL COURT VIOLATED RULE 8,

" CONSTITUTIONAL RIGHT."

THE SUPERIOR COURT RELIED. ANDERS V. CALIFORNIA, 386 U.S 738, 87, S. Ct 1396, 18 L.E.d 2d 493

1

APPEAL ON DIRECT REVIEW OF THIS CONVICTION. ROSS V. MOFFITT, 417 U.S. 600, 94 S.Ct 2437, 41 L.E.d 2d 341. "A COPY OF THE BRIEF MUST BE FURNISHED THE INDIGENT AND TIME MUST BE ALLOWED FOR DEFENDANT TO RAISE ANY POINTS THAT HE CHOOSES. THE RECORD SHOWS THEIR WERE OTHER ISSUES TO BE CONSIDER BY THE HIGH COURT BASED ON VIOLATIONS OF STATE AND FEDERAL LAW AS WELL AS CONSTITUTIONAL ERRORS.

THE DUE PROCESS CLAUSE OF THE FOURTEETH AMENDMENT REQUIRES THAT COUNSEL'S ACTIONS COMPORT WITH THE ANDERS PROCEDURES. SEE: EVITTS V. LUCEY 469 U.S 387, 105 S.Ct 830, 83 L.E.d 821,

DEFENDANT DIDN'T HAVE AN ADEQUATE OPPORTUNITY TO PRESENT HIS CLAIMS FAIRLY IN THE CONTEXT OF THE STATE APPELLATE PROCESS.

THE COURT HELD THAT A STATE CANNOT PENALIZE A CRIMINAL DEFENDANT BY DISMISSING HIS FIRST APPEAL AS OF RIGHT, WHEN HIS APPOINTED COUNSEL HAS FAILED TO FOLLOW MANDATORY APPELLATE RULES. THE STATE MAY NOT CUT OFF A RIGHT TO APPEAL BECAUSE OF A LAWYER'S INEFFECTIVENESS - DEPENDS ON A CONSTITUTIONAL RIGHT. WHO WAS ACTUALLY DEPRIVED OF A STATE - CREATED RIGHT TO APPEAL. RESPONDENT HERE HAS SUFFERED DEPRIVATION ASSUMING FOR THE MOMENT THAT THE DUE PROCESS CLAUSE IS RELEVANT.

COUNSEL'S DIDN'T REVIEW THE RECORD CAREFULLY, TO AMEND HIS PETITION FOR RELIEF AND TO FILE A BRIEF ON HIS BEHALF. FAILURE TO COMPLY WITH REQUIREMENTS, TO GIVE NOTICE TO THE CLIENT.

COUNSEL'S DEFICIENT PERFORMANCE VIOLATED WINN'S FEDERAL RIGHT TO DUE PROCESS AND EQUAL PROTECTION.

APPEAL ON DIRECT REVIEW OF THIS CONVICTION, ROSS V. MOFFITT, 417 U.S. 600, 94 S.Ct 2437, 41 L.E.d 341

2.

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,                    )
                                      )
V.                                    )    DEF. I.D.: 0103012308
                                      )
STEPHEN WINN,                         )
                                      )
                  Defendant.          )

## ORDER

This 19th day of September, 2001, defendant having filed a *pro se* "Motion for Appointment of Counsel", IT IS HEREBY ORDERED that said Motion is DENIED.

Defendant is represented by counsel and must, absent extraordinary circumstances, address the Court through counsel. Such circumstances do not exist here. Accordingly, defense counsel must initiate any motion that will change the status of representation. The Court has forwarded the *pro se* motion to defense counsel so that he may address defendant's concerns and make any application to the Court he deems appropriate.

Judge Joseph R. Slights, III

Original to Prothonotary

cc:    Mr. Stephen Winn
       John S. Edinger, Jr., Assistant Public Defender
       Donald Roberts, Deputy Attorney General

3

August 21, 2003

Honorable William C. Carpenter, Jr.
Superior Court of the State of Delaware
500 North King Street
Wilmington, DE 19801-3725

Re: State of Delaware v. Stephen Winn, 01030112308
    Case Review – July 30, 2001

Dear Judge Carpenter:

Pursuant to your request on April 10, 2003 to prepare a transcript in the above-captioned matter, I contacted JIC to request that a CD be produced of the audio of the case review proceedings held in the above matter on July 30, 2001.

Larry McElroy of JIC initially informed me that he was having problems getting audio off the Courtsmart server. On May 22, 2003, when I requested a status of the situation, Larry informed me at that time that the audio in question for July 30, 2001 was garbled and he was unsuccessful in obtaining any usable audio for that particular date. Immediately, I notified your secretary of that situation since a transcript could not be prepared.

If you have any further questions regarding this matter, please contact me at any time.

Very truly yours,

Kathleen Feldman
Chief Court Reporter

4

"A COPY OF THE BRIEF MUST BE FURNISHED THE INDIGENT AND TIME MUST BE ALLOWED FOR DEFENDANT TO RAISE ANY POINTS THAT HE CHOOSES. THE RECORD SHOWS THEIR WERE OTHER ISSUES TO BE CONSIDER BY THE HIGH COURT BASED ON VIOLATIONS OF STATE AND FEDERAL LAW AS WELL AS CONSTITUTIONAL ERRORS.

## STATEMENT OF FACTS

ACCORDING TO THE RECORD DEVELOPED AT TRIAL. THIS CASE FROM AN INCIDENT THAT PURPORTEDLY OCCURRED WAS NOT ESTABLISHED BY THE TRIAL RECORD, ALL OF THESE EVENTS. THE WITNESSES BIASES, PREJUDICES OR INTERESTS. THE WITNESSES MANNER OR DEMEANOR ON THE WITNESS STAND AND ALL CIRCUMSTANCES THAT ACCORDING TO THE EVIDENCE, TO WARRANT A CONVICTION BASED. IN PART ON CIRCUMSTANTIAL EVIDENCE, ALL OF THE EVIDENCE. BOTH DIRECT AND CIRCUMSTANTIAL, MUST LEAD TO CONCLUDE BEYOUD A REASONABLE DOUBT THAT THE ACCUSED COMMITTED THE OFFENSE CHARGED.

"CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY" ALL OTHER FACTS AND CIRCUMSTANCE DOES NOT SHOWN BY THE EVIDENCE, WHICH AFFECTS CREDIBILITY OF THESE TESTIMONY, IN THIS CASE, INCLUDING A WITNESS WHO LIED, EVIDENCE THAT WAS NOT TURNED OVER TO THE DEFENDANT AND MISTAKES BY INVESTIGATOR, THE PROSECUTION, DETECTIVE DONLON, TRIAL COUNSEL RELY AT THIS POINT ON ALL THE EVIDENCE DEVELOPED AT TRIAL, WITHOUT OBJECTION. THE STATE HAD FAILED TO INTRODUCE ANY EVIDENCE TO SHOW EXTISTENCE BEYOUND A REASONABLE DOUBT OF THE AGGRAVATING CIRCUMSTANCES TO WEIGH ALL FACTORS.

DETECTIVE DONLON, HAVING BEEN SWORN UNDER OATH AS A WITNESS FOR THE STATE, WAS CALLED TO THE STAND AND TESTIFIED AS FOLLOWS: DIRECT EXAMINATION, <u>SEE</u>: TRANSC- FEB 20, PG 133,

Q. WHERE DO YOU WORK AND WHAT DO YOU DO HERE ?

A. I WORK FOR THE NEW CASTLE CITY POLICE DEPARTMENT, AND I'M CURRENTLY ASSIGNED TO THE DETECTIVE DIVISION.

Q. HOW LONG HAVE YOU BEEN A POLICE OFFICER IN TOTAL ?

A. APPROXIMATELY 11 YEARS.

WE KNOW THAT DETECTIVE DONLON RECEIVED SPECIALIZED TRAINING IN <u>CRIMINAL INVESTIGATIONS, INTERVIEW</u>, THINGS ALONG THOSE LINES.

Q. ARE YOU FAMILIAR WITH THE SANE PROGRAM ?

A. YES, I AM.

Q. AND HOW IS IT YOU'RE FAMILIAR WITH IT ?

A. DURING THE CASE THAT I INVESTIGATE, SEVERAL OF THEM -- MANY OF THEM HAVE BEEN COMPOSED OF A SEXUAL NATURE, AND I VERY FREQUENTLY HAVE TO TAKE A VICTIM OR HAVE AN OFFICER TAKE A VICTIM OF A SEXUAL ABUSE TO A HOSPITAL FOR AN EXAM.

THIS NEVER HAPPEN BECAUSE DETECTIVE DONLON WAS NOT THE FIRST OFFICER TO BECOME INVOLVED WITH THIS CASE. IT WAS DETECTIVE WALKER WHO WAS WORKING WITH, AND LIEUTENANT CANNON. WHO WAS FIRST TO RESPONDED TO HER COMPLAINT FROM THE NEW CASTLE CITY POLICE DEPARTMENT SEE: TRANSC-FEB 20, PG 137,

MS. CLECKLEY FIRST REPORTED THIS INCIDENT ON MARCH 12 th THAT WHEN DETECTIVE DONLON CONTACTED MS. CLECKLEY AT HER RESIDENCE AND ANOTHER INTERVIEW WAS CONDUCTED ASIDE FROM THE GENERAL STATEMENT THAT SHE∧ GAVE TO DETECTIVE CORPORAL WALKER. THERE WERE NO FILED IN THIS CASE REGARDS MS. CLECKLEY BEEN INTERVIEW BY DETECTIVE WALKER OR LIEUTENANT CANNON, DID NOT PROVIDED ANY INFORMATION TO THE INESTIGATION.

6

THE POLICE COULD NOT TAKE MS. CLECKLEY TO THE HOSPITAL BECAUSE TWO MONTHS HAD PASSED, THE INCIDENT WAS NOT IMMEDIATELY REPORTED BUT THE FACTS ARE WHAT THE FACTS ARE AND WE CAN'T CHANGE THAT BECAUSE MS. CLECKLEY JUST DIDN'T REPORT THE SEXUALLY ASSAULT WITHIN THE FIRST 72 HOURS, WHEN EVIDENCE COLLECTION IS CRITICAL. MS. CLECKLEY TESTIFY THAT SHE WAS NOT SEXUALLY ASSAULT AND THAT'S WHY SHE DIDN'T TELL ANYONE AT THE HOSPITAL. THE POLICE DON'T EVEN TAKE MS. CLECKLEY THERE BUT WE DID HEAR FROM THE CUSTODIAN OF RECORDS, THAT MS. QUINN AND DETECTIVE DONLON INVESTIGATING A RAPE. SEE: TRANSC- FEB 20, PG 133.

   Q IN ORDER FOR A SANE NURSE TO CONDUCT A SANE EXAMINATION HOW
      MANY HOURS CAN ELAPSE BEFORE THE SAY WE'RE NOT GOING TO DO IT?
   A. 72 HOURS.

   Q. WOULD YOU AGREE THAT BASED UPON THE TESTIMONY.
BASE ON REPORTED THAT MS. CLECKLEY WAS AT THE HOSPITAL WITHIN 72 HOURS AFTER THE ASSAULT OCCURRED FOR EYE INJURY, SHE WAS GIVEN A PAPER TO LEAVE THE HOSPITAL. SEE: TRANSC- FEB 20, PG 53-57,

   A. I WAS GIVEN A SHEET OF PAPER FROM THE HOSPITAL TO TAKE TO
      THE SHELTER WITH ME TO SHOW THE SHELTER THAT I HAD BEEN
      " EXAMINED AT THE HOSPITAL."

   Q. DID YOU READ THOSE DISCHARGE.
   A. I DID READ THEM, BUT I DID NOT EVEN KEEP IN MIND WHAT I
      NEEDED TO DO, TO ME IT WAS A PIECE OF PAPER THAT I NEEDED
      TO GET INTO THE SHELTER.

THE DEFENDANT SUGGESTS TO YOU, IS NOT SO MUCH THAT THE TRAINED MEDICAL PROFESSIONAL THAT EXAMINED HER DID NOT NOTE IT BUT THAT EXAMINER, AS WE HAVE ALREADY TALKED ABOUT, NOT ANY COMPLAINT THAT SHE HAD AND SHE DIDN'T COMPLAIN BEEN SEXUALLY ASSAULT.

LET'S EXAMINE FOR A MOMENT, TOO, IN TERMS OF WE NEVER HEARD FROM THE DOCTOR, NEVER HEARD FROM THE NURSE. IN FACT, MS. QUINN IS PROBABY THE MOST HELPFUL DEFENSE WITNESS THE PROSECUTOR HAS PRESENTED BECAUSE MS, QUINN TESTIMONY THAT YOU CAN PERFORM A SANE EXAM AFTER 72 HOURS, HAVE YOU HEARD ANYTHING OF THAT NATURE ? <u>SEE; TRANSC-FEB 21, PG 45</u>,

    Q. SO, TO YOUR KNOWLEDGE, THERE IS AT LEAST SOMETHING OUT THERE THAT YOU COULD COLLECT

    A. YES.

    Q. A SAMPLE ?

    A. YES.

    Q. OLDER THEN THREE DAYS ?

    A. YES,

THE STATE CALLS ROBYN QUINN TO TESTIFIED BEFORE IN MATTERS REGARD D N A ANALYSIS AND SHE IS EMPLOYED BY STATE OF DELAWARE MEDICAL EXAMINER'S OFFICE. SHE IS RESPONSIBLE FOR ANALYZING ANY PHYSICAL EVIDENCE THAT IS SUBMITTED TO THEM VIA A POLICE AGENCY.
THE DEFENDANT SUBMITS TO YOU, GIVE RISE TO A REASONABLE DOUBT THERE'S TWO VERSION THAT COURTS SOMEHOW HAVE TO WORK OUT CONSISTENT WITH THEIR BURDEN OF PROOF.

    I MISSED DISCUSSING SOMETHING WITH COURT WHICH, I THINK IS IMPORTANT, FROM THE EVENTS THAT OCCURRED AND THAT IS NOT RECORDED ANYWHERE IN THE POLICE REPORT, DETECTIVE DONLON DIDN'T TESTIFY ABOUT IT, AND HE TOLD THE JURY THAT HE KNEW VIRTUALLY EVERTHING THAT WENT ON BECAUSE HE'S THE CHIEF INVESTIGATING OFFICER AND THAT'S HIS JOB BECAUSE IT WOULD HAVE CORROBORATED MS. CLECKLEY VERSION OF WHAT OCCURRED FROM THE CUSTODIAN OF RECORDS.

MS. CLECKLEY'S EXAMINATION A FRACIS OCCURRED ON JANUARY 19th SEE: TRANSC-FEB 20, PG 57, THE FOLLOWING MONDAY MS. CLECKLEY NEVER TOLD HER DOCTOR. THIS IS A DOCTOR THAT SHE'S KNOWN FOR 20, YEARS. FEELS VERY COMFORTABLE WITH, HAS A GOOD RAPPORT. SHE DIDN'T EVEN TELL HIM THAT SHE WAS SEXUALLY ASSAULTED BUT SHE DID ASK FOR AN EXAMINATION AND HE EXAMINED HER AND ACCORDING TO MS. CLECKLEY, EVERYTHING IS OKAY, SO THERE'S NO EVIDENCE OF ANY FORCED SEX, THAT NOT IN DETECTIVE DONLON'S NOTES. WHO TESTIFIED TO HAVE CONDUCTED OTHER FIELD INTERVIEWS OF POSSIBLE WITNESSES THAT COULD HAVE PROVIDED ANY INFORMATION TO THE INVESTIGATION. SEE: TRANSC-FEB 20, PG 137, MS, CLECKLEY TOLD DETECTIVE DONLON HE'S BEEN YOUR OB-GYN OR 20 YEARS. AND SHE HAD A APPOINTMENT WITH HER DOCTOR, DR. MAMBERG. THEY FIND SOMETHING, THEY BRING IT TO COURT AND THEY GET A STICKER PUT ON IT AND THEY TELL YOU ALL ABOUT IT, IT'S NOT HERE. THERE'S A REASON, NOT BECAUSE THEY DIDN'T GET EVIDENCE BECAUSE THEY DIDN'T GET ANYTHING THAT MET THEIR GOAL. HE'S INVESTIGATING A SEXALLY ASSAULT, HE'S GOING TO PUT DOWN ALL THE RELEVANT EVIDENCE, ANY EVIDENCE THAT SUPPORTS THIS CHARGE. UNFORTUNATELY, DR. BALLAS CERTAINLY DOESN'T SAY RAPE, IF IN EVIDENCE, IF IN FACT, WHEN SHE DID THE DISCHARGE INSTRUCTIONS, UNDER "DIAGNOSIS", IT SAY "ASSAULT", THE KEEPER OF THE RECORD SAID, IF IT HAD BEEN SEXUALLY ASSAULT, THEY WOULD HAVE WRITTEN "SEXUALLY ASSAULT", BUT NO, ONLY "ASSAULT", SO I THINK ITS FAIR TO CONCLUDE THAT MS. CLECKLEY NEVER MENTIONED THAT SHE WAS SEXUALLY ASSAULTED TO ANYONE AT HOSPITAL. SEE: TRANSC- FEB 21, PG 21 THE MEDICAL REPORT AND MS. KUBEC'S TESTIMONY WAS INADMISSIBLE EVIDENCE, THE PROSECUTION NEVER OFFERED ANY PHYSCIAL EVIDENCE TO PROVE THERE HAD BEEN A SEXUAL ASSAULT, HE NEVER OFFERED ANY DOCUMENTS THAT CONFIRMED THAT A SEXUAL ASSAULT HAD OCCURRED NOR DID MS. CLECKLEY TESTIFY THAT SHE WAS SEXUALLY ASSAULT UNDER OATH. THE STATE HAS NOT PROVEN THE ELEMENTS OF THE CRIME OF UNLAWFUL SEXUAL INTERCOURSE IN THE FIRST DEGREE ...

ROBYN QUINN, HAVING BEEN SWORN UNDER OATH AS A WITNESS FOR THE STATE, WAS CALLED TO THE STAND AND TESTIFIED AS FOLLOWS: DIRECT EXAMINATION, BY MR. ROBERTS: FEB 21, 77 PG 25 SHE WORK AT THE OFFICE OF THE CHIEF MEDICAL EXAMINER, IN WILM, DELAWARE.

Q. HOW LONG DID YOU WORK FOR THAT COMPANY?

A. ALMOST THREE YEARS.

Q. HAVE YOU TESTIFIED BEFORE IN MATTERS REGARDING DNA ANALYSIS?

A. YES, I HAVE.

Q IN WHAT COURTS?

A. STATE OF DELAWARE SUPERIOR COURT.

Q. CAN YOU APPROXIMATE HOW MANY TIMES?

A. APPROXIMATELY 15 OR 20.

WHICH MEANS THAT SHE HAVE TO PROCESS CASES THAT ARE SUBMITTED TO THE MEDICAL EXAMINER'S OFFICE FOR DNA ANALYSIS. SHE TESTIFIED PREVIOUS TO TODAY AS AN EXPERT IN DNA TESTING FOR THE STATE OF DELAWARE IN SUPERIOR COURTS. SINCE THIS IS A SEXUAL ASSAULT CASE AND THESE ARE THE RESULT OF THE DOCUMENTED ON APRIL 16th o2

Q. DID YOU GET EVIDENCE IN THE CASE OF STATE VERSUS STEPHEN WINN

A. YES, I DID.

Q. WHAT WAS INCLUDED IN THE EVIDENCE?

A. NEED TO LOOK BACK AT MY REPORT FOR THAT. THERE WERE ACTUALLY FOUR ITEMS. ONE ITEM WAS THE VICTIM'S KNOWN REFERENCE SAMPLE, WHICH WAS A TUBE OF LIQUID BLOOD; A BROWN PAPER BAG CONTAINING A FINE ARTS CALENDAR; A BROWN -- THESE ARE ALL SEALED, ALSO SEALED BROWN CARDBOARD BOX CONTAINING ONE

PILLOW AND ONE PILLOW COVER WITH STAINS; AND SEALED BROWN PAPER BAG CONTAINING ONE WOOD BASEBALL BAT WITH GREEN TAPE ON THE HANDLE.

I'M GOING TO SUGGEST TO YOU THAT THE DEFENDANT'S WOULD NOT DENY THAT MS. CLECKLEY BLOOD. MS. QUINN COULD ONLY TESTIFIED ABOUT FOUR ITEMS THAT MAY HAD BLOOD ON IT. BUT AS I SAID, WE ARE NOT BEING CHARGED WITH BEING BASE OR CAUSAL. HE'S CHARGED WITH RAPE. AND SAY IT SO JUST DOESN'T MAKE IT SO. MS. QUINN'S TESTIMONY DID NOT CORROBORATES THE PROSECUTOR ARGUING ALLEGATION SEXUAL ASSAULT ON MS. CLECKLEY.

MS. CLECKLEY TOOK THE WITNESS STAND AND WHEN SHE WAS ASKED IF SHE WAS SEXUAL ASSAULT, SHE NEVER SAID THAT SHE WAS SEXUAL ASSAULT. FEB 19, TT PG 87-88

QUINN - CROSS FEB 21, TT PG 45

Q. YOU MENTIONED SWABS. AND I GET YOU'RE TALKING ABOUT -- YOU CAN TEST FOR DNA FROM SEMEN; IS THAT CORRECT?

A. YES.

Q. AND IN YOUR GENERAL EXPERIENCE, HAVE YOU TESTIFIED IN CASE INVOLVING RAPE?

A. YES, I HAVE.

Q AND CASES WHERE THERE'S BEEN A SANE KIT?

A. YES.

Q. JUST VERY BRIEFLY, I DON'T WANT YOU TO GO INTO A LOT OF DETAIL, CAN YOU TELL THE JURY WHAT HAPPENS, WHEN YOU COLLECT THE EVIDENCE, WHAT HAPPENS?

A. WELL, IN THE SEXUAL ASSAULT KIT WE USUALLY HAVE SWABS FROM VAGINAL OR RECTAL OR ORAL ORIFICES. THE DNA EXTRACTION IS A LITTLE DIFFERENT. WE'RE ACTUALLY LOOKING FOR SEMEN INSTEAD OF BLOOD. SO WE HAVE TO SEPARATE. IN THE CASE IF IT WAS

A POSITIVE RAPE, WE HAVE TO SEPARATE THE MALE AND FEMALE FRACTIONS OR THE SUSPECT'S AND THE VICTIM'S FRACTIONS FROM THAT.

Q. THERE'S BEEN TESTIMONY AND PLEASE SAY IF YOU DON'T HAVE ANY KNOWLEDGE IN THIS AREA AT ALL. THERE'S BEEN TESTIMONY THAT YOU CAN'T PERFORM A SANE EXAM AFTER 72 HOURS. HAVE YOU HEARD OF THAT NATURE?

A. THAT'S NOT MY AREA OF EXPERTISE.

Q. DO YOU KNOW WHETHER YOU CAN OBTAIN SEMEN OBTAINED FOUR DAYS AFTER A SEXUAL ASSAULT?

A. WE HAVEN'T DONE ANY VALIDATION STUDIES INTERNALLY, BUT THERE ARE SOME PEER REVIEW ARTICLES OUT THERE.

Q. SO, TO YOUR KNOWLEDGE, THERE IS AT LEAST SOMETHING OUT THERE THAT YOU COULD COLLECT?

A. YES.

Q. A SAMPLE?

A. YES.

Q. OLDER THAN THREE DAYS.

A. YES.

THERE WAS NO VAGINA SAMPLE, "EPITHELIAL FRACTION AND SPERM FRACTION" WE KNOW WHAT EPITHELIAL MEANS, THAT SKIN CELLS. WHEN TWO HUMAN BEING HAVE CONTACT WITH ONE ANOTHER, IT POSSIBLE AND INDEED LIKELY THEY WILL SOME SHED SOME EPITHELIAL CELLS, SO IN THE NORMAL ACT OF INTERCOURSE. THERE'S GOING TO BE EPITHELIAL CELLS PRESENT IN A SAMPLE PROBABLY FROM BOTH PARTIES, WITH REGARD TO THE SAMPLE SHE DID NOT TEST ANY VAGINAL SWABS. THE DEFENDANT CAN BE EXCLUDED AS THE SPERM CELL CONTRIBUTOR IN EITHER OF THE VAGINAL SWABS.

AS A SCIENTIST IN DNA WORK BUT THE CHIEF MEDICAL EXAMINER MS. ROBIN QUINN CAN'T TELL THIS JURY ANYTHING ABOUT WHETHER OR NOT THEY WERE DEPOSITED IN A SEXUAL ASSAULT. THERE WAS NO SPERM FRACTION IDENTIFIED IN THIS SEXUAL ASSAULT CASE. "NO SANE KIT MARKED AS STATE'S "EXHIBIT"...

THE PROSECUTION STATED TO THE JURY, "THE FIRST TIME SHE HEARD THAT SHE WAS A VICTIM OF SEXUAL ASSAULT WAS WHEN SOMEONE AT THE HOSPITAL TOLD HER". SEE: TRANSC- FEB 22, PG. 13, BUT MS. CLECKLEY TESTIFIED THAT SHE DID NOT TELL ANYONE AT ST. FRANCES HOSPITAL THAT SHE WAS SEXUAL ASSAULT. SEE: TRANSC- FEB 19, PG. 110, IT IS YOUR DUTY TO WEIGH THE CREDIBILITY OF WITNESSES IN THIS CASE. THE MEDICAL REPORTS OF THE ALLEGE VICTIM NEVER STATED OR MENTION ANY WHERE IN THEM THAT MS. CLECKLEY HAD SAID THAT SHE WAS SEXUAL ASSAULT OR THAT SHE WAS TOLD THAT SHE WAS SEXUAL ASSAULT OR THAT SHE WAS TREATED FOR SEXUAL ASSAULT. SEE TRANSC- FEB 21, PG 9,

THE STATE COULD NOT MEET IT'S BURDEN OF PROVE, WE HAVE NO BURDEN OF PROOF. WE NEED NOT PROVE ANYTHING. WHEN THE DEFENDANT SUGGESTS TO YOU IS THAT WHEN YOU EVALUATE THE STATE'S BURDEN OF PROOF HERE, TO PROVE, BEYOND A REASONABLE DOUBT THAT THERE WAS A VIOLENT, SEXUAL UNCONSENTED EVENT. THEY NEED TO PROVE, BEYOUND A REASONABLE DOUBT, THEY HAVE TO DEAL WITH THAT LACK OF CORROBORATION AND THAT LACK OF CORROBORATION MAY PROVE THAT IT DIDN'T HAPPEN THE WAY MS. CLECKLEY SAYS. THE DEFENDANT SUBMITS TO YOU, GIVE RISE TO A REASONABLE DOUBT.

THE COURT: WE HAVE A WITNESS THAT WAS NOT ON THE ORIGINAL LIST OF INDIVIDUALS THAT WE TOLD YOU IN THE BEINNING WERE GOING TO TESTIFY. A PERSON HAS BEEN ADDED BY THE NAME OF BARBARA KUBEC, SHE'S AN EMPLOYEE AT THE ST. FRANCIS HOSPITAL. SEE: FEB 21, T T PG 1 BARBARA MARIE KUBEC, HAVING BEEN SWORN UNDER OATH AS A WITNESS FOR THE STATE, WAS CALLED TO THE STAND AND TESTIFIED AS FOLLOWS: DIRECT EXAM I AM THE MEDICAL RECORDS CODER AND CORRSPONDENCE CLERK. AND I'VE BEEN THERE FOR 19 YEARS. THE WITNESS: THEY ARE CREATED IN THE EMERGENCY ROOM UPON ARRIVAL. THE PERSON COMES IN AND REGISTERS AND THEN THEY ARE SEEN BY INITIALLY THE NURSE, WHO FILLS OUT THE PATIENT COMPLAIT. AND THEN THEY ARE SEEN AFTER BY THE PHYSICIAN, WHO FILLS OUT THE REST OF THE CHART, AND THEN WE GET THEM AFTER. (STATE'S EXHIBIT NO. 14 WAS ADMITTED INTO EVIDENCE.) SEE: FEB 21, T T PG 17. DIRECT EXAMINATION BY MR. ROBERTS:

Q. MS. KUBEC, CAN YOU READ NOW STATE EXHIBIT 14 IN THE SECTION "TRIAGE" WHAT WAS REPORTED?

A. YES.
"22:50 HOURS. BEATEN BY FRIEND MONDAY NIGHT. TO GO TO SHELTER TONIGHT WITHOUT BEING SEEN. OFFER MADE TO CALL POLICE. LEFT EYE BRUISING. LEFT EYEBROW LACERATED. FOREHEAD HIT WITH BASEBALL BAT. RIGHT KNEE PAIN AROUND LEFT ANKLE. LEFT SCLAREA REDDENED". THEN IT SAYS: "ALSO DENIES LOSS OF CONSCIOUSNESS".

Q. THOSE WOULD HAVE BEEN THE NURSE'S NOTES?

A. YES, THAT'S CORRECT.

THAT'S THE STANDARD PRACTICE FOR REGISTERED NURSES WHO ARE TRAINED TO TAKE CARE OF MEDICAL AND LEGAL PATIENTS WHO PRESENT TO EMERGENCY ROOM WITH A HISTORY OF A SEXUAL-ASSAULT COMPLAINT. THE PURPOSE OF THAT IS DO DOCUMENT, DOCUMENT WHAT THE PERSON IS DESCRIBING THAT HAPPENED. WHAT THE INJURIES ARE, AND TO TESTIFY AND THAT'S WHAT HAPPENED HERE, WITH MS. KUBEC WHO CAME IN HERE AND TOLD YOU WHAT SHE READ IN THE DOCUMENTED IN A REPORT. THE INJURIES SHE OBSERVED AND THE REPORT IS IN EVIDENCE. WHAT MS. CLECKLEY TOLD THE SANE NURSE, WHICH IS CONTAINED ON ONE PAGES OF THAT REPORT DESCRIBING WHAT HAPPENED. THAT GOES THROUGHOUT THE EXAM. IF THERE'S ANYTHING THAT IS NOTED AND STANDARD PROTOCOL IS TO TAKE SWABS OF EVERY AREA. IF THEY SAY IN THEIR HISTORY THAT SOMETHING HAPPENED ON A PARTICULAR PART OF THEIR BODY THE DOCTOR OR NURSES WILL KNOW TO GO TO THAT AREA TO SWAB, SO ALL THAT WAS NOT DONE DURING THAT TIME AFTER THE INTERNAL EXAMINATION. WHAT I'M REFERRING TO IS, COLLECTIONS OF EVIDENCE, COLLECTION OF EVIDENCE AND THAT'S NOT UNUSUAL WHEN ONE GOES TO AN EMERGENCY ROOM AND ONE OF THE FIRST THINGS THAT ANYBODY ASKS YOU IS, WHAT IS THE NATURE OF YOUR COMPLAINT? IF THE NATURE OF THE COMPLAINT INCLUDES AN ALLEGATION OF SEXUAL ASSAULT, SOMEONE WOULD HAD GETS INVOLVED AND HAVE RECORDS THAT THEY REPORT THAT THEY HAVE BEEN SEXUALLY ASSAULTED. THE CONSENT THAT'S SIGNED BY THE PATIENT THAT COMES IN AND THEN THAT'S INDICATE THE TIME THAT IT WAS HANDED OVER TO POLICE FOR CHAIN OF CUSTODY AND THAT'S ALL INFORMATION THAT ARE GIVEN BY THE PATIENT AND IN FACT, EVEN THE CHECKMARKS ARE QUESTIONS PRESENTED BY NURSE THOMAS WHO EXAMINE MS. CLECKLEY IN THE EMERGENCY ROOM. THE ANSWER THERE IS AN ANSWER SUPPLIED BY THE PATIENT, MS. CLECKLEY AND

15

THAT RECORDED IN THE MEDICAL RECORDS REGARDING BASIC INFORMATION ABOUT THE PATIENT. DURING THE COURSE OF THE QUESTIONS THAT NURSE THOMAS FILLING OUT THAT FORM. SANE NURSES DEAL WITH THE PATIENTS THAT THEY DEAL WITH. SHE IS DEALING WITH PATIENT. THIS IS MEDICAL RELATIONSHIP, IN THE COURSE OF HIS RELATIONSHIP, BECAUSE A COMPLAINT AND REMEMBER, SAYING IT DOES NOT MAKE IT SO -- BECAUSE SOMEBODY SAID THEY WERE SEXUALLY ASSAULTED. A SANE NURSE GET INVOLED, NOT BECAUSE THEY WERE SEXUALLY ASSAULTED, BUT BECAUSE THEY SAID THE WERE. SIMILARLY, THERE'S NOTHING WRONG WITH THAT. I'M SAYING THAT'S WRONG, BECAUSE IF YOU GO TO AN EMERGENCY ROOM AND YOU SAY SEXUALLY ASSAULTED THEY'RE GOING TO TAKE A LOOK AT YOU AND CALL THE POLICE. WHERE DOES THAT TAKE US? RIGHT BACK WHERE WE STARTED: HER VERSION OF WHAT OCCURRED; HIS VERSION OF WHAT OCCURRED, BUT LET'S LOOK IN THAT CONTEXT AT WHAT THE SANE NURSES WERE ABLE TO FIND OUT. NOW, WE GOING TO THE REPORT AND I'M GOING TO SUGGEST TO YOU THAT THE WHOLE SECTION ON THE BEGINNING THE PHYSICIAN'S NOTES.

A. AT 23:00 HOURS THE COMPLAINT WAS: "BATTERED FOUR DAYS AGO. 42-YEAR-OLD BLACK FEMALE PRESENT FOUR DAYS WITH BEING BATTERED WITH FIST TO FACE AND BASEBALL BAT TO LEGS. PATIENT COMPLAINS OF LIGHT HURTING AROUND THE LEFT EYE AND HEADACHES WHEN MOVING QUICKLY. HEARING, RINGING OF THE LEFT EAR. NO LOSS OF CONSCIOUSNESS AT TIME OF ASSAULT. NO CHEST PAIN, SHORT OF BREATH, COUGH, NO ABDOMINAL PAIN, NO NAUSEA OR VOMITING, NO DISUREA, NO BOWEL COMPLAINTS. POSITIVE BRUISING AND PAIN TO THE LEFT EXTREMITY. ALL OTHER ARE NEGATIVE. PATIENT DID HAVE SEXUAL ACTIVITY. DECLINES STD," WHICH IS SEXUALLY TRANSMITTED DISEASE. "EXAM PROPHYLAXIS. PATIENT DECLINES TO HAVE US CONTACT POLICE.

SHE IS TRAINED TO WRITE DOWN WHAT'S REPORTED, MUCH AS ANY OTHER MEDICAL PROFESSIONAL, BUT THE FORM ASKS THE SANE NURSE TO DO OTHER THINGS AND INDEED THEY DID IN THIS CASE AND THAT WHY THE SANE FORM ASKS THOSE QUESTIONS. WHATEVER CORROBORATION EXISTS. WILL HAVE BEEN PRESERVED AND ALLOW A SANE NURSE TO COME IN HERE AND TAKE AN OATH AND TALK ABOUT IT, THESE SANE NURSES COULDN'T TELL YOU VERY MUCH AND THEY TELL YOU ONE THING, OTHER THAN THE FACT THAT SHE REPORTED IT. THERE IS NOT ONE INDICATION, NO PIECE OF EVIDENCE IN THIS CASE SAYS THAT SHE WAS SEXUAL ASSAULT. I'm GOING TO SUGGEST TO you WILL NOT HEAR EVIDENCE FROM THE SEXUAL ASSAULT NURSE EXAMINER KNOWN AS A SANE NURSE, WHO WILL TELL YOU THAT SHE EXAMINED MS. CLECKLEY THAT EVENING ON JANUARY 19th

CROSS-EXAMINATION, FEB 21, PG 21 77

Q. WAS ANY MEDICATION PRESCRIBED FOR PAIN?

A. NO, I DON'T SEE THAT ANYTHING WAS PRESCIBED.

By MR. EDINGER:

Q. NOW, IT SAYS THAT PATIENT HAD SEXUAL ACTIVITY; IS THAT CORRECT?

A. YES.

Q. THERE'S NO MENTION OF RAPE; IS THAT RIGHT?

A. THAT'S CORRECT.

Q. AND THERE WAS NO EXAMINATION OF THE GENITALIA; IS THAT CORRECT, ACCORDING TO THIS DOCUMENT?

A. ACCORDING TO THIS, NO.


NO EVIDENCE COLLECTED FROM MS. CLECKLEY INCLUDING SWABS OF HER VAGINAL AREA. THERE WAS NO REPORT FILLED OUT AT THE TIME THAT THOSE QUESTIONS WERE COVERED BY NURSE THOMAS

THERE WAS NO INFORMATION ON THAT REPORT REGARDING SEXUAL ASSAULT, NURSE EXAMINERS AND ON CALL FOR PEDIATRIC SEXUAL ASSAULT FOR THE GYNECOLOGICAL EXAM HAVE TO LOOK AT THE GENITALIA. AND THEN USE A SPECULUM TO GET INTO INNER-VAGINAL / HYMENAL AREA.

DOCTOR OR NURSE WOULD HAD LOOKED IN AND SAW THAT SHE HAD SOME REDNESS AROUND THE HYMEN. WHICH IS THE OPENING TO THE VAGINA. THERE WAS COOPERATIVE DESCRIBE THE ANATOMY OF THE FEMALE GENITALIA, THE LABIA MAJORN. THE LARGER PORTION OF THE OUTER PORTION OF THE GENITALIA AND THEN INTERNAL TO THAT IS THE LABIA MINORA, BEFORE YOU GET INTO THE VAGINA, WHICH IS THE VAULT, AND OUTSIDE OF THE VAGINA BETWEEN THE MINORA AND THE VAGINA. IS WHAT CALLED THE HYMEN AND THAT'S THAT SMALL TISSUE AREA THAT'S CIRCULAR IN APPEARANCE. THEN YOU GO TO THE VAGINA AND BEYOND THAT IS THE CERVIX. DOCTOR OR NURSES WOULD HAD TAKE PHOTOGRAPHS OF THESE AREAS, OF ALL THE EXTERNAL INJURIES AND HAVE A COLPOSCOPE.

WHICH IS A BIG MACHINE THAT ALLOWS THE DOCTOR OR NURSES TO VISUALIZE THING THAT ARE VERY SMALL AND ALSO TAKE PICTURES OF THOSE LABIA MINORA. WHICH THEY HAVE BEEN TRAINED TO DO, TO LOOK FOR ANY EVIDENCE AND THEN ORAL SWABS WOULD BE TAKEN, SO THAT WOULD BE EVIDENCE.

THE BURDEN OF PROOF IS ON THE STATE TO PROVE ALL OF THE FACTS NECESSARY TO ESTABLISH THE CRIME IN QUESTION BEYOND A REASONABLE DOUBT. IT MUST COME FROM A FAIR AND RATIONAL CONSIDERTION OF THE EVIDENCE.

THEREFORE, THE STATE COULD NOT MEET IT'S BURDEN OF PROVE OF SEXUAL ASSAULT HERE. MS. CLECKLEY TOOK THE WITNESS STAND AND WHEN SHE WAS ASKED IF SHE WAS SEXUAL ASSAULT. SHE NEVER SAID THAT SHE WAS SEXUAL ASSAULT. SEE: TRANSC-FEB 19, PG 87-88.

"KIDNAPPING" 43 A.L.R 3d 699 (1972).

THE STATE MUST PROVE THAT THE "RESTRAINT" INTERFERED SUBSTANTIALLY WITH THE VICTIM'S LIBERTY. SUCH A REQUIREMENT MEANS THAT THERE MUST BE MORE INTERFERENCE THAN IS ORDINARILY INCIDENT TO THE UNDERLYING OFFENSE.

STATE V. WILLIAMS 111 ARIZ 222, 526, P. 2d 1244 (1974).

ALL OF THE ELEMENTS NEEDED TO SHOW "RESTRAINT" UNDER S 786 (A) ARE TO BE FOUND IN HIS RECORD AND THE CONVICTION OF KIDNAPPING UNDER S 783 A (4) IS WARRANTED THEREUNDER.

THE PROSECUTION ENTER INTO EVIDENCE PHOTOGRAPHS OF THE ALLEGE VICTIM'S BED AND OFFERED DETECTIVE DONLON TO TESTIFY TO THE EVIDENCE FOUND ON THIS BED.

DETECTIVE DONLON TESTIFIED THAT, THERE WAS RESIDUE ON THE HEAD OF THE BED POST. SEE: TRANSC-FEB 20, PAGE 146-147, "TO THE POINT THAT THE PROSECUTION DID A IN COURT DEMONSTRATION, PLACING DUCK TAPE ON THE PROSECUTION'S TABLE, THEN PULLING IT OFF, HAVING DETECTIVE DONLON TESTIFY THAT THE RESIDUE THAT IS ON THE PROSECUTION'S TABLE, MATCH OR IS THE SAME TYPE OR RESIDUE THAT WAS ON THE HEAD POST OF THE ALLEGE VICTIM'S BEEN TIED BY THE HANDS OF THE BED POST WITH DUCK TAPE.

THE STATE NEVER INFORMED THE DEFENSE OR COURT'S THAT IT WAS GOING TO USE THIS TYPE OF IN COURT DEMONSTRATION, THERE WAS NO PRIOR NOTICE OF THE STATE'S INTENTION TO OFFER THE EXPERIMENT OR THAT OF THE DUCK TAPE. THE EXHIBITED MUST BEEN MARKED FOR "IDENTIFICATION, PROPERLY IDENTIFIED". SEE: PATTERSHALL V. JENNESS, 485 A. 2d 980, INTRODUCTION, CAUSING PREJUDICE TO DEFENDANT.

THE ENTIRE RECORD DON'T CONFIRM'S THAT THE EVIDENCE OF RECORD SUPPORTING DEFENDANT'S CONVICTION.

19

THE ONLY RELEVANT FACT OF THIS PHOTOGRAPH FERENCE BY DETECTIVE DONLON, HAS NO BEARING ON ANY ISSUE IN THIS CASE. THIS PHOTO WAS FOR ONE PURPOSE AND ONE PURPOSE ONLY AND THAT IS IT/ TO ALLOW THE JURY TO DECIDE FOR THEM TO CONCLUDE THAT DEFENDANTS "RESTRAINED" ALLEGE VICTIM WITH DUCK TAPE.

NEVERTHELESS, THIS DEMONSTRATION CLEARLY SHOW THAT THE STATE HAS NOT PROVEN THE NECESSARY ELEMENTS THAT WARRANT A SEPERATE INDEPENTED CHARGE OF KIDNAPPING, DUE TO THE FACT THAT THE STATE'S PRESENTATION OF EVIDENCE, AND THIS DEMONSTRATION, ALONG WITH DETECTIVE DONLON'S TESTIMONY WAS TOTALLY CONTRARY TO THE ALLEGE VICTIM'S ACCOUNT OF HOW THIS ALLEGE CRIME OCCURRED.

THE ALLEGE VICTIM TESTIFIED THAT, THE DEFENDANT USE LEATHER BELTS THAT WERE ALREADY HANGING ON THE HEAD POST OF THE BED. SEE: TRANSC- FEB 20, PAGE 148.

EVEN THOUGH THE PROSECUTION PUT ON THESE ELABORATE DEMONSTRATION CONCERNING THIS DUCK TAPE, THERE WAS NO DUCK TAPE SEIZED AT THE ALLEGE CRIME SCENE AND THE STATE NEVER ENTERED ANY DUCK TAPE INTO EVIDENCE. THE PROSECUTION PRESENTATION OF EVIDENCE DID NOT CONFIRM THE ALLEGE VICTIM'S TESTIMONY. THERE WAS NO LEATHER BELTS BROUGHT INTO TRIAL OR PRESENTED AS EVIDENCE IN THIS TRIAL.

IF THE STATE'S EVIDENCE DOES NOT PROVE THE KIDNAPPING CHARGE BY DEMONSTRATING SUBSTANTIAL INTERFERENCE THAT IS INDEPENDENT OF THE UNDERLYING OFFENSE. THERE CAN BE NO CONVICTION FOR KIDNAPPING. WEBER V. STATE, 547 A.2d 948., BURTON V. STATE. 426 A.2d AT 834, SCOTT V. STATE, 521 A-2d 242. IT IS THE RESPONSIBLITY OF DEFENSE COUNSEL TO BRING THE MATTER OF POTENTIAL PREJUDICE TO THE ATTENTION OF THE COURT AND EITHER REQUEST A CONTINUANCE OR MOVE FOR A RULING EXCLUDING "ISSUE NOT RAISED ON APPEAL" WAS CLEARLY STRONGER THAN ISSUES THAT COUNSEL DID PRESENT.

20

WHICH CONTAINE AN AFFIDAVIT OF THE INVESTIGATING POLICE OFFICER DONLON ATTACHED TO THE BENCH WARRANT APPLICATION WHICH GAVE MS. CLECKLEY'S DETAILED ACCOUNT OF THE EVIDENCE DIDN'T SUPPORTED THE CHARGES OF KIDNAPPED IN THE COURSE OF THE THREE DAYS, UNARLE TO LEAVE THE HOUSE. AS WRITEN IN THE POLICE REPORT. DETECTIVE DONLON SWORE UNDER OATH IN OPEN COURT UNDER THE PENALTY OF PERJURY THAT THE ACCUSED WOULD NOT ALLOW MS. CLECKLEY TO LEAVE THE HOUSE FOR ANY REASON. SEE: EXHABIT C PG6 AT TRIAL MS. CLECKLEY STATED, THAT THE ACCUSED WOULD COME AND GO IN THE COURSE OF THE THREE DAYS. SEE: TRANSC-FEB 19, PG 103 THESE TESTIMONIES AT TRIAL CONTRADICTS WHAT WAS SWORN TO IN THE AFFIDAVIT OF PROBABLE CAUSE, OF THE POLICE.

TRIAL ATTORNEY MR. EDINGER HAD THE AFFIDAVIT TO IMPEACH MS. CLECKLEY TESTIMONY BUT FAILED TO INTRODUCE THE EVIDENCE AT THE TIME OF TRIAL.

THE FAILURE OF HIS ATTORNEY TO SUBMITT IMPEACHABLE EVIDENCE TO THE JURY FOR DELIBERATION VIOLATED HIS RIGHT TO A FAIR TRIAL.

TRIAL COUNSEL VIOLATED HIS 6th AMENDMENT RIGHT TO INEFFECTIVE ASSISTANCE OF COUNSEL. REVERSED AND REMANDED PREJUDICE FOR DEFAULT.

AS NOTED ON CUNNINGHAM-DIRECT: AFRICAN AMERICAN FEMALE,
Q. HOW YOU DISCRIBE OR GAUGE HE COMPLEXION. MEDIUM, DARK, LIGHT?

A. DARK I WOULD SAY, SHE HAD CUTS AND BRUISES TO BOTH ARMS
SOMETIMES WITH AND AFRICAN AMERICAN WOMAN YOU CAN'T SEE
THE BRUISES AS DARKLY ESPECIALLY ON THE INSIDE.

THE STATE WITNESSES PREJUDICING THE MIND OF THE JURY. HOWEVER THESE
ILLEGAL PICTURES ALLOW VERY PREJUDICIAL TESTIMONY TO BE PRESENTED TO
THE JURY, FROM THE STATES WITNESS THAT IS NOT EXPERT PHOTOGRAPHER.

" IT WAS NOTED THAT THE PICTURES WERE NOT CLEAR". SEE: TRANSX- FEB 20, PG 110
THE PROSECUTOR FAILED TO LAY A PROPER FOUNDATION TO ALLOW THE PICTURES
TO BE ENTERED INTO EVIDENCE BECAUSE THE REASON COULDN'T BEEN SEEN.

IF THEY'ER WERE ANY BRUISES ON THE ALLEGED VICTIM WRIST, IT WAS
IMPOSSIBLE TO LAY A PROPER FOUNDATION FOR SOME OF THE PICTURES.
THE PROSECUTION ILLEGALLY SUBMITTED EVIDENCE, IN VIOLATION OF HIS 6th
AND 14th AMENDMENT RIGHT, WHICH INTURN DENIED DEFENDANT THE RIGHT
TO A FAIR TRIAL. IT IS THE DUTY OF THE COURT'S TO CONDUCT A PROMPT
INVESTIGATION OF THE CIRCUMSTANCES OF THE CASE AND EXPLORE ALL
AVENES LEADING TO FACT RELEVANT TO THE MERITS OF THE CASE AND THE
PENALTY IN THE EVENT OF CONVICTION.

THIS TESTIMONY WAS ILLEGAL AND PREJUDICE THE MINDS OF THE JURY.
THE STATEMENT WAS NOT TRUE AND IT WAS GIVING THE JURY A FALSE SENSE
OF SECURITY, By MISLEDDING THEM TO BELIEVE THE ALLEGED VICTIM WAS
TO DARK IN THE PHOTOGRAPH.

MS. CUNNINGHAM TESTIFY THAT THERE WAS BRUISES ON THE ALLEGED
VICTIM'S, FROM BEING TIED UP AS TESTIFIED TO AT TRIAL.

SEE: EXHABIT FROM STATE PRESENTED AS EVIDENCE. STATE EXHABIT C-28

22

THE ALLEGED VICTIM DIDN'T TESTIFY AT TRIAL THAT SHE HAD CUTS AND BRUISES TO BOTH ARMS ALSO WENT TO THE HOSPITOL AND A DOCTOR'S REPORT WAS ENTERED INTO EVIDENCE. IN THE DOCTOR REPORT, THERE WAS NO MENTION OF CUTS AND BRUISES TO BOTH WRISTS AND AROUND HER ANKLES AS WAS ALLEGED IN THE TRIAL. <u>SEE</u>: TRANSC-FEB 21, PAGE 20 TO 21

DEFENDANT CONTENTION THAT THESE ALLEGED BAD BRUISES WOULD HAVE BEEN LISTED IN THE DOCTORS REPORT AS INJURIES SUFFERED. THE FACT THE MEDICAL REPORT DOSN'T MENTION AND THE PICTURE DON'T SHOW ANY THING ABOUT CUTS AND BRUISE.

THE CHARGES, DUE TO THE BRUISES WERE AN <u>ELIMENT</u> OF THE <u>CHARGES</u> OF THE ILLEGAL INCLUDED KIDNAP IN THE 1 St DEGREE PARTY BECAUSE THE BRUISES WAS SUPPOSE TO BE THE PRODUCT OF THE ALLEGE VICTIM CONFINEMENT OR KIDNAPPING IN THE 1 St DEGREE.

THE STATE FAILED TO PROVE EVERY <u>ELEMENT</u> OF THE KIDNAPPING OFFENSE BEYOUND A REASONABLE DOUBT. THE VIOLATION OF MOVANT'S 6 th AND 14 th AMENDMENT RIGHT TO LEGAL AND FAIR PROCEEDING.

EMILY CUNNINGHAM HAVING BEEN SWORN UNDER OATH AS A WITNESS FOR THE STATE, WAS CALLED TO THE STAND AND TESTIFIED AS FOLLOWS:

MS. CUNNINGHAM TESTIMONY AT TRIAL ON RECORD STATED THAT SHE HAD TALKED TO MS. CLECKLEY AND SOMEONE FROM HER JOB. AN EMPLOYEE ASSISTANCE PROGRAM COORDINATOR, ABOUT FOUR TIME THE EVENING OF JANUARY 19th AND MS. CLECKLEY LET ME KNOW THAT SHE HAD BEEN PHYSICALLY AND SEXUALLY ASSAULTED. SEE: TRANSC-FEB 20, PAGE 105

THE EVIDENCE AT ISSUE IN THIS CASE ASKED MS. CUNNINGHAM IF SHE HAD HER NOTES, WHICH WOULD CONFIRM MS. CLECKLEY STATEMENTS TO HER, "SHE SAID NO." SEE: TRANSC-FEB 20, PAGE 122.

HER NOTES WERE NEVER INTRODUCE AS EVIDENCE IN THIS TRIAL. MS. CUNNINGHAM WHO WAS A KEY WITNESS FOR THE STATE FAX IN HER NOTES TO THE PROSECUTION. SEE: TRANSC-FEB 20, PAGE 169

THE JURY IN THIS CASE ASK TO SEE MS. CUNNINGHAM NOTES TO CORROBORATE HER TESTIMONY.

THE TRIAL JUDGE SAID THAT MS. CUNNINGHAM'S TESTIMONY IS EVIDENCE AND "IT DID NOT CAUSE EITHER SIDE TO RECALL MS. CUNNINGHAM BACK AS A WITNESS. THERE WERE NO DISCUSS ABOUT THESE NOTES OR STATEMENTS WHATSOEVER. THE JURY SENT OUT A NOTE DOING DELIBERATIONS

MR. ROBERTS, HONOR, MS. CUNNINGHAM MUST HAVE BETTER CONNECTIONS THAN STATE EMPLOYEE'S. SHE GOT THE NOTES FAXED OVER TO THE COURT ALREADY. "ONE AND A HALF PAGE OF NOTES IN VERY LARGE HANDWRITING. I'VE GIVEN THEM TO MR. EDINGER", JUST TO LET THE COURT KNOW.

THE DEFENDANT DIDN'T VIEW THESE NOTES WHATSOEVER, DEFENDANT SERED A DISCOVER REQUEST ON THE STATE AND DEFENSE COUNSEL'S REQUESTING INTERALIA, COPIES OF ANY STATEMENTS MADE BY FOLLOWING WITNESSES: KETH MURPHY, EMILY CUNNINGHAM, DET DONLON. SEE: EXHABIT C 46 ALSO SEE: SUPERIOR COURT CRIMINAL DOCKET,

24

DEFENSE COUNSEL'S FAILED TO SHARE AND NEVER MENTIONS WITH DEFENDANT THE DISCOVERY OF PROSECTION WITNESS NOTES.

THE JURY LEFT THE COURT ROOM 4.24 Pm, WHEN THE FAX CAME IN, TO THE PROSECUTION, SEE: TRANSC-FEB 20, PAGE 168. THERE WERE NO DISCUSS ABOUT THESE NOTES OR STATEMENTS MADE BY MS. CUNNINGHAM WHATSOEVER DOING RECESS OR TRIAL PROCESS, AS NOTED, IN THE RECORDS CUSTODIAN HERE: (DELIBERATIONS COMMENCED, 12:05 P.M) (QUESTION FROM THE JURY 1:18 pm) THE QUESTION WAS: WAS THERE EVIDENCE FROM MS. CUNNINGHAM

THE COURT: SO WHAT I'VE WRITTEN IS THAT MS. CUNNINGHAM TESTIFIED SO THERE IS EVIDENCE THAT SHE PROVIDED THAT you may CONSIDER IN REACHING YOUR VERDICT. IF YOU ARE REFERRING TO THE NOTES THAT THE COURT ASKED HER TO PROVIDE. MS. CUNNINGHAM DID PROVIDE THOSE NOTES AND I DID NOT CAUSE EITHER SIDE TO RECALL HER AS A WITNESS.

THE SECOND NOTE IS: CAN WE HAVE THE TRANSCRIPT OF MS, CLECKLEY, SEE: TRANSC-FEB 22, PAGE 89 TO 92. THE EVIDENCE AT ISSUE IS THAT MS. CUNNINGHAM'S DIDN'T HAD HER NOTES WHICH WOULD CONFIRM MS. CLECKLEY STATEMENTS TO HER, "MS. CLECKLEY RESPONSE TO DIRECT QUESTION FROM JANUARY UNTIL MARCH 15th OR MARCH 12th THAT SHE NEVER SAID SHE WAS SEXUALLY ASSAULTED, I ALWAYS REFERRED TO my SELF AS HAVING BEEN ASSAULTED. SEE: TRANSC-FEB 20, PAGE 84

EFFECTIVE CROSS-EXAMINATION IS ESSENTIAL TO A DEFENDANT'S RIGHT TO A FAIR TRIAL, IT IS THE PRINCIPAL MEANS BY WHICH THE BELIEVABILITY OF A WITNESS AND THE TRUTH OF HER TESTIMONY ARE TESTED. U.S.C.A. CONST. AMEND. 6.

BECAUSE THE JURY IS THE SOLE TRIER OF FACT, RESPONSIBLE FOR DETERMINING WITNESS CREDIBILITY AND RESOLVING CONFLICTS IN TESTIMONY JURORS SHOULD BE AFFORDED EVERY OPPORTUNITY TO HER IMPEACHMENT

EVIDENCE THAT MAY UNDERMINE A WITNESS CREDIBILITY. BECAUSE THE RIGTH TO CROSS-EXAMINATION IS FUNDAMENTAL TO A FAIR TRIAL.

" A NEW TRIAL WILL BE ORDERED WHEN THE STATE FAILS TO PROVIDE THE DEFENDANT WITH MATERIAL EVIDENCE THAT IS FAVORABLE TO THE DEFENDANT ACCUSED. U.S.C.A. CONST. AMEND. 6.

IM PEACHMENT EVIDENCE FALL WITHIN THE BRADY RULE, WHICH PRECLUDES THE STATE FROM SUPPRESSING EVIDENCE FAVORABLE TO A DEFENDANT IF THAT EVIDENCE IS MATERIAL EITHER TO GUILT OR TO PUNISHMENT. IF EVIDENCE THE PROSECUTION FAIL TO TIMELY DISCLOSE IS BOTH FAVORABLE AND MATERIAL A DETERMINATION MADE BE MADE WHETHER ITS DELAYED DISCLOSURE PRECLUDED EFFECTIVE USE OF THE INFORMATION AT TRIAL; IF DEFENDANT WAS UNABLE TO USE THE EVIDENCE EFFECTIVELY BECAUSE OF DELAYED DISCLOSURE A NEW TRIAL IS WARRANTED.

"UNDER BRADY V. MARYLAND",

THE STATE DALAY IS DISCLOSING IMPEACHMENT EVIDENCE MAY NOT BE MATERIAL IF THE DEFENDANT HAS AN OPPORTUNITY TO USE THE MATERIAL EFFECTIVELY NONETHELESS ... ATKINSON V. STATE CITE AS DEL. SUPER, 778 A.2d 1058 (2001).

THE STATE ALSO ARGUED THAT DEFENDANT'S CLAIMS OF
INEFFECTIVE ASSISTANCE ARE WITHOUT MERITS, AND SHOULD BE
DISMISSED, SEE: STATE ANSWER BRIEF AT 6.

THE STATE FIRST ARGUED THAT DEFENDANT'S FIRST COMPLAINT
WAS THAT COUNSEL'S "REPRESENTATION WAS PERFUNCTORY AT BEST,"
S.A.B. AT 7.

DEFENDANT'S ASSERTS THAT COUNSEL FAILED TO ADEQUATELY
CONSULT WITH HIM AND TO FULLY INFORMED HIM ON INPORTANT ISSUE
AND DECISIONS REGARDING HIS DEFENSE. DEFENDANT CLAIMS THAT HE
ONLY SAW DEFENSE COUNSEL 2 TIME BEFORE TRIAL STARTED,

COUNSEL'S FAILED TO DISCUSS ANY PRETRIAL MOTION, FAILED TO
PROVIDES DEFENDANT WITH INFORMATION LEARNING FROM DISCOVERY,
DEVELOPMENT THROUGH INVESTIGATION, TRIAL STRATEGY AND TACTIC

THE MOST FUNDAMENTAL ELEMENT OF COMPETENT REPRESENTATION
OF ANY CLIENT IS THE ESTABLISHMENT OF TRUST AND CONFIDENTIAL
RELATIONSHIP. A B A STANDARD 4-3.1(A). THE AMOUNT OF CLIENT
CONSULTATION REQUIRED DEPENDS ON THE CIRCUMSTANCES, AND THE
FACTS OF EACH INDIVIDUAL CASE, AT A MINIMUM, "THE CONSULTATION
SHOULD BE SUFFICIENT TO DETERMINE ALL LEGALLY RELEVANT INFORMATIO
KNOWN TO THE DEFENDANT." U.S V. TUCKER, 716 F.2d 576, 582 (1983)

COUNSEL'S ALSO FAILED TO INTERVIEW AND TO CALL "CRITICAL"
WITNESSES THAT WOULD HAVE CORROBORATE AND SUPPORTED DEFENDANT
CLAIM OF INNOCENT. U.S V. JOHNSON, 995 F. Supp. 1259 (1998).

LIKEWISE, WITH RESPECT TO THE SO-CALLED "RAPE", COUNSEL'S FAILED TO CALL THE DOCTOR OR THE NURSE WHO EXAMINED CLECKLEY AT THE HOSPITAL TO TESTIFY, OR TO CALL AN INDEPENDENT MEDICAL EXPERT WITNESS TO THE STAND PUTS HIS PERFORMANCE FURTHER INTO QUESTION. IT APPEARS THAT UNDER THE CIRCUMSTANCES OF THIS CASE, DEFENDANT WAS FACED WITH THE CHALLENGE OF UNDERMINING THE CERDIBILITY OF THE PROSECUTION STATEMENT THAT CLECKLEY WAS RAPE WITHOUT ANY EVIDENCE THAT A RAPE OCCURRED, IN FACT, CLECKLEY NEVER STATED OR MENTION DURING HER TESTIMONY THAT SHE WAS RAPE

GIVEN THE AMOUNT OF TIME COUNSEL HAD TO PREPARE FOR TRIAL, THIS FACT ALONE WOULD BE INEXCUSABLE. WHAT BECOMES VERY CLEAR FROM CLECKLEY TESTIMONY THAT SHE DID NOT TELL ANYONE AT ST. FRANCES HOSPITAL THAT SHE WAS RAPED. TRANSC-FEB 19. PG 110 IT WAS THE PROSECUTION STATED TO THE JURY, "THE FIRST TIME SHE HEARD THAT SHE WAS A VICTIM OF RAPE WAS WHEN SOMEONE AT THE HOSPITAL TOLD HER. TRANSC-FEB 22, PG 13

THIS CONDUCT BY COUNSEL SHOWS THAT HE HAD NOT ADEQUATELY INVESTIGATED THE POSSIBILITY OF HIS USAGE IN ADVANCE OF TRIAL. IN ANY EVENT, THIS FACT IS SYMPTOMATIE OF A LACK OF TRIAL PREPARATION. THIS SHOWS THAT DEFENSE COUNSEL HAD NO DEFENSE STRATEGY OR TACTICS.

DEFENSE COUNSEL HAS ALSO SHOWS THAT HE HAD AN INTEREST OF CONFLICT IN THE DEFENDANT CASE, BY ADVISING HIM TO ACCEPT THE STATE PLEA BFTER, WHEN DEFENDANT HAD TOLD COUNSEL AN SEVERAL OCCASION THAT HE IS INNOCENT OF THE CRIME WITH WHICH HE WAS CHARGED.

28

NOT WITH STANDING DEFENDANT PLEAD FOR HIS INNOCENT, DEFENSE COUNSEL CONTINUED HIS ATTACK AN DEFENDANT TO TAKE THE STAT. PLEA AFTER. THIS SHOWS THAT COUNSEL CONDUCT WAS PROFESSIONALLY UNREASONABLE UNDER THE CIRCUMSTANCES OF THIS CASE. THIS WAS CLEARLY PREJUDICE TO THE DEFENDANT FOR COUNSEL REPRESENTATION WITH CONFLICT IN THIS CASE.

THE TRIAL RECORD WILL REFLECT THE FACT THAT DEFENSE COUNSEL FAILED TO CONDUCT A VOIR DIRE EXAMINATION OF PROSPECTIVE JURORS TO IDENTIFY UNQUALIFIED JURORS. THUS VIOLATED DEFENDANT RIGHT TO DUE PROCESS OF LAW UNDER THE 6 th AND 14 th AMENDMENT TO THE U.S. CONSTITUTION. MORGAN V. ILLINOIS, 112 S. Ct. 2222 (1972); U.S. V. DAVIS, 583 F.2d 190 (1978); DENNIS V. U.S, 70 S.Ct.519, 523-24 (1950); MORFORD V. U.S, 70 S. Ct. 586, 587 (1950).

IT WAS REVEAL By CLECKLEY DURING HER TESTIMONY AT THE TRIAL THE JUROR NUMBER 11, WORKED WITH HER AT THE SAME JOB. SEE: TRANSC - FEB 20, PAGE 4.

LACK OF ADEQUATE VOIR DIRE IMPAIRS THE DEFENDANT'S ABILITY TO EXERCISE PEREMPTORY AND INTELLIGENTLY HIS CHALLENGES WHERE PROVIDES By STATUTE OR RULE, AS IT IS IN THE FEDERAL COURT IS GROUND FOR REVERSAL, IRRESPECTIVE OF PREJUDICE, SWAIN V. ALABAMI 85 S. Ct. 824 (1965); U.S. V. LEWIN, 467 F.2d 1132, 1138-39 (1972); U.S V. SABABU, 891 F.2d 1308, 1325 (1989); U.S V. RODRIGEZ, 993 F.2d 1170, 1176 - 77 (1997).

29

HAD COUNSEL CONDUCT A VOIR DIRE EXAMINTION OF PROSPECTIVE JURORS, HE WOULD HAVE DISCOVERED THAT JUROR NUMBER 11 KNOW CLECKLEY, BECAUSE THEIR WORK TOGETHER AT THE SAME JOB AT THE POSTOFFICE, AND WOULD NOT BE QUALIFIED FOR A JUROR IN THIS CASE. IT APPEARS THAT UNDER THE CIRCUMSTANCES OF THIS CASE, COUNSEL CONDUCT SUGGESTS THAT HE WAS EITHER UNFAMILIAR WITH THE RELEVANT LAW UNDERLYING THIS CASE OR THAT HE WAS EITHER UNPREPARED AND / OR INEXPERIENCED, OR THAT HE WAS ATTEMPTING TO GENERATE UNFAIR SYMPATHY FOR HIS CLIENT.

IN ANY EVENT, THIS FACT IS SYMPTOMATIC OF A LACK OF TRIAL PREPARATION AND COUNSEL'S COMPETENCE. BECAUSE THE TRIAL COURTS FAILED TO CONDUCT AN ADEQUATE VOIR DIRE EXAMINATION OF PROSPECTIVE JURORS, THIS JUROR WAS IN PANEL, THUS SHOWING THAT THIS JUROR NUMBER 11 TO BE POTENTIAL PREJUDICE AND OR BIAS AGAINST THE DEFENDANT.

DEFENSE COUNSEL FURTHER PROVIDES INEFFECTIVE ASSISTANCE WHEN HE STATED THAT DECISIONS REGARDING JURY SELECTION ARE MADE BY HIM ALONE. THIS IS CLEARLY A VIOLATION OF THE DEFENDANT RIGHT TO DUE PROCESS OF LAW AND TO THE EQUAL PROTECTION OF LAW UNDER THE 6th AND 14th AMENDMENT TO THE U.S CONST.

DEFENDANT'S WROTE A LETTER TO THE SUPERIOR COURT REQUESTING A COPY OF THE JURY SELECTION TRANSCRIPTS FOR HIS RULE 61 MOTION. THE TRIAL COURT REFUSED TO GIVE THE DEFENDANT THE TRANSCRIPTS AND DENIED HIS REQUEST.

ON JUNE 21, 2005, THIS COURT HAS STATED THAT DEFENDANT MAY RAISED AS AN ISSUE IN HIS OPENING BRIEF THE UNAVAILABILITY OF THE HEARING TRANSCRIPTS OF THE JURY SELECTION.

IT IS THE DEFENDANT'S CONTENTION THAT TRIAL COUNSEL PREFORMANCE AT TRIAL WAS HIGHLY PREJUDICIAL TO HIM, WHEREBY RENDING DEFENDANT TRIAL FUNDAMENTALLY UNFAIR.

## CONCLUSION

NOW THEREFORE, BASED UPON THE REASONS EXPRESSED AND THE AUTHORITIES CITED THEREIN, AS WELL AS THE ESTABLISHED LAW, DEFENDANT RESPECTFULLY REQUEST THIS HORORABLE COURT TO GRANT HIS MOTION AND REVERSE HIS CONVICTION BASED UPON THE FACT THAT THE TRIAL COURT DECISION IS NOT JUSTIFIED BY THE RECORD.

RESPECTFULLY SUBMITTED,

DATE : 1/19/07

Stephen R. Winn
STEPHEN R. WINN
PRO-SE DEFENDANT'S
(  )    D.C.C 1181 PADDOCK RD
SMYRNA, DE 19977

31,

# Certificate of Service

I, _STEPHEN R. WINN_ , hereby certify that I have served a true

and correct cop(ies) of the attached: _MOTION TO AMEND_

_MATERIAL FACT OF STATEMENT_ upon the following

parties/person (s):


TO: _DEPARTMENT OF JUSTICE_         TO: _____

_THOMAS E. BROWN_                   _____

_820. N. FRENCH STREET_             _____

_WILMINGTON, DE_                    _____

_19801_                             _____



TO: _____        TO: _____

_____            _____

_____            _____

_____            _____

_____            _____


**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE
19977.

On this _19_ day of _JANUARY 2007_ , ~~2000~~

Stephen Winn

