## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEPHEN R. WINN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 06-038-GMS |
| | ) | |
| PERRY PHELPS, | ) | |
| and ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

Stephen R. Winn. *Pro se* petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware. Attorney for respondents.

### MEMORANDUM OPINION[2]

Feb 13 , 2009
Wilmington, Delaware

---

[1]Warden Perry Phelps assumed office in January, 2008, replacing former Warden Thomas
Carroll.  *See* Fed. R. Civ. P. 25(d)(1).

[2]This case was re-assigned to the undersigned from the Vacant Judgeship on February 1,
2008.



Sleet, Chief Judge

## I. INTRODUCTION

Petitioner Stephen R. Winn ("Winn") is an inmate at the Delaware Correctional Center in

Smyrna, Delaware. Winn filed the pending petition for a writ of habeas corpus ("petition")

pursuant to 28 U.S.C. § 2254. (D.I. 2) For the reasons that follow, the court will dismiss his

petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As detailed by the Delaware Supreme Court in Winn's direct appeal, the facts of his case

are as follows:

> On January 15, 2001, Winn became enraged when his live-in girlfriend, Donna Cleckley,
> told him that she wanted to end their relationship. He punched her in the face, then tied
> her to her bed, beat her with a baseball bat and raped her. During the assault, he
> threatened to kill Cleckley. When Winn finished raping Cleckley, he gagged her and left
> her tied to the bed, while he went out in her car.
>
> Cleckley stayed in her home for the next three days and sought no help even during the
> times that Winn was out of the house. When she felt that she had enough strength,
> Cleckley went to St. Francis Hospital and then to a battered woman's shelter. She later
> reported the attack to the police.

*Winn v. State*, 829 A.2d 142 (Table), 2003 WL 1442468 (Del. Mar. 19, 2003). In February 2002,

a Superior Court jury convicted Winn of first degree rape, first degree kidnaping, second degree

assault, terroristic threatening, and criminal contempt. The Superior Court sentenced Winn to 47

years in prison. Winn filed a direct appeal, asserting that the Superior Court abused its discretion

by permitting the victim's prior consistent statement into evidence. The Delaware Supreme

Court affirmed the Superior Court's decision. *Id.*

On September 15, 2003, Winn filed a motion for post-conviction relief pursuant to

1

Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), asserting six ineffective assistance of counsel claims. The Superior court expanded the record to include defense counsel's affidavit. With the Superior Court's permission, Winn subsequently amended his Rule 61 motion to include an additional seven grounds. However, when the Superior Court denied Winn's Rule 61 motion on December 27, 2004 for failing to satisfy the *Strickland* test, the opinion only considered the initial six claims asserted in Winn's original Rule 61 motion. *See State v. Winn*, 2004 WL 3030023 (Del. Super. Ct. Dec. 23, 2004). As a result, the Superior Court issued a supplemental decision dated June 6, 2005 regarding the other seven substantive claims presented by Winn in the amended motion. In that supplemental decision, the Superior Court held that the claims presented in Winn's amended Rule 61 motion were procedurally barred under Rule 61(i)(3) because he failed to present the claims to the Delaware Supreme Court in his direct appeal. *State v. Winn*, 2005 WL 1653957 (Del. Super. Ct. June 6, 2005).

Winn appealed the Superior Court's denial of his amended Rule 61 motion, arguing that his procedural default should be excused because his attorney failed to present the additional claims on direct appeal. The Delaware Supreme Court rejected Winn's excuse and affirmed the Superior Court's judgment. *Winn v. State*, 888 A.2d 233 (Table), 2005 WL 3357513 (Del. Dec. 8, 2005).

Winn timely filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 as well as a memorandum in support. (D.I. 2; D.I. 5.) The State filed answer, urging the court to deny the petition as procedurally barred. (D.I. 12.) Winn filed a reply brief, and then he filed a motion to amend the "material fact statement" contained in his original petition. (D.I. 15; D.I. 23.) The court granted Winn's motion to amend the "material fact statement" to the extent the

2

motion supplemented the original petition, but denied it to the extent the motion attempted to add

new claims.[3] (D.I. 27.) Winn's petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –

---

[3]Thus, the court will only consider the eight claims asserted in the form petition and the
seven claims asserted in the support memorandum. (D.I. 1; D.I. 5.)

3

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is an absence of available State corrective process; or
    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,* 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the

4

claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States,* 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

5

clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *reversed on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Winn asserts the following eight grounds for relief in his form petition: (1) the trial court failed to properly instruct the jury on the elements of first degree unlawful sexual intercourse; (2) the State failed to prove each element of first degree unlawful sexual intercourse; (3) the State failed to prove each element of kidnaping due to an inappropriate in-court demonstration; (4)

6

communications between the victim and Winn were admitted into evidence in violation of

Winn's right to be protected from self-incrimination; (5) the medical report of the victim was

improperly admitted into evidence; (6) the trial court improperly admitted prior bad act evidence;

(7) the prosecutor presented an improper closing argument regarding Winn's mother's failure to

testify; and (8) the prosecutor presented an improper closing argument regarding the absence of

blood spatter evidence. (D.I. 1.) Additionally, in a document titled "Support Memorandum,"

Winn presents the following seven claims of ineffective assistance of counsel (numbered

sequentially with the first eight claims): (9) counsel's representation during the trial was

perfunctory; (10) counsel failed to conduct a meaningful investigation; (11) counsel failed to

secure, obtain, or share discovery with Winn; (12) counsel prevented Winn from reviewing an

audio tape of the telephone conversation between Winn and the victim before trial; (13) counsel

did not subpoena the witnesses on the list supplied by Winn; (14) counsel failed to include Winn

in the process for jury selection; and (15) counsel created a conflict of interest by "cussing and

fussing" at Winn. *See generally* (D.I. 5 at A-26.).

### 1. Claims one through eight

The court concurs with the State's argument that Winn procedurally defaulted claims one

through eight at the state court level because Winn did not present these claims on direct appeal.

Although Winn did present the claims to the Superior Court in his amended Rule 61 motion, the

Superior Court denied all eight claims as barred by Rule 61(i)(3) due to Winn's failure to raise

the issues on direct appeal.[4]  Winn then presented the claims to the Delaware Supreme Court in

---

[4]Although the text of the rule set forth in the Superior Court's decision is consistent with
the text of Rule 61(i)(3), the Superior Court cited to Rule 61(i)(4). *Winn*, 2005 WL 1653957, at
*2 n.7. Based on the text, the court concludes that the Superior Court relied on Rule 61(i)(3) and

the appeal of his amended Rule 61 motion, and he argued that the Delaware Supreme Court

should excuse his procedural default of the claims because counsel failed to include the claims in

his direct appeal. The Delaware Supreme Court rejected Winn's argument and affirmed the

Superior Court's decision that the claims were procedurally barred under Rule 61(i)(3). *See*

*Winn,* 2005 WL 3357513.

By applying the procedural bar of Rule 61(i)(3) to claims one through eight, the Delaware

Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984)

that its decision rested on state law grounds. This court has consistently held that Rule 61 is an

independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v.*

*Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D.

Del. Oct. 11, 2005). Thus, the court cannot review the merits of these eight claims absent a

showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a

miscarriage of justice will occur if the claims are not reviewed.

It is well-settled that an attorney's failure to raise a claim on appeal can excuse a

petitioner's procedural default of another claim if the petitioner properly exhausted the issue of

the attorney's failure as an independent claim in the state courts and the attorney error effectuated

a constitutional violation. *See Edwards v. Carpenter*, 529 U.S. 446 (2000); *Murray v. Carrier*,

477 U.S. 478, 488 (1986). As in his state post-conviction appeal, Winn attempts to establish

cause for his default in this habeas proceeding by blaming counsel for failing to raise claims one

---

not Rule 61(i)(4) in denying this claim as procedurally barred. This conclusion is supported by
the fact that, in its decision regarding Winn's post-conviction appeal, the Delaware Supreme
Court cited Rule 61(i)(3) in finding the claims barred due to Winn's failure to raise them on
direct appeal. *See Winn*, 2005 WL 3357513, at *1 n. 6.

through eight on direct appeal. The State, however, argues that appellate counsel's performance cannot constitute cause here because Winn raised the instant allegation of ineffective assistance to the Delaware Supreme Court in his post-conviction appeal without first presenting it to the Superior Court in his Rule 61 motion. In other words, the State contends that this allegation of ineffective assistance is itself procedurally defaulted and therefore cannot constitute cause for Winn's procedural default of claims one through eight.

The court concurs with the State's argument that, as a general rule, the Delaware Supreme Court would have found Winn's argument regarding appellate counsel's performance to be barred under Delaware Supreme Court Rule 8 because Winn did not present it to the Superior Court in his Rule 61 motion. However, in this case, the Delaware Supreme Court held that appellate counsel's performance could not constitute cause for Winn's procedural default because *the record* did not support Winn's allegation regarding counsel's deficient performance. *Winn*, 2005 WL 3357513, at *1 (emphasis added). After viewing the Delaware Supreme Court's statement within the framework provided by recent Third Circuit precedent, the court will exercise prudence and treat the Delaware Supreme Court's decision as an adjudication of Winn's claim regarding appellate counsel's performance. *See, e.g., Campbell v. Burris*, 515 F.3d 172, 185-86 (3d Cir. 2008)(where, with respect to an ineffective assistance of counsel claim, the Third Circuit Court of Appeals concluded, "arguendo," that the Delaware Supreme Court's summary statement regarding the petitioner's failure to present evidence of any prejudice resulting from counsel's alleged error constituted an adjudication for the purposes of § 2254(d)(1).). Thus, appellate counsel's performance will only excuse Winn's procedural default of claims one through eight if the Delaware Supreme Court's denial of this ineffective assistance of appellate

9

counsel claim is either contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established Federal law governing ineffective assistance of counsel claims is the two pronged test articulated in *Strickland*, which also applies to claims involving appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, Winn contends that appellate counsel's failure to raise these eight claims on direct appeal constituted ineffective assistance because Winn, not counsel, had the "ultimate" right to decide the issues raised on appeal. However, "it is a well-established principle that counsel decides which issues to pursue on appeal." *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). Appellate counsel is not required to raise every non-frivolous claim requested by the defendant,

10

and he "may select from among [the non-frivolous claims] in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000); *see Jones v. Barnes*, 463 U.S. 745, 751 (1983). Therefore, even if counsel refused to present these eight claims on appeal, that decision does not, on its own, constitute ineffective assistance.

In addition, the court concludes that Winn has failed to demonstrate he was prejudiced by counsel's failure to raise these eight claims on appeal. The court will address the issue of prejudice and appellate counsel's performance with respect to each of the underlying substantive issues in seriatim.

Claim one asserts that the trial court erred by failing to instruct the jury that Winn could only be found guilty of unlawful sexual intercourse in the first degree if the State proved that Cleckley was not Winn's voluntary social companion. Claim two asserts that the State violated Winn's right to due process by failing to prove that Cleckley was not Winn's voluntary social companion. However, Winn was charged with first degree rape, not first degree unlawful sexual intercourse, and the first degree rape statute does not contain a "voluntary social companion" element.[5] Consequently, the issue as to whether or not Cleckley was Winn's voluntary social companion was irrelevant for proving that Winn was guilty of first degree rape. In turn, the trial court did not err by failing to include an unnecessary jury instruction about voluntary social

_____

[5]The former First Degree Unlawful Sexual Intercourse statute (Del. Code Ann. tit. 11, § 773) was repealed in September 1998 and re-named Rape in the First Degree. Under the former first degree unlawful sexual intercourse statute, if the prosecution failed to establish that the defendant and the victim were not "voluntary social companions," the crime of first degree unlawful sexual intercourse was reduced to third degree unlawful sexual intercourse. Although essentially the same conduct that was considered illegal as first degree unlawful sexual intercourse is still considered illegal as first degree rape, the current rape statute does not contain the "voluntary social companion" element.

11

companions. Accordingly, Winn was not prejudiced by counsel's failure to raise these two meritless claims on appeal. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

In claim three, Winn contends that the State acted improperly by failing to notify the defense of its intent to conduct the duct tape demonstration. Winn also contends that the State failed to prove the restraint element of first degree kidnaping beyond a reasonable doubt because the police officer's testimony regarding the duct tape residue found on the headboard contradicted Cleckley's testimony that Winn used the duct tape to attach her feet to the footboard but used a belt to tie her hands to the headboard. In addition, Winn asserts that the State failed to prove the restraint element because it did not admit into evidence any duct tape or belts from the crime scene. In essence, Winn contends that the evidence of restraint was insufficient to support his conviction for kidnaping because the alleged restraint was part of the rape offense.

In order for Winn to be convicted of first degree kidnaping, the State had to prove that Winn unlawfully restrained Cleckley with the intent to inflict physical injury or to violate and/or sexually abuse her, and that he did not voluntarily release Cleckley unharmed prior to trial. Under well-settled Delaware precedent, the term "restrain[t]" consists of three elements: "(1) substantial interference with another's liberty; (2) by movement or confinement; (3) without consent." *Kornegay v. State*, 596 A.2d 481, 485 (Del. 1991)(citation omitted). When, as here, a defendant is charged with both kidnaping and another underlying crime such as rape, the degree, nature, and duration of the restraint are important, but the "primary focus of inquiry should be on whether the movement and/or restraint are merely incident to the underlying offense or are independent of the underlying offense." *Id.* at 485-86.

12

During the trial, Cleckley testified that she was tied to the bed when Winn forced her to have sex. After he was finished, Winn gagged Cleckley, taped her mouth shut with duct tape, and told her he would kill her if she screamed. Winn took some of Cleckley's money, hit her on the head several times with a bat, and finally left in Cleckley's car, leaving Cleckley still bound to the bed. (D.I. 14, App. to Appellant's Op. Br. in *Winn v. State*, No.328,2002, at A-15 to A-19.) She remained there alone for at least 30 minutes until Winn returned to the house, and he did not untie her hands and feet for at least another 15 minutes. (D.I. 14, App. to State's Ans. Br. in *Winn v. State*, No.27,2005, at B-11.).

While the investigating police officer was testifying, the State admitted into evidence two photographs of the bed posts showing a deposit of adhesive on the wood. The State then placed duct tape on a corner of the prosecution table, peeled it back, and asked the officer if he saw "the same kind of stuff underneath there that [he] saw in the last two [photograph] exhibits." (D.I. 14, App. to State's Ans. Br. in *Winn v. State*, No.27,2005, at B-37.) The officer answered that it looked consistent with what he saw on the headboard. *Id*. at B-37.

As an initial matter, the court has found no support for Winn's assertion that the State should have informed the defense about its intention to conduct the duct tape demonstration. Moreover, viewing the evidence in a light most favorable to the prosecution, the court concludes that there was sufficient evidence to convict Winn of first degree kidnaping because a rational jury could have found the element of restraint beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). For instance, the fact that Winn left Cleckley tied to the bed and gagged for at least 50 minutes after he raped her establishes restraint independent of the rape. Further, the fact that the State did not introduce as evidence any duct tape or belts found at the

13

scene of the crime does not cast doubt on the evidence of restraint, because Winn himself admitted to the existence of a belt when he testified that he grabbed a belt from his dresser and hit Cleckley twice across her legs. (D.I. 14, App. to State's Ans. Br. in *Winn v. State*, No.27,2005, at B-45). Accordingly, Winn has failed to demonstrate prejudice stemming from counsel's "failure" to raise claim three on appeal.

Claims four, five, and six assert violations of Delaware Evidence Rules. The Superior Court found these claims to be procedurally barred, but the court also stated that "there were no improper legal rulings that were inconsistent with the discretion given to this Court regarding evidentiary matters."[6] *Winn*, 2005, WL 1653957, at*2. On appeal, the Delaware Supreme Court affirmed that decision, and also explained that there was no record evidence to support Winn's allegation that counsel performed deficiently by failing to raise these three issues on direct appeal.

The court views the statements by the Delaware state courts that there were no improper legal rulings as implicit holdings that these matters did not constitute errors under the Delaware Evidence Rules. On habeas review, the court is required to defer to the Delaware Supreme Court's interpretation and application of Delaware law. *See Bradshaw v. Richey*, 546 U.S. 74, 126 S.Ct. 602, 604 (2005)(citing *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991). In turn, it is well-settled that an attorney does not provide ineffective assistance by failing to raise meritless

---

[6]After noting that it was unclear as to whether claim four was related to the claim Winn raised on direct appeal, the Superior Court actually provided two alternative reasons for denying claim four as procedurally barred. First, if claim four was not related to the claim raised on direct appeal, then the claim was barred under Rule 61(i)(3). Alternatively, if claim four was related to the claim raised on direct appeal, then it was barred under Rule 61(i)(4) as formerly adjudicated. *See Winn*, 2005 WL 1653957, at *2 n.5.

14

arguments. Accordingly, the court concludes that Winn was not prejudiced by counsel's alleged

"failure" to raise the meritless evidentiary issues in claims four, five, and six on appeal.[7]

Claims seven and eight assert prosecutorial misconduct with respect to the State's closing

argument. Specifically, Winn contends that the prosecutor improperly misstated the evidence by

saying that Cleckley and Winn each spoke to Winn's mother about the incident, and that Winn's

---

[7]In claim four, Winn alleges that the trial court's evidentiary ruling with respect to the admission of the conversation between Winn and Cleckley that was taped between March 2, 2001 and March 12, 2001 violated Winn's Fifth Amendment right to be protected against self-incrimination. The conversation between Winn and Cleckley was taped after the Family Court issued a modified protection from abuse order on March 2, 2001, and during that conversation, Winn threatened Cleckley. (D.I. 14, App. to State's Ans. Br. in *Winn v. State*, No.27,2005, at B-16, B-21.) It was this conversation, and specifically, Winn's threats during the conversation, which convinced Cleckley to finally report the January attack and rape to the police. *See* (D.I. 14, App. to Appellant's Op. Br. in *Winn v.State*, No.328, 2002, at A-23.)

In claim five, Winn alleges that the trial court's evidentiary ruling with respect to the admission of Cleckley's medical report violated his right to due process. According to Winn, "much" of the report was unreadable. Therefore, defense counsel had to take the time to decipher the contents of the report during his cross-examination of Ms. Kubec regarding the contents of the medical report, and these interruptions violated Winn's right to due process.

To the extent these claims allege Federal constitutional issues (as opposed to state evidentiary errors), the court still concludes that Winn has failed to demonstrate prejudice sufficient to satisfy the *Strickland* test. *See Reynolds v. Ellingsworth,* 843 F.2d 712, 717 n.10 (3d Cir. 1988)(state court evidentiary errors can reach constitutional proportions if the errors deprived the defendant of a fundamentally fair trial). Even if the Superior Court erred in admitting the taped conversation between Winn and Cleckley, as well as the medical report, nothing in the record indicates that the evidentiary errors deprived Winn of a fair trial. Both Cleckley and Winn testified during Winn's trial and told their versions of the events that occurred in January 2001. According to Cleckley, Winn assaulted and raped her. Although Winn admitted to having assaulted Cleckley, he denied raping her. While the taped conversation may have somewhat explained Cleckley's decision to report the incident when she did, the taped conversation did not prove or disprove the events that occurred in January.

As for the admission of the medical report, Winn concedes that the report was made available to counsel prior to the trial. In addition, Winn does not contend that counsel was unable to cross-examine Ms. Kubec, only that defense counsel had to interrupt his cross-examination to "keep going over the document." In short, both arguments are meritless, and counsel's failure to raise these meritless "constitutional" claims did not prejudice Winn. Therefore, appellate counsel's performance cannot excuse Winn's procedural default of the constitutional issues.

15

mother would not even come to trial and lie on Winn's behalf. According to Winn, the jury inferred Winn's guilt because of the prosecutor's comment regarding his mother's failure to "lie" on his behalf.

Winn's argument, however, lacks merit. A prosecutor may properly comment on the failure of the defense to call a potentially helpful witness. *U.S. v. Keller*, 512 F.2d 182, 186 (3d Cir. 1975). In this case, Winn's mother was not even a potentially helpful witness; the jury already knew that Winn's mother was not present during the attack on January 15, 2001, and that his mother did not personally observe the injuries sustained by Winn. The jury was also aware that the only information Winn's mother knew about what occurred on January 15, 2001 was what Cleckley told his mother during a phone conversation. Therefore, the prosecutor's comment regarding her failure to testify did not so infect Winn's trial with constitutional error so as to make his trial unfair. Accordingly, Winn has not demonstrated a reasonable probability that the result of his appeal would have been different if appellate counsel raised the issue of the prosecutorial comment regarding Winn's mother on direct appeal.

Winn also contends that the prosecutor improperly stated that the blood spatter evidence indicated that Winn threw two punches at Cleckley's face, because Cleckley herself testified that only one punch was thrown. *See* (D.I. 34, Transcript, Feb. 22, 2002, at pp. 21-22.) Viewing the prosecutor's misstatement in context with Cleckley's actual testimony that Winn punched her once, and then slapped her several times thereafter, which spattered blood on the wall above her head, the court concludes that the prosecutor's minor mistake did not rise to such a level as to make Winn's trial unconstitutional. In turn, Winn was not prejudiced by appellate counsel's failure to raise this meritless issue on appeal.

16

To summarize, Winn has failed to demonstrate that he was prejudiced by appellate counsel's failure to raise claims one through eight on direct appeal. Therefore, the Delaware Supreme Court's rejection of Winn's allegations regarding appellate counsel's failure to raise claims one through eight on appeal was neither contrary to, or an unreasonable application of, *Strickland* and its progeny. Consequently, appellate counsel's performance cannot excuse Winn's procedural default of claims one through eight.

In the absence of cause for Winn's default, the court will not address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine does not excuse Winn's default, because he has not provided new reliable evidence of his actual innocence. Accordingly, the court will dismiss claims through eight as procedurally barred.

### 2. Claims nine through fourteen: ineffective assistance of counsel

Winn presented claims nine through fourteen to the Delaware state courts in his post-conviction proceeding. The Delaware Supreme Court reviewed the claims under the two-pronged standard articulated in *Strickland*, and denied them as meritless. Therefore, the Delaware Supreme Court's decision is not contrary to clearly established Federal law.

Additionally, during Winn's Rule 61 proceeding, the Superior Court denied the six ineffective assistance of counsel arguments presented in claims nine through fourteen only after it had reviewed counsel's responses to Winn's complaints and determined that counsel's performance was neither deficient nor prejudicial to Winn's case. The Delaware Supreme Court affirmed that decision, specifically holding that the record did not reveal any basis for Winn's ineffective assistance of counsel claims. The Delaware Supreme Court also opined that there was no evidence that any error on the part of counsel resulted in prejudice to Winn.

17

As an initial matter, after reviewing counsel's Rule 61 affidavit in the context of the

entire record, the court concludes that the Delaware Supreme Court's determination that the

record did not reveal any basis for Winn's ineffective assistance of counsel claims was premised

on a reasonable determination of the facts.[8] Given this finding, the court further concludes that

the Delaware Supreme Court reasonably applied *Strickland* in denying all six of Winn's

ineffective assistance of counsel claims. Accordingly, the court will deny claims nine through

fourteen.

### 3. Claim fifteen: procedurally barred

In claim fifteen, Winn contends that counsel created a conflict of interest by "cussing and

---

[8]In his Rule 61 affidavit, counsel provided the following responses to Winn's claims:

Claim nine: perfunctory preparation. Counsel stated that he spent a significant amount of hours in preparing Winn's case. Counsel also explained that his investigator spent many hours meeting with Winn, interviewing witnesses, and collecting evidence, and that the investigator even prepared 24 memoranda for counsel regarding his evidentiary findings.

Claim ten: failure to conduct a meaningful investigation. Counsel explained that he or his office contacted all but one of the eleven witnesses provided by Winn. Counsel also enlisted the services of the public defender's investigator and another public defender with expertise in forensic nursing.

Claim eleven: failure to obtain and share discovery materials. Counsel noted that discovery material was provided to Winn on May 10, 2001, May 21, 2001, and February 15, 2002.

Claim twelve: prevented Winn from reviewing an audiotape of a telephone conversation that occurred between Winn and the victim. Counsel explained that he prepared notes of the tape and shared them with Winn on February 15, 2002. Counsel also met with Winn several times, and sent Winn several letters addressing the evidence in the case.

Claim thirteen: failure to subpoena Winn's witnesses. Counsel replied that all the witnesses were subpoenaed, and of those who appeared, the witnesses who had something of value to contribute were called.

Claim fourteen: prevented Winn from helping in jury selection. Counsel responded that, as a general rule, he selects the jury but considers any requests made by the defendants. In this case, counsel stated that Winn did not show any interest in the selection process until two or three of the challenges had been exercised. However, counsel did consider Winn's opinion when offered.

fussing" at him from the very inception of counsel's representation. Winn did not present this claim to the Delaware state courts in his Rule 61 proceeding or post-conviction appeal. At this point in time, any attempt on Winn's part to raise the claim in a new Rule 61 motion would be barred as repetitive under Rule 61(i)(2). *See Lawrie v. Snyder*, 9 F.Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding). Therefore, the court must treat claim fifteen as exhausted but procedurally defaulted, meaning that it cannot review the merits of the claim absent a showing of cause and prejudice.

Winn does not assert any cause for his default of the instant claim, and therefore, the court will not address the issue of prejudice. Winn also fails to demonstrate that a miscarriage of justice will ensue by failure to review the claim on its merits. Accordingly, the court will deny claim fifteen as procedurally barred.

## V. MOTION FOR SUMMARY JUDGMENT

During the pendency of this proceeding, the court ordered the State to supplement the record. After the State failed to timely file the supplemental record, Winn filed a motion for summary judgment based on the State's non-compliance. (D.I. 31.) In response, the State filed a motion for leave to file the supplemental record out of time, explaining the cause of the delay. (D.I. 33.) The court granted the motion, and the State filed the supplemental record. Therefore, the court will deny Winn's motion for summary judgment as moot.

## VI. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing

19

of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. §

2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without

reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason

would find it debatable: (1) whether the petition states a valid claim of the denial of a

constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529

U.S. at 484.

The court concludes that Winn's petition does not warrant federal habeas relief.

Reasonable jurists would not find this conclusion to be debatable. Consequently, the court

declines to issue a certificate of appealability.

## VII. CONCLUSION

For the reasons stated, Winn's petition for habeas relief pursuant to 28 U.S.C. § 2254 is

denied. An appropriate order shall issue.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEPHEN R. WINN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. A. No. 06-038-GMS |
| | ) |
| PERRY PHELPS, | ) |
| and ATTORNEY GENERAL OF THE | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

### ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Stephen R. Winn's petition for the writ of habeas corpus filed pursuant to 28 U.S.C

§ 2254 is **DISMISSED**, and the relief requested therein is **DENIED**.  (D.I. 2; D.I. 5)

2. Winn's motion for summary judgment is **DENIED** as moot.  (D.I. 31)

3. The court declines to issue a certificate of appealability.

Dated: Feb 13, 2009

CHIEF, UNITED STATES DISTRICT JUDGE